APPEAL, MAG

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:99-cv-07357-VVP

| | |
|---|---|
| Securities and Excha v. Curtis, et al | Date Filed: 11/10/1999 |
| Assigned to: Magistrate-Judge Viktor V. Pohorelsky | Jury Demand: Defendant |
| Demand: $0 | Nature of Suit: 850 Securities/Commodities |
| Cause: 15:78m(a) Securities Exchange Act | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

**Securities and Exchange Commission**            represented by **Bohdan Stephen Ozaruk**
U.S. Securities & Exchange Commission
New York Regional Office
233 Broadway
6th Flr.
New York, NY 10007
646-428-1840
Email: ozarukb@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack Kaufman**
Securities and Exchange Commission
The Woolworth Building
233 Broadway
6th Floor
New York, NY 10279
(646) 428-1777
Fax: 646-428-1973
Email: kaufmanja@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John J. Graubard**
Securities & Exchange Commission
3 World Financial Center
Room 4300
New York, NY 10281
212-336-1100
Fax: 212-336-1319
Email: graubardj@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert B. Blackburn**
United States Securities and Exchange
Commission (ENF)
233 Broadway
6th Floor
The Woolworth Building
New York, NY 10279
646-428-1610
Fax: 646-428-1979
Email: BlackburnR@SEC.GOV
*TERMINATED: 12/03/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GRAUBARD DECL. EX. 2**                                                    **SEC050**

V.

**Defendant**

**Grant R. Curtis**
*TERMINATED: 07/25/2002*

represented by **Grant R. Curtis**
91800011
FPC Nellis
C.S. 4500
North Las Vegas, NV 89036-4500
*TERMINATED: 07/25/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Leo Mangan**
*TERMINATED: 11/10/1999*

**Defendant**

**Timothy H. Masley**
*TERMINATED: 01/31/2005*

**Defendant**

**James W. Nearen**
*TERMINATED: 11/10/1999*

**Defendant**

**Raimond Irni**
*TERMINATED: 07/25/2002*

**Defendant**

**Pedro Dibrito Gomez**
*TERMINATED: 11/10/1999*

**Defendant**

**Donald E. Kessler**
*TERMINATED: 11/10/1999*

**Defendant**

**David R. Behanna**
*TERMINATED: 07/25/2002*

**Defendant**

**Andrea Varsi**
*TERMINATED: 11/10/1999*

**Defendant**

**Jonathan D. Lyons**
*TERMINATED: 01/31/2005*

**Defendant**

**Kenneth A. Orr**
*TERMINATED: 09/18/2002*

represented by **Ira Lee Sorkin**
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005
(212) 732-3200
Fax: (212) 732-3232
*TERMINATED: 09/18/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GRAUBARD DECL. EX. 2**

**SEC051**

**Joseph P. Albanese**
460 Park Avenue South
New York, NY 10016
(212)683-1845
*TERMINATED: 08/31/2001*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marvin Gerald Pickholz**
Pickholz Law Firm, LLP
570 Lexington Avenue, 45th Floor
New York, NY 10022
(212) 759-2400
Fax: 212-759-7728
Email: marvin.pickholz@akerman.com
*TERMINATED: 02/09/2000*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lillian M. Vinci**
*TERMINATED: 07/24/2002*

**Defendant**

**Ann Marie Noel**                 represented by   **Rebecca E. Hollander-Blumoff**
*TERMINATED: 07/25/2002*                            Lankler Siffert & Wohl
                                                    500 Fifth Avenue
                                                    33rd Floor
                                                    New York, NY 10110
                                                    (212) 921-8399
                                                    *TERMINATED: 07/25/2002*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Michael V. Lipkin**              represented by   **Michael V. Lipkin**
*TERMINATED: 03/09/2006*                            26 Kinglet Avenue
                                                    Marlboro, NJ 07746
                                                    PRO SE

**Defendant**

**Joshua S. Shainberg**            represented by   **Joshua S. Shainberg**
*TERMINATED: 03/09/2006*                            385 Grand Street
                                                    Apartment L-806
                                                    New York, NY 10002
                                                    PRO SE

                                                    **Charles H. Witherwax**
                                                    Charles H. Witherwax Attorney at Law
                                                    500 West 56th Street
                                                    Suite 1704
                                                    New York, NY 10019
                                                    212-977-1234
                                                    Fax: 212-977-1234
                                                    Email: chwitherwax@aol.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Thomas Jerome Curran**

**GRAUBARD DECL. EX. 2**                                                    **SEC052**

Edwards & Angell, LLP
750 Lexington Avenue
New York, NY 10022
(212)308-4411
*TERMINATED: 11/30/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Phillip J. Milligan**                          represented by   **Phillip J. Milligan**
29 Hooks Lane
Edgewater, NJ 07020
PRO SE

**Defendant**

**Robert L. Shatles**                          represented by   **John E. Lawlor**
John E. Lawlor, Esq.
129 Third Street
Mineola, NY 11501
516-248-7700
Fax: 516-742-7675
Email: jlaw672@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Phillip J. Milligan**                          represented by   **Phillip J. Milligan**
29 Hooks Lane
Edgewater, NJ 07020
(917) 873-2955
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 11/10/1999 | 1 | COMPLAINT filed and summons(es) issued for Grant R. Curtis, Leo Mangan, Timothy H. Masley, James W. Nearen, Raimond Irni, Pedro Dibrito Gomez, Donald E. Kessler, David R. Behanna, Andrea Varsi, Jonathan D. Lyons, Kenneth A. Orr, Lillian M. Vinci, Ann Marie Noel, Michael V. Lipkin, Joshua S. Shainberg, Phillip J. Milligan, Robert L. Shatles (Chin, Felix) (Entered: 11/16/1999) |
| 11/10/1999 | 4 | FINAL JUDGMENT/PERMANENT INJUNCITON as against deft Andrea Varsi; deft permanently enjoined from the sale of any security; etc. deft shall pay $5,000 civil penalty pursuant to Sec. 20 (d) of the Securities Act. (CM from Chambers). (signed by Judge Nina Gershon dated 11/19/99). (Greves, Liz) Modified on 12/14/1999 (Entered: 12/14/1999) |
| 11/10/1999 | 5 | FINAL JUDGMENT/PERMANENT INJUNCTION against James W. Nearen; deft permanently enjoined from the sale of any security; etc. payment of disgorgement & prejudgment interest waived. (CM by chambers). (signed by Judge Nina Gershon dated 11/19/99). , (Greves, Liz) (Entered: 12/14/1999) |
| 11/10/1999 | 6 | FINAL JUDGMENT/PERMANENT INJUNCTION against Leo Mangan; deft permanently enjoined from the sale of any security; etc. payment of disgorgement & prejudgment interest waived. CM from chambers. (signed by Judge Nina Gershon , on 11/19/99). , (Greves, Liz) (Entered: 12/14/1999) |
| 11/10/1999 | 7 | FINAL JUDGMENT/PERMANENT INJUNCTION against Pedro Dibrito Gomez; deft permanently enjoined from the sale of any security; etc. payment of disgorgement & prejudgment interest waived. CM from chambers. (signed by Judge Nina Gershon , on 11/19/99). , (Greves, Liz) (Entered: 12/14/1999) |
| 11/10/1999 | 8 | FINAL JUDGMENT/PERMANENT INJUNCTION against Donald E. Kessler. Deft |

**GRAUBARD DECL. EX. 2**                                                        **SEC053**

| | | |
|---|---|---|
| | | permanently enjoined from the sale of any security; etc. payment of disgorgement & prejudgment interest waived. CM from chambers. (signed by Judge Nina Gershon , on 11/19/99). , (Greves, Liz) (Entered: 12/14/1999) |
| 11/29/1999 | 2 | ORDER dated 11/24/99 that a status conference will be held at 3:30PM on 2/16/2000 before Magistrate Caden. CM (signed by Magistrate John L. Caden). (Greves, Liz) (Entered: 11/29/1999) |
| 12/07/1999 | 3 | ANSWER to Complaint by Kenneth A. Orr. (Greves, Liz) (Entered: 12/08/1999) |
| 12/13/1999 | 9 | LETTER undated, from Michael Lipkin, to David Rosenfeld, advising that he does not have any documents that he can refer to in this matter. (Murphy, Margaret) (Entered: 12/14/1999) |
| 12/15/1999 | 10 | STIP/ORDER dated 12/14/99 that time within which defts Robert L. Shatles & AnnMarie Noel may move or answer extended to & including 1/31/2000. (signed by Judge Nina Gershon). (Greves, Liz) (Entered: 12/15/1999) |
| 12/15/1999 | 12 | STIPULATION and ORDER, that the Deft.'s time to move with respect to the complaint is extended to and includes 1.31.00. (Signed by Judge Nina Gershon, on 12.23.99). (Hunter, Tara) (Entered: 01/03/2000) |
| 12/27/1999 | 11 | ANSWER to Complaint by Michael V. Lipkin. (Hunter, Tara) (Entered: 01/03/2000) |
| 01/12/2000 | 13 | LETTER dated 1/6/200 from David Rosenfeld to Judge Caden enclosing copies of letters sent to defts who have been served in this matter, notifying them of the status conference scheduled for 2/16/2000, & the Rule 26(f) meeting which has been scheduled for 1/31/2000. (Greves, Liz) (Entered: 01/12/2000) |
| 02/03/2000 | 14 | STIPULATION and ORDER dated 2/2/2000 that time within which deft Ann Marie Noel may move, answer or respond to complaint extended to & including 3/15/2000. (signed by Judge Nina Gershon). (Greves, Liz) (Entered: 02/03/2000) |
| 02/09/2000 | 15 | STIPULATION and ORDER dated 2/8/2000 that Marvin G. Pickholz is relieved by deft Kenneth Orr as his counsel & Joseph P. Albanese is substituted as counsel. (signed by Judge John Gleeson). (Greves, Liz) (Entered: 02/09/2000) |
| 02/15/2000 | 16 | ANSWER to Complaint by Robert L. Shatles; jury demand (Greves, Liz) (Entered: 02/16/2000) |
| 02/23/2000 | 18 | STIPULATION and ORDER dated 2/24/2000 that time within which defts David Behanna & Lillian M. Vici may move, answer or respond to complaint extended to & including 3/15/2000. (signed by Judge Nina Gershon). (Greves, Liz) (Entered: 02/29/2000) |
| 02/28/2000 | 19 | ANSWER to Complaint by Grant R. Curtis. (Hunter, Tara) (Entered: 03/07/2000) |
| 03/02/2000 | 20 | ORDER, that the Pltff's request to stay until he is released is referred to Magistrate Caden who is supervising pre-trial proceedings. (Signed by Judge Nina Gershon, on 2.7.00). See copy of letter dtd. 2.16.00 to Judge Gershon from Phillip Milligan. (Hunter, Tara) (Entered: 03/20/2000) |
| 03/02/2000 | 22 | LETTER dated 2.16.00 from Phillip Milligan to Judge Gershon requesting a stay with regard to any response that might be necessitated by him until he is released. (Hunter, Tara) (Entered: 04/05/2000) |
| 03/31/2000 | 21 | STIPULATION and ORDER, resetting the answer deadline to 5/23/00 for Ann Marie Noel . Signed by Judge Nina Gershon on 3/29/00. (Asreen, Wendy) (Entered: 03/31/2000) |
| 05/11/2000 | 23 | LETTER dated 5.4.00 from Grant Curtis to Magistrate Caden writing regarding Mr. Ray Irni's deposition. (Hunter, Tara) (Entered: 05/15/2000) |
| 05/19/2000 | 24 | RETURN OF SERVICE executed as to Grant R. Curtis 1/27/2000, Leo Mangan 11/18/1999, Raimond Irni on 1/5/2000, Pedro Dibrito Gomez on 11/30/1999, Donald E. Kessler 11/17/1999, David R. Behanna on 11/16/1999, Andrea Varsi on 11/16/99, Jonathan D. Lyons on 11/19/1999, Lillian M. Vinci on 1/6/2000, Ann Marie Noel 11/16/99, Michael V. Lipkin on 12/3/1999, Joshua S. Shainberg on 12/2/1999, Phillip J. Milligan on 12/22/1999, Robert L. Shatles on 11/19/1999. (Greves, Liz) (Entered: 05/22/2000) |

**GRAUBARD DECL. EX. 2**                                    **SEC054**

| | | |
|---|---|---|
| 05/22/2000 | 25 | STIPULATION and ORDER (not dated) that time within which deft Ann Marie Noel may move, or answer extended to & including 6/30/2000. CM (signed by Judge Nina Gershon). (Greves, Liz) (Entered: 05/24/2000) |
| 06/13/2000 | 26 | NOTICE of Certificate of Service by Securities and Excha Notice of Depo. to depose Raimond Irni on 5/11/2000 to the following (see document) (Jackson, Ramona) Modified on 06/14/2000 (Entered: 06/13/2000) |
| 06/13/2000 | | CASE NO LONGER REFERRED TO Magistrate John L. Caden (Chow, Alice) (Entered: 06/16/2000) |
| 06/13/2000 | | CASE REFERRED to Magistrate Viktor V. Pohorelsky (Chow, Alice) (Entered: 06/16/2000) |
| 06/16/2000 | 29 | LETTER dated 6/16/00 from David Rosenfeld, Chief, Branch of Enforcement No. 8 to Magistrate Pohorelsky requesting leave of the Court to take the deposition of Raimond Irni on or before 6/22/00. (Lee, Tiffeny) (Entered: 06/30/2000) |
| 06/26/2000 | 27 | ORDER, that the SEC will take the deposition upon oral examination of Raimond Irni prior to 5/19/00. (Signed by Magistrate Viktor V. Pohorelsky on 6/9/00 nunc pro tunc) (Johnson, Tanya) (Entered: 06/26/2000) |
| 06/26/2000 | 28 | LETTER dated 6.22.00 from Grant Curtis to Magistrate Judge Pohorelsky writing regarding Mr. Ray Irni's deposition. (Hunter, Tara) (Entered: 06/27/2000) |
| 06/30/2000 | 30 | ORDER granting leave of Court to depose Raimond Irni prior to 6/22/00. Signed by Magistrate Viktor V. Pohorelsky , on 6/20/00. (Lee, Tiffeny) (Entered: 06/30/2000) |
| 07/19/2000 | 31 | STIPULATION and ORDER extending time to answer. Answer due on 8/15/00 for Ann Marie Noel . ( signed by Judge Nina Gershon on 7/14/00) {c/m by chambers} (Rodriguez,Angela) (Entered: 07/19/2000) |
| 07/19/2000 | 32 | ORDER adjourning 6/16/00 status conference to 8/14/00 at 11:00 a.m. Signed by Magistrate Viktor V. Pohorelsky, on 7/17/00. (Lee, Tiffeny) (Entered: 07/19/2000) |
| 08/23/2000 | 33 | ORDER endorsed on letter dated 8/5/00 from Della Richardson to Magistrate Pohorelsky. The conference scheduled for 8/14/00 is adjourned to 9/15/00 at 9:30. ( signed by Magistrate Viktor V. Pohorelsky on date not indicated) (Rodriguez,Angela) (Entered: 08/24/2000) |
| 09/15/2000 | 35 | Calendar entry: Discovery conference held before Magistrate Pohorelsky on 9/15/00. Scheduling order entered. (Rodriguez,Angela) (Entered: 09/26/2000) |
| 09/20/2000 | 34 | STIPULATION and ORDER extending defendant Noel's time to answer. Answer due 9/15/00 for Ann Marie Noel . ( signed by Judge Nina Gershon on 9/18/00) c/m by chambers. (Rodriguez,Angela) (Entered: 09/20/2000) |
| 09/26/2000 | 36 | SCHEDULING ORDER setting Joining of parties,amending of pleadings on 8/1/01 ; Status conference by 11:00 on 2/23/01; Discovery cutoff 10/31/01 ; Pretrial order to be submitted on or before 9:30 on 12/14/01; Request for Pre-Motion conference by 11/30/01; ( signed by Magistrate Viktor V. Pohorelsky on 9/15/00) c/m by chambers. (Rodriguez,Angela) (Entered: 09/26/2000) |
| 10/04/2000 | 38 | STIPULATION and ORDER extending defendant Noel's time to anser. Answer due 10/31/00 for Ann Marie Noel . ( signed by Judge Nina Gershon on 10/6/00) c/m by chambers. (Rodriguez,Angela) (Entered: 10/16/2000) |
| 10/06/2000 | 37 | Rule 26(a) Automatic Disclosure Statement by Securities and Excha. (Lee, Tiffeny) (Entered: 10/12/2000) |
| 11/20/2000 | 39 | STIPULATION and ORDER extending time to answer. Answer due on 1/2/01 for Ann Marie Noel (signed by Judge Nina Gershon on 11/8/00). (Rodriguez,Angela) (Entered: 11/21/2000) |
| 02/09/2001 | 41 | STIPULATION and ORDER extending defendant Ann Marie Noel's time to answer or move to 4/15/01. (returned from chambers unsigned by Judge Nina Gershon) (Rodriguez,Angela) (Entered: 02/16/2001) |
| 02/14/2001 | 40 | STIPULATION and ORDER extending defendant's time to answer or move to 4/15/01. (signed |

**GRAUBARD DECL. EX. 2**                    **SEC055**

| | | by Judge Nina Gershon on 2/12/01) (Rodriguez,Angela) (Entered: 02/15/2001) |
|---|---|---|
| 02/23/2001 | 43 | Calendar entry: Status conference held before Magistrate Pohorelsky on 2/23/01. By 3/19/01, defendants shall respond in writing to plaintiff's 10/31/00 document requests. Documents may be withheld on the basis of privilege, provided that a log be provided pursuant to Local R26 is served before due date. By 3/19/01, defendants shall provide the initial disclosures. Failure to comply will result in sanctions. (Rodriguez,Angela) (Entered: 03/05/2001) |
| 02/26/2001 | 42 | CERTIFICATE OF SERVICE: A copy of the of the record of the 2/23/01 status conference was served on all paries on 2/26/01. (Rodriguez,Angela) (Entered: 02/28/2001) |
| 03/07/2001 | 44 | LETTER dated 2/26/01 from David Rosenfeld to Magistrate Pohorelsky providing an updated address for Grant Curtis. (Rodriguez,Angela) (Entered: 03/07/2001) |
| 03/15/2001 | 45 | NOTICE of Application for Entry of Default against defendants Masley, Milligan, and Lyons filed by SEC. (Rodriguez,Angela) (Entered: 03/15/2001) |
| 03/15/2001 | 46 | AFFIDAVIT of David Rosenfeld in support of application for entry of default (see doc. #45). (Rodriguez,Angela) (Entered: 03/15/2001) |
| 03/15/2001 | 47 | CERTIFICATE of Clerk: The default against defendants Masley, Milligan, and Lyons have been noted. Signed by Catherine Wolff, Deputy Clerk, on 3/6/01. (Rodriguez,Angela) Modified on 03/15/2001 (Entered: 03/15/2001) |
| 03/16/2001 | 48 | UNSIGNED ORDER entering defaults against defendants Masley, Milligan, and Lyons. (Rodriguez,Angela) (Entered: 03/16/2001) |
| 03/20/2001 | 49 | Automatic Disclosure prior to discovery filed by defendant. (Rodriguez,Angela) (Entered: 03/21/2001) |
| 03/20/2001 | 50 | LETTER dated 3/20/01 from Joshua Shainberg to Magistrate Pohorelsky advising that he has discharged his attorney of record. Mr. Shainberg has retained an attorney for the limited purposes of assisting in automatic disclosures. (Rodriguez,Angela) (Entered: 03/23/2001) |
| 04/05/2001 | 51 | Automatic Disclosure Prior to Discovery by Michael V. Lipkin. W/attached Response to request for Production of documents. (Document forwarded to Judge Pohorelsky). (Barrett, Charryse) (Entered: 04/09/2001) |
| 04/25/2001 | 53 | STIPULATION and ORDER extending defendant's time to answer or move to 5/30/01. (unsigned by Judge Nina Gershon) (Rodriguez,Angela) (Entered: 05/09/2001) |
| 04/30/2001 | 52 | STIPULATION and ORDER: Defendant Ann Marie Noel's time to answer or otherwise move is extended to 5/30/01. (signed by Judge Nina Gershon on 4/26/01) (Rodriguez,Angela) (Entered: 04/30/2001) |
| 05/25/2001 | 54 | STIPULATION and ORDER extending defendant Ann Marie Noel's time to answer to 7/31/01. (signed by Judge Nina Gershon on 5/29/01) (Rodriguez,Angela) (Entered: 06/05/2001) |
| 07/27/2001 | 55 | Calendar entry:,Before Mag Pohoreslsky Discovery conf. Any motions to compel, or for sanctions for failure to provide, discovery in response to requests or orders of the court dated prior to June 15,2001 shall be made no later than AUgust 17,2001. Until further substitution of counsel is made, counsel of record of Mr Orr is Joseph Albanese, Jr., The address of record for MIchael Lipkin. Joshua Shainberg pro se. set scheduling conference for 12/14/01 before Magistrate Viktor V. Pohorelsky , terminated past due deadlines (Jackson, Ramona) (Entered: 08/02/2001) |
| 08/08/2001 | 56 | Calendar entry: Initial conference held before Magistrate Pohorelsky on 8/8/01. The motion to be relieved as counsel made by John Lawler is granted, provided however, that counsel remains counsel on the record until he serves on all parties, and files with the Court, a notice that advises all parties that the motion has been granted and sets out the addresses and phone number for the defendant Robert Shatles which will become the address of record for that party. Should counsel hereafter choose to withdraw his motion to be relieved, notice of the withdrawl of the motion must be filed with the Court and served on counsel for plaintiff. Counsel is hereby given leave to serve and submit such a withdrawl directley to chambers by facsimile. (Rodriguez,Angela) (Entered: 08/09/2001) |

**GRAUBARD DECL. EX. 2**                                                    **SEC056**

| 08/09/2001 | 57 | AFFIDAVIT of John Lawlor in support of order to show cause why Mr. Lawlor should be relieved as counsel for defendant Robert Shatles. (Rodriguez,Angela) (Entered: 08/09/2001) |
|---|---|---|
| 08/09/2001 | 58 | ORDER TO SHOW CAUSE: Robert Shatles is to show cause on 8/8/01 at 10:30 why an order should not be granted permitting John Lawlor to withdraw as counsel of record. (signed by Magistrate Viktor V. Pohorelsky- date not indicated) (Rodriguez,Angela) (Entered: 08/09/2001) |
| 08/28/2001 | 59 | LETTER dated 8/28/01 from Jack Kaufman to Magistrate Pohorelsky that the Commission hereby withdraw its sanctions request as to Orr. (Guzzi, Roseann) (Entered: 08/31/2001) |
| 08/31/2001 | 60 | ORDER, substituting attorney terminated attorney Joseph P. Albanese for Kenneth A. Orr. Dft now represented by De Feis, O'Connell & Rose, attorney to be added not specified . (signed by Judge Nicholas G. Garaufis, on 8/28/01) c/m (Lee, Tiffeny) (Entered: 09/05/2001) |
| 09/19/2001 | 61 | ORDER dated 9/7/01 that plaintiff's motion to compel is denied without prejudice. The plaintiff has until 9/21/01 to renew the motion if answers have not been provided, or to make a motion addressed to the adequacy of the responses. ( Signed by Magistrate Viktor V. Pohorelsky, on 9/7/01 )c/m (Guzzi, Roseann) (Entered: 09/19/2001) |
| 09/19/2001 | 62 | LETTER dated 8/17/01 from Jack Kaufman to Magistrate Pohorelsky to outline it's discovery disputes. (Guzzi, Roseann) (Entered: 09/19/2001) |
| 09/19/2001 | 63 | LETTER dated 8/2/301 from Gregory J. O'Connell to Magistrate Pohorelsky to respond to plaintiffs letter seeking sanctions. (Guzzi, Roseann) (Entered: 09/19/2001) |
| 09/19/2001 | 64 | LETTER dated 8/24/01 from John E. Lawlor, Esq. to Magistrate Pohorelsky in response to plaintiff's motion for sanctions against Mr. Shatles for failing to respond to the plaintiff's first set of interrogatories. (Guzzi, Roseann) (Entered: 09/19/2001) |
| 10/09/2001 | 65 | LETTER dated 9/26/01 from Jack Kaufman to Magistrate Pohorelsky to advise of current address of law firm and to request an enlargement of time of the discovery cut-off due to the World Trade Center tragedy. Current address of Securities and Exchange Commission, Jack Kaufman 535 West 110th St. Apt. 8J, New York, NY 10025. (Guzzi, Roseann) (Entered: 10/09/2001) |
| 10/26/2001 | 66 | MOTION by Securities and Excha to extend time to complete discovery , Motion hearing [66-1] motion Motion file stamped: 10/26/01 and mailed/served: 10/26/01 (Jackson, Ramona) (Entered: 11/15/2001) |
| 10/26/2001 | 68 | MEMORANDUM by Securities and Excha in support of [66-1] motion to extend time to complete discovery Filed with affidavit of service of above attached. (Jackson, Ramona) (Entered: 11/15/2001) |
| 11/15/2001 | 67 | Declaration of JACK KAUFMAN by Securities and Excha Re: in support [66-1] motion to extend time to complete discovery (Jackson, Ramona) (Entered: 11/15/2001) |
| 11/20/2001 | 69 | LETTER dated 11/6/01 from Jack Kaufman to Mag Pohorelsky motion for enlargement of time is unopposed. (Jackson, Ramona) (Entered: 11/20/2001) |
| 11/20/2001 | 70 | ORDER Deadline for completion of factual discovery 7/1/02; All deadlines extended by 8 months. Deadline for premotion conf. to 8/1/01; Pretrial conf. 8/9/02 ( signed by Magistrate Viktor V. Pohorelsky , on 11/8/01) (Jackson, Ramona) (Entered: 11/20/2001) |
| 06/28/2002 | 71 | ORDER, substituting attorney Added Ira Lee Sorkin on behalf of defendant Kenneth Orr. ( Signed by Judge Nina Gershon, on undated ) (Guzzi, Roseann) (Entered: 06/28/2002) |
| 06/28/2002 | 73 | MOTION by Securities and Exchange Commission to modify pretrial order . Motion hearing Motion file stamped: 6/28/02. Attached declaration of Bohan S. Ozaruk; memorandum in support. (Guzzi, Roseann) (Entered: 07/17/2002) |
| 07/08/2002 | 72 | SCHEDULING ORDER setting deadline of factual discovery to 9/3/02; all deadlines regarding expert discovery are extended to 9/3/02; deadline for requesting a pre-motion conference is extended to 10/1/02; pretrial conference is adjourned to 10/8/02. ( Signed by Magistrate Viktor V. Pohorelsky, on undated) (Guzzi, Roseann) (Entered: 07/08/2002) |
| 07/22/2002 | 74 | REVISED SCHEDULING ORDER dated 7/16/02 tht the deadline for completion of factual |

**GRAUBARD DECL. EX. 2**                                    **SEC057**

| | | discovery is extended to 9/3/02; all deadlines regarding expert discovery are extended to 9/3/02; deadline for requesting a pre-motion conference regarding any proposed dispositive motion is extended to 10/1/02; pretrial conference is adjourned to 10/9/02 at 10:30. ( Signed by Magistrate Viktor V. Pohorelsky, on 7/16/02 ) c/m (Guzzi, Roseann) (Entered: 07/22/2002) |
|---|---|---|
| 07/24/2002 | 79 | FINAL JUDGMENT and PERMANENT INJUNCTION for SEC against Lillian M. Vinci. (signed by Judge Nina Gershon on 7/26/02) , (Rodriguez,Angela) (Entered: 08/05/2002) |
| 07/25/2002 | 75 | FINAL JUDGMENT OF PERMANENT INJUNCTION against David R. Behanna. Defendant shall pay $25,000 to the United States Treasury. ( Signed by Judge Nina Gershon, on 7/22/02) See order for details. , (Guzzi, Roseann) (Entered: 07/25/2002) |
| 07/25/2002 | 76 | FINAL JUDGMENT OF PERMANENT INJUNCTION against Ann Marie Noel. Defendant shall pay $32,500 see order for details. ( Signed by Judge Nina Gershon, on 7/18/02) , (Guzzi, Roseann) (Entered: 07/25/2002) |
| 07/25/2002 | 77 | FINAL JUDGMENT OF PERMANENT INJUNCTION against Raimond Irni. Defendant shall pay $200,000. See order for more complete details. ( Signed by Judge Nina Gershon, on 7/18/021) , (Guzzi, Roseann) (Entered: 07/25/2002) |
| 07/25/2002 | 78 | FINAL JUDGMENT OF PERMANENT INJUNCTION dated 7/18/02 against Grant R. Curtis. Defendant to pay $7,819,270. See order for details. ( Signed by Judge Nina Gershon, on 7/18/02) , (Guzzi, Roseann) (Entered: 07/25/2002) |
| 08/15/2002 | 80 | MOTION by Securities and Exchange Commission for leave to Take the Deposition of defendant Timothy Masley, a person confined in prison . (Guzzi, Roseann) (Entered: 08/15/2002) |
| 08/15/2002 | 81 | ORDER dated 8/7/02 granting plaintiff's [80-1] motion for leave to Take the Deposition of defendant Timothy Masley, a person confined prison is granted and the Commission make take the videoptaped deposition of Masley. ( Signed by Magistrate Viktor V. Pohorelsky, on 8/7/02 ) (Guzzi, Roseann) (Entered: 08/15/2002) |
| 09/03/2002 | 92 | MOTION by Securities and Exchange for a Letter of Request to the Supreme Court of the Bahamas . Motion file stamped: 9/3/02 and mailed/served: 9/3/02. (Guzzi, Roseann) (Entered: 10/21/2002) |
| 09/03/2002 | 93 | MEMORANDUM by Securities and Exchange in support of plaintiff's [92-1] motion for a Letter of Request to the Supreme Court of the Bahamas. (Guzzi, Roseann) (Entered: 10/21/2002) |
| 09/03/2002 | 94 | DECLARATION OF Jack Kaufman, Esq. on behalf of the Securities and Exchange Re: in support of plaintiff's [92-1] motion for a Letter of Request to the Supreme Court of the Bahamas. (Guzzi, Roseann) (Entered: 10/21/2002) |
| 09/10/2002 | 96 | LETTER dated 9/9/02 from Jack Kaufman to Magistrate Pohorelsky on behalf of plaintiff Securities and Exchange as a supplemental response to the 8/26/02 letter of defendant Robert Shatles, which seeks to compel the Commission to produce certain documents withheld on privilege grounds. (Guzzi, Roseann) (Entered: 10/21/2002) |
| 09/18/2002 | 82 | FINAL JUDGMENT of permanent injunction dated 9/13/02 against Kenneth A. Orr. See order for details. ( Signed by Judge Nina Gershon, on 9/13/02) , (Guzzi, Roseann) (Entered: 09/18/2002) |
| 09/23/2002 | 95 | MEMORANDUM by Securities and Exchange in support of plaintiff's [92-1] motion for a Letter of Request to the Supreme Court of the Bahamas. (Guzzi, Roseann) (Entered: 10/21/2002) |
| 10/01/2002 | 91 | (Courtesy Copy)MOTION by Securities and Exchange for default judgment against Timothy H. Masley, Phillip J. Milligan, Jonathan D. Lyons . Memorandum in support. Declaration of Linda L. Chan. (Guzzi, Roseann) (Entered: 10/16/2002) |
| 10/03/2002 | 83 | LETTER dated 9/20/02 from Jack Kaufman, Senior Trial Counsel to Judge Gershon on behalf of plaintiff Securities and Exchange Commission seeking leave to amend its complaint to add against defendant Michael Lipkin. (Guzzi, Roseann) (Entered: 10/03/2002) |

**GRAUBARD DECL. EX. 2**                                                   **SEC058**

| | | |
|---|---|---|
| 10/03/2002 | 84 | LETTER dated 9/24/02 from Michael V. Lipkin, Pro Se to Judge Gershon requesting an extension of eighteen months to prepare for trial. (Guzzi, Roseann) (Entered: 10/03/2002) |
| 10/03/2002 | 85 | LETTER dated 9/26/02 from Jack Kaufman to Judge Gershon on beahlf of plaintiff Securities and Exchange Commission to respond to the 9/24/02 letter of defendant Michael Lipkin in which he opposes the Commissioner's request to amend complaint. (Guzzi, Roseann) (Entered: 10/03/2002) |
| 10/03/2002 | 86 | LETTER dated 10/1/02 from Judge Gershon to Jack Kaufman, Esq. and Michael V. Lipkin to acknoweldge letters. In absence of a stipulation, the Securities and Exchange Commission may bring a formal motion to amend the complaint. (Guzzi, Roseann) (Entered: 10/03/2002) |
| 10/09/2002 | 87 | Calendar entry:Before Mag Pohorelsky Civil Conf. The next conf. before this Mag. Judge is adjourned sine die. The deft. Shainberg shall submit to all parties his proposals for information to be included in the pretrial order no later than Oct. 31,2002. Failure to submit such information will result in the preclusion of evidence that the deft. Shainberg may wish to offer at trial. The parties shall thereafter confer and cooperate in the preparation of a single joint pretrial order for submission to the Mag. Judge by 11/11/02. (Jackson, Ramona) (Entered: 10/10/2002) |
| 10/10/2002 | 88 | ORDER Withdrawn as Moot. On ltr. dtd. 8/26/02 from John E Lawlor we ask an order be issued directing the SEC to turn over the Irni Proffer Notes & Cooperation Agreement believed to exist in Box 21 now in the Commission's possession or control. ( signed by Magistrate Viktor V. Pohorelsky , ) (Jackson, Ramona) (Entered: 10/10/2002) |
| 10/10/2002 | 89 | LETTER dated 8/30/02 from Jack Kaufman to Mag Pohorelsky request an enlargement of two weeks, to Sept. 13,2002, to respond to Shatles request for an order compelling production. (Jackson, Ramona) (Entered: 10/10/2002) |
| 10/10/2002 | 90 | LETTER dated 9/4/02 from Joshua Shainberg to Mag Pohorelsky I ask the scheduling order dtd. 7/16/02 be adhered to. (Jackson, Ramona) (Entered: 10/10/2002) |
| 10/21/2002 | 102 | MOTION by plaintiff Securities and Exchange to amend [1-1] complaint . Motion hearing . (Guzzi, Roseann) (Entered: 11/04/2002) |
| 10/21/2002 | 103 | MEMORANDUM by Securities and Exchange in support of plaintiff's [102-1] motion to amend [1-1] complaint. (Guzzi, Roseann) (Entered: 11/04/2002) |
| 10/21/2002 | 104 | DECLARATION of Jack Kaufman on behalf of plaintiff Securities and Exchange Re: in support of plaintiff's [102-1] motion to amend [1-1] complaint. (Guzzi, Roseann) (Entered: 11/04/2002) |
| 10/21/2002 | 105 | Faxed MEMORANDUM by pro-se defendant Michael V. Lipkin in opposition to plaintiff's [102-1] motion to amend [1-1] complaint. (Guzzi, Roseann) (Entered: 11/04/2002) |
| 10/21/2002 | 107 | FIRST AMENDED COMPLAINT by Securities and Exchange Commission, amending [1-1] complaint. (Guzzi, Roseann) (Entered: 11/13/2002) |
| 10/22/2002 | 101 | COVER LETTER dated 10/21/02 from Jack Kaufman to Judge Gershon on behalf of plaintiff Securities and Exchange Commission re: motion to amend the complaint. (Guzzi, Roseann) (Entered: 11/04/2002) |
| 10/23/2002 | 97 | ORDER dated 10/16/02 that plaintiff's motion for entry of a default judgment against defendants Timothy H. Masley, Phillip J. Milligan, and Jonathan D. Lyons is hereby referred to Magistrate Pohorelsky for report and recommendation as to the default judgment. ( Signed by Judge Nina Gershon, on 10/16/02 ) (Guzzi, Roseann) (Entered: 10/23/2002) |
| 10/23/2002 | | Motion(s) referred: [91-1] motion for default judgment against Timothy H. Masley, Phillip J. Milligan, Jonathan D. Lyons referred to Magistrate Viktor V. Pohorelsky. (Guzzi, Roseann) (Entered: 10/23/2002) |
| 10/24/2002 | 98 | Certificate of Service by Securities and Exchange to Timothy H. Masley, Jonathan D. Lyons & Phillip J. Milligan. served on 10/24/02 re: An Order. (Sica, Michele) (Entered: 10/28/2002) |
| 10/28/2002 | 106 | MAIL RETURNED order dated 10/16/02; returned on 10/28/02; Phillip J. Milligan; 96 Finwood Plaza, Apt. 118; Fort Fee, NJ 07024. Undeliverable. No current address available. |

**GRAUBARD DECL. EX. 2**                                      **SEC059**

| | | (Guzzi, Roseann) Modified on 11/05/2002 (Entered: 11/05/2002) |
|---|---|---|
| 10/29/2002 | 99 | LETTER dated 10/16/02 from Jack Kaufman, Esq. to Michael V. Lipkin enclosing copies of documents supporting the Commission's motion to amend the complaint, deposition transcripts, and documents in support of motion for default judgment. (enclosures not attached) (Fernandez, Erica) (Entered: 10/29/2002) |
| 11/01/2002 | 100 | ORDER dated 10/18/02 that the Court enters the following scheduling order: 11/8/02 plaintiff shall serve on the defaulting defendants; 12/2/02 defendants shall serve on the plaintiff any opposition; 12/16/02 the plaintiff shall serve any reply papers. ( Signed by Magistrate Viktor V. Pohorelsky, on 10/18/02 ) c/m (Guzzi, Roseann) Modified on 11/05/2002 (Entered: 11/01/2002) |
| 11/13/2002 | 108 | ORDER: Plaintiff's motion to amend the complaint to include allegations of additional securities fraud violations by defendant Michael Lipkin is granted. ( signed by Judge Nina Gershon , on 11/08/02) (Sica, Michele) (Entered: 11/13/2002) |
| 11/13/2002 | 110 | NOTICE of attorney appearance for Joshua S. Shainberg by Thomas Jerome Curran. (Guzzi, Roseann) (Entered: 11/20/2002) |
| 11/15/2002 | 109 | AMENDED COMPLAINT by Securities and Exchange Commission, amending [1-1] complaint. (Guzzi, Roseann) (Entered: 11/20/2002) |
| 11/27/2002 | 111 | ANSWER to Complaint by Joshua S. Shainberg. (Guzzi, Roseann) (Entered: 12/04/2002) |
| 12/16/2002 | 116 | MOTION by Securities and Exchange Commission to modify scheduling order to permit the Commission an additional three week period to 1/6/03 to serve and file its reply papers to the opposition of defendant Jonathan D. Lyons . Motion hearing . Motion file stamped: 12/16/02. (Guzzi, Roseann) (Entered: 01/13/2003) |
| 12/16/2002 | 117 | MEMORANDUM by Securities and Exchange Commission in support of plaintiff's [116-1] motion to modify scheduling order to permit the Commission an additional three week period to 1/6/03 to serve and file its reply papers to the opposition of defendant Jonathan D. Lyons (Guzzi, Roseann) (Entered: 01/13/2003) |
| 12/30/2002 | 112 | REVISED SCHEDULING ORDER: Upon the motion of pltf SEC for an Order modifying the Court's Scheduling Order dated 10/18/02, and for good cause shown, the 10/18/02 order is hereby amended to allow the Commission to file no later than 1/6/03 the Commission's reply to the opposition papers filed by dft Jonathan D. Lyons. (signed by Magistrate Viktor V. Pohorelsky, on 12/27/02). (Fahey, Lauren) (Entered: 12/30/2002) |
| 12/30/2002 | 113 | CERTIFICATE OF SERVICE of an Order dtd 12/27/02 served on parties. (Sica, Michele) (Entered: 01/07/2003) |
| 01/06/2003 | 119 | CERTIFICATE OF SERVICE by Securities and Exchange that on 1/6/03 copies of the Commissioner's reply to Jonathan Lyons' opposition to plaintiff's application for default judgment. (Guzzi, Roseann) (Entered: 01/13/2003) |
| 01/07/2003 | 115 | LETTER dated 1/6/03 from Phillip Milligan to Magistrate Pohorelsky opposing the SEC's motion for judgment by default. (Black, Amanda) (Entered: 01/10/2003) |
| 01/08/2003 | 114 | ORDER dated 1/4/03 that the consent motion to extend time to complete discovery is granted, and the parties shall have up to 2/28/03 to complete fact discovery. Parties shall have to 4/25/03 to complete expert discovery. ( Signed by Magistrate Robert M. Levy, on 1/4/03 ) (Guzzi, Roseann) (Entered: 01/08/2003) |
| 01/13/2003 | 118 | NOTICE of attorney appearance for Joshua S. Shainberg by Thomas J. Curran. (Guzzi, Roseann) (Entered: 01/13/2003) |
| 05/07/2003 | 158 | MOTION to Withdraw as Attorney *Thomas J. Curran attorney for defendant Joshua Shainberg.* by Joshua S. Shainberg. (Guzzi, Roseann) (Entered: 03/04/2005) |
| 06/19/2003 | 120 | ORDER Setting Hearing on Motion re: Joshua Shainberg's motion to withdraw as counsel. Motion Hearing set for 7/9/2003 at 03:00 PM before Magistrate-Judge Viktor V. Pohorelsky. Signed by Judge Viktor V. Pohorelsky on 6/18/03. (Rodriguez, Angela) (Entered: 06/30/2003) |

**GRAUBARD DECL. EX. 2**                                    **SEC060**

| | | |
|---|---|---|
| 07/09/2003 | 121 | Minute Entry for proceedings held before Viktor V. Pohorelsky: Motion hearing held on 7/9/2003. (Tape #03/77(0-4350)(1200-2550 is ordered sealed) (Guzzi, Roseann) (Entered: 07/14/2003) |
| 07/30/2003 | 122 | TRANSCRIPT of Civil Cause for Proceedings held on 07/09/03 before Judge Pohorelsky. Appearance for Plaintiff: Jack Kaufman, Esq. & Bohdan Ozaruk. Esq. For Deft. Harold Ruvoldt, Esq., Thomas Curran, Esq. Joshua Shainberg, Pro Se. & Michael Lipkin, Esq. (Sica, Michele) (Entered: 07/30/2003) |
| 10/08/2003 | 123 | Letter dated 10/1/03 from James J. Toritto, Law Clerk to Magistrate Pohorelsky to Jack A. Kaufmann, Esq, Joshua Shainberg, John E. Lawlor, Esq. and Michael Lipkin to inform the Court is in receipt of documents responding to the letter requests sent to the office of the Attorney General and Ministry of Justice, Nassau, Bahamas. See court file for attached letters. (Guzzi, Roseann) (Entered: 10/08/2003) |
| 10/05/2004 | 124 | Letter dated 11/26/02 from Jonathan D. Lyons to Magistrate Pohoreslky.(Guzzi, Roseann) (Entered: 10/05/2004) |
| 10/08/2004 | 125 | Letter dated 10/7/04 from Jack Kaufman to Magisrate Pohorelsky on behalf of plaintiff Securities and Exchange inqires regarding the status of motions. (Guzzi, Roseann) (Entered: 10/20/2004) |
| 10/28/2004 | 126 | REPORT AND RECOMMENDATIONS re [91] Motion for Default Judgment filed by Securities and Exchange Commission. Objections to R&R due by 11/12/2004. Signed by Judge Viktor V. Pohorelsky on 10/28/2004. (Pohorelsky, Viktor) (Entered: 10/28/2004) |
| 10/29/2004 | 128 | CERTIFICATE OF SERVICE that on 10/29/04 copies of report and recommendation by Magistrate Pohorelsky and dated 10/28/04 sent Federal Express to: Masley, Milligan and Lyons. (Guzzi, Roseann) (Entered: 11/01/2004) |
| 11/01/2004 | 127 | MEMORANDUM AND ORDER granting in part and denying in part plaintiff's motion to reopen discovery, denying defendant Shainberg's motion to reopen discovery, and scheduling status conference. Signed by Judge Viktor V. Pohorelsky on 11/01/2004. (Pohorelsky, Viktor) (Entered: 11/01/2004) |
| 11/18/2004 | 132 | Minute Entry for proceedings held before Viktor V. Pohorelsky: Status Conference held on 11/18/2004. (Guzzi, Roseann) (Entered: 12/08/2004) |
| 11/19/2004 | 129 | Letter from Bohdan S. Ozaruk to Judge Nina Gershon Regarding Milligan "Motion To Dismiss". (Attachments: # 1 Service Certificate)(Ozaruk, Bohdan) (Entered: 11/19/2004) |
| 11/30/2004 | 130 | ORDER Setting Hearing on Motion [91] Motion for Default Judgment, 126 REPORT AND RECOMMENDATIONS re [91] Motion for Default Judgment filed by Securities and Exchange Commission: Motion Hearing set for 1/4/2005 02:00 PM before Magistrate-Judge Viktor V. Pohorelsky in Room 519. Signed by Judge Viktor V. Pohorelsky on 11/30/2004. (Pohorelsky, Viktor) (Entered: 11/30/2004) |
| 12/03/2004 | 131 | ORDER dated 11/22/04 re: report and recommendation of Magistrate Pohorelsky. ( Signed by Judge Nina Gershon on 11/22/04 ) (Guzzi, Roseann) (Entered: 12/03/2004) |
| 12/08/2004 | | Set Deadlines/Hearings: Status Conference set for 3/4/2005 10:30 AM before Magistrate-Judge Viktor V. Pohorelsky. (Guzzi, Roseann) (Entered: 12/08/2004) |
| 12/22/2004 | 133 | First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons* by Securities and Exchange Commission. Responses due by 12/22/2004 (Attachments: # 1 # 2)(Ozaruk, Bohdan) (Entered: 12/22/2004) |
| 12/22/2004 | 134 | First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons* by Securities and Exchange Commission. Responses due by 12/22/2004 (Attachments: # 1 # 2 # 3)(Ozaruk, Bohdan) (Entered: 12/22/2004) |
| 12/22/2004 | 135 | First MOTION for Default Judgment as to *Timothy Masley* by Securities and Exchange Commission. Responses due by 12/22/2004 (Ozaruk, Bohdan) (Entered: 12/22/2004) |
| 12/22/2004 | 136 | First MOTION for Default Judgment as to *Jonathan Lyons* by Securities and Exchange Commission. Responses due by 12/22/2004 (Ozaruk, Bohdan) (Entered: 12/22/2004) |

**GRAUBARD DECL. EX. 2**                                    **SEC061**

| 12/22/2004 | 137 | First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons* by Securities and Exchange Commission. Responses due by 12/22/2004 (Ozaruk, Bohdan) (Entered: 12/22/2004) |
|---|---|---|
| 01/03/2005 | 138 | Letter from Bohdan S. Ozaruk to Mag. Judge Pohorelsky Regarding Request for Hearing Adjournment. (Ozaruk, Bohdan) (Entered: 01/03/2005) |
| 01/05/2005 | 139 | Letter from Bohdan S. Ozaruk to Mag. Judge Pohorelsky Regarding Admission of Additional Exhibits. (Attachments: # 1 Exhibit Proposed Exhibit 16)(Ozaruk, Bohdan) (Entered: 01/05/2005) |
| 01/13/2005 | 140 | Mail Returned as Undeliverable Decision & Order Mail sent to Michael V. Lipkin (Jackson, Ramona) (Entered: 01/13/2005) |
| 01/13/2005 | 141 | Letter from Bohdan S. Ozaruk to Mag. Judge Viktor Pohorelsky Regarding M. Lipkin current address. (Ozaruk, Bohdan) (Entered: 01/13/2005) |
| 01/14/2005 | 142 | Letter from Jack Kaufman, Senior Trial Counsel to Honorable Viktor V. Pohorelsky Regarding pending default judgment motion against defendant Phillip Milligan. (Kaufman, Jack) (Entered: 01/14/2005) |
| 01/14/2005 | | ENDORESED ORDER re 141 Letter: Mr. Lipkin is directed to file a formal statement with the clerk specifying his new address. Entered by Magistrate-Judge Pohorelsky on 1/14/05. (Newton, Joan) (Entered: 01/14/2005) |
| 01/24/2005 | 143 | Minute Entry for proceedings held before Viktor V. Pohorelsky : Motion Hearing held on 1/4/2005 re [91] Motion for Default Judgment filed by Securities and Exchange Commission re Phillip Milligan; hearing to be continued on February 1, 2005. See annexed calendar. (Pohorelsky, Viktor) (Entered: 01/24/2005) |
| 01/25/2005 | 144 | First MOTION for Discovery *Modifying The Court's Nov. 1, 2004 Decision and Order to Permit Document Discovery* by Securities and Exchange Commission. (Attachments: # 1 Affidavit Declaration in Support of Plaintiff's Motion To Modify Court's Nov. 1, 2004 Decision and Order# 2 Exhibit 1# 3 Exhibit 2# 4 Exhibit 3# 5 Exhibit 4# 6 Exhibit 5# 7 Exhibit 6# 8 Exhibit 7# 9 Exhibit 8# 10 Exhibit 9# 11 Exhibit 10# 12 Exhibit 11# 13 Exhibit 12# 14 Exhibit 13# 15 Supplement Memorandum of Law# 16 Text of Proposed Order Proposed Supplemental Order# 17 Affidavit Certificate of Service)(Ozaruk, Bohdan) (Entered: 01/25/2005) |
| 01/26/2005 | | Set Deadlines as to 144 First MOTION for Discovery *Modifying The Court's Nov. 1, 2004 Decision and Order to Permit Document Discovery*. Responses due by 2/1/2005; Replies due by 2/4/2005. (Pohorelsky, Viktor) (Entered: 01/26/2005) |
| 01/31/2005 | 145 | DEFAULT JUDGMENT dated 1/21/05 against Timothy H. Masley. ( Signed by Judge Nina Gershon on 1/21/05 )(Guzzi, Roseann) (Entered: 02/01/2005) |
| 01/31/2005 | 146 | DEFAULT JUDGMENT against Jonathan D. Lyons. ( Signed by Judge Nina Gershon on 1/21/05 )(Guzzi, Roseann) (Entered: 02/01/2005) |
| 01/31/2005 | 147 | MOTION to Deny Pltff's Motion to Modify the Court's 11/1/04 Decision and Order to Permit Document Discovery, filed by Joshua S. Shainberg. (w/ Memorandum in Support attached) (Galeano, Sonia) Fwd. to USDJ Gershon. (Entered: 02/01/2005) |
| 02/03/2005 | 148 | TRANSCRIPT of Proceedings held on 1/4/05 before Judge Pohorelsky. Counsel for parties present. Official Transcriber: Rosalie Lombardi; Transcription Service: Transcription Plus II. (Fernandez, Erica) (Entered: 02/04/2005) |
| 02/03/2005 | 149 | TRANSCRIPT of Proceedings held on 2/1/05 before Judge Pohorelsky. Counsel for parties present. Official Transcriber: Rosalie Lombardi; Transcription Service: Transcription Plus II. (Fernandez, Erica) (Entered: 02/04/2005) |
| 02/04/2005 | 150 | REPLY to Response to Motion re 147 MOTION for More Definite Statement *to Deny Pltff's Motion to Modify the Court's 11/1/04 Decision and Order to Permit Document Discovery, filed February 4, 2005* filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Declaration In Support of Reply Memo# 2 Exhibit Reply Exhibit 1# 3 Exhibit Reply Exhibit 2# 4 Affidavit Service Certificate)(Ozaruk, Bohdan) (Entered: 02/04/2005) |

**GRAUBARD DECL. EX. 2**                                    **SEC062**

| 02/08/2005 | 151 | Minute Entry for proceedings held before Viktor V. Pohorelsky : Evidentiary Hearing held on 2/1/2005. (Pohorelsky, Viktor) (Entered: 02/08/2005) |
|---|---|---|
| 02/08/2005 | 152 | REPORT AND RECOMMENDATION AND ORDER read into the record re 131 Order, 130 Order Setting Hearing on Motion, concerning objection (styled as a motion to dismiss dated November 8, 2004) by Phillip Milligan to Report and Recommendation dated October 28, 2004. Entered by Judge Viktor V. Pohorelsky on 2/8/2005. Transcript to be filed; copies to be mailed to parties. (Pohorelsky, Viktor) (Entered: 02/08/2005) |
| 02/08/2005 | 154 | Deft's REPLY MEMORANDUM in Support of its Motion to Deny Pltff's Motion to Modify the Court's 11/1/04 Decision and Order to Permit Document Discovery, filed by Joshua S. Shainberg. (fwd. to USDJ Gershon) (Galeano, Sonia) (Entered: 02/10/2005) |
| 02/09/2005 | 153 | ORDER granting 144 Motion for Discovery. Signed by JudgeViktor V. Pohorelsky on 2/9/2005. (Pohorelsky, Viktor) (Entered: 02/09/2005) |
| 02/09/2005 | | ORDER denying 147 Motion to Deny Plaintiff's Motion, by electronic endorsement, as this "Motion" was mislabeled by the pro se defendant and is considered by the court instead to be opposition to the plaintiff's motion 144 for an order permitting additional discovery. Signed by Judge Viktor V. Pohorelsky on 2/9/2005. (Pohorelsky, Viktor) (Entered: 02/09/2005) |
| 02/17/2005 | 155 | MOTION to Dismiss by Phillip J. Milligan, Phillip J. Milligan. (Jackson, Ramona) (Entered: 02/17/2005) |
| 02/17/2005 | 156 | TRANSCRIPT of Magistrate Pohorelsky's ORAL Report and Recommendation held on 2/8/05. Transcribed by Rosalie Lombardi of Transcription Plus II. (25 pages) (Guzzi, Roseann) (Entered: 02/17/2005) |
| 02/28/2005 | 157 | Letter dated 2/27/05 from Joshua Shainberg to USMJ Pohorelsky and USDJ Gershon, re: "pltffs continued actions and statements in their attempt to corrupt the process of discovery and repeating petitioner's request to have the Court supervise and referee the deposition of Dr. Moorjani." (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 03/02/2005) |
| 03/04/2005 | 159 | SUPPLEMENTAL DECLARATION of Jack Kaufamn in support of plaintiff's motion for a letter of request to the Supreme Court of the Bahamas on behalf Securities and Exchange Commission. *Note: doc. filed 9/23/02 (Guzzi, Roseann) (Entered: 03/04/2005) |
| 03/04/2005 | 160 | Plaintiff's Reply to defendant Jonathan Lyons' opposition to plaintiff's application for default judgment. *note: document filed 1/6/03 (Guzzi, Roseann) (Entered: 03/04/2005) |
| 03/04/2005 | 161 | Plaintiff's reply to defendant Phillip J. Milligan's opposition to plaintiff's application for default judgment. *Note: document filed 1/24/03(Guzzi, Roseann) (Entered: 03/04/2005) |
| 03/04/2005 | 162 | Minute Entry for proceedings held before Magistrate-Judge Viktor V. Pohorelsky : Status Conference held on 3/4/2005. See annexed conference calendar for details. (Newton, Joan) (Entered: 03/04/2005) |
| 03/04/2005 | 163 | Letter dated 5/10/03 from Joshua Shainberg, pro se defendant to Magistrate Pohorelsky in response to Mr. Thomas J. Curran and his motion to withdraw as counsel. *Note: document filed 6/3/03 (Guzzi, Roseann) (Entered: 03/04/2005) |
| 03/04/2005 | 164 | Declaration of Thomas J. Curran in further support of motion to withdraw as to Joshua S. Shainberg. *Note: document filed 6/16/03 (Guzzi, Roseann) (Entered: 03/04/2005) |
| 03/04/2005 | 165 | Response to Declaration of Thomas J. Curran in further support of motion to withdraw. *Note: document filed 7/8/03 (Guzzi, Roseann) (Entered: 03/04/2005) |
| 03/10/2005 | 166 | OBJECTION to 126 Report and Recommendations filed by Phillip J. Milligan. (Fwd. to USDJ Gershon) (Galeano, Sonia) (Entered: 03/11/2005) |
| 03/25/2005 | 167 | REPLY to Response to Motion re 155 MOTION to Dismiss *Commission Opposition to Milligan's Objection to Report and Recommendation* filed by Securities and Exchange Commission. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 03/25/2005) |
| 04/19/2005 | 168 | NOTICE of Change of Address/Firm/Email by Bohdan Stephen Ozaruk (Attachments: # 1) (Ozaruk, Bohdan) (Entered: 04/19/2005) |

**GRAUBARD DECL. EX. 2**                                                    **SEC063**

| | | |
|---|---|---|
| 04/29/2005 | 169 | TRANSCRIPT of Proceedings/status conference held on 3/4/05 before Judge Magistrate Pohoreslky. Court Reporter: Transcription Plus II by Rosalie Lombardi. (66 pages) (Guzzi, Roseann) (Entered: 04/29/2005) |
| 04/29/2005 | 170 | ORDER dated 4/21/05 that defendant Mr. Milligan is directed to file an answer to the complaint within 30 days of the date of this order. ( Ordered by Judge Nina Gershon on 4/21/05 )(Guzzi, Roseann) (Entered: 04/29/2005) |
| 05/13/2005 | 171 | Minute Entry for proceedings held before Magistrate Judge Viktor V. Pohorelsky : Status Conference held on 5/12/2005. See annexed conference calendar for details. (Newton, Joan) (Entered: 05/13/2005) |
| 05/19/2005 | 172 | ANSWER to Complaint by defendant Phillip J. Milligan.(Guzzi, Roseann) (Entered: 05/25/2005) |
| 05/26/2005 | 174 | Letter dated 5/24/05 from Phillip Milligan to USDJ Gershon, informing Your Honor that petitioner has not been copied on any relevant documents and nor has he recv'd any disclosures of the evidence the Commission might possess, including automatic disclosures. Petitioner respectfully requests that this Court clarify what kind of discovery process he is entitled to and what scheduling order should petitioner abide by. (Fwd. to USDJ Gershon)(Galeano, Sonia) (Entered: 05/31/2005) |
| 05/26/2005 | 175 | DEFT Milligan's DISCLOSURE STAEMENT filed by Phillip J. Milligan. (fwd. to USDJ Gershon) (Galeano, Sonia) (Entered: 05/31/2005) |
| 05/27/2005 | 173 | ORDER dated 5/26/05 re: separate trial against defendant Philip J. Milligan. Defendants' Michael V. Lipkin, Shainberg and Shatles have consented to trial before Magistrate Pohorelsky. ( Ordered by Judge Nina Gershon on 5/26/05 )(Guzzi, Roseann) (Entered: 05/27/2005) |
| 06/01/2005 | 176 | CONSENT to Jurisdiction by US Magistrate Judge. Case reassigned to Magistrate Judge Viktor V. Pohorelsky. Judge Gershon no longer assigned. (Guzzi, Roseann) (Entered: 06/01/2005) |
| 06/01/2005 | 177 | Letter from Bohdan S. Ozaruk to Magistrate Judge Pohorelsky Regarding Phillip J. Milligan. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 06/01/2005) |
| 06/01/2005 | 178 | Exhibit List *Plaintiff's Objections to Defendants' Exhibits and Designation of Deposition Testimony* by Securities and Exchange Commission.. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 06/01/2005) |
| 06/02/2005 | 179 | MOTION for Summary Dismissal by Securities and Exchange Commission. (Galeano, Sonia) Fwd. to USMJ Pohorelsky. (Entered: 06/06/2005) |
| 06/02/2005 | 180 | Letter dated 6/2/05 from Joshua Shainberg to USMJ Pohorelsky, enclosing a copy of letter to pltff re: Mr. Shainberg's objections to the request for exhibits to be presented at trial. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 06/06/2005) |
| 06/07/2005 | 181 | Letter dated 6/2/05 from Joshua Shainberg to USMJ Pohorelsky, clarifying petitioner's letters to the SEC of 5/27/05 and to Your Honor of 6/2/05. Petitioner also includes additional exhibits supplied to the SEC. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 06/08/2005) |
| 06/09/2005 | 182 | Exhibit List *List of Witnesses and Exhibits 6-9-05* by Securities and Exchange Commission.. (Attachments: # 1 Affidavit Declaration of Service)(Ozaruk, Bohdan) (Entered: 06/09/2005) |
| 06/09/2005 | 183 | TRANSCRIPT of Civil Cause for Conference before Mag Pohorelsky held on 5/12/05 before Judge Mag Pohorelsky. Counsel for parties present. Court Transcriber: Aria Transcriptions; Court Transcriber: Aria Transcriptions. (Fernandez, Erica) (Entered: 06/10/2005) |
| 06/16/2005 | 184 | TRIAL BRIEF *Pre-Trial Evidentiary Memorandum* by Securities and Exchange Commission. (Attachments: # 1 Affidavit Bohdan Ozaruk Declaration# 2 Affidavit Service Certificate) (Ozaruk, Bohdan) (Entered: 06/16/2005) |
| 06/17/2005 | 185 | TRIAL BRIEF *Supplemental Declaration* by Securities and Exchange Commission. (Attachments: # 1 Affidavit Edward Roberts Declaration# 2 Affidavit Certificate of Service) (Ozaruk, Bohdan) (Entered: 06/17/2005) |
| 06/23/2005 | 186 | Proposed Jury Instructions by Securities and Exchange Commission. (Attachments: # 1) |

**GRAUBARD DECL. EX. 2**                                    **SEC064**

| | | (Ozaruk, Bohdan) (Entered: 06/23/2005) |
|---|---|---|
| 06/29/2005 | 187 | TRANSCRIPT of Pretrial Conference held on 6/23/05 before Judge Pohorelsky. Counsel for parties present. Court Transcriber: Elizabeth Barron; Transcription Co.: Aria Transcriptions. (Fernandez, Erica) (Entered: 06/30/2005) |
| 06/29/2005 | 188 | Letter dated 6/28/05 from Joshua Shainberg to USMJ Pohorelsky, re: several matters related to the last hearing and also referring to objections on exhibits. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 07/06/2005) |
| 07/06/2005 | 190 | Letter dated 7/8/05 from Joshua Sahinberg to USMJ Pohorelsky, informing Your Honor that Mr. Shainberg is unable to locate Mr. William McKay, former President of Securities Planners Inc., indicating that Exhibit #510 requested by pltff should be admitted and wishing to introduce three exhibits, not introduced before. (w/ Exhibits A-D enc.) Fwd. to USMJ Pohorelsky. (Galeano, Sonia) (Entered: 07/11/2005) |
| 07/07/2005 | 189 | Proposed Voir Dire by Securities and Exchange Commission. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 07/07/2005) |
| 07/11/2005 | 191 | Minute Entry: Civil Cause for Jury Selection and Trial held before Magistrate Viktor V. Pohorelsky on 7/11/2005. Case called. All sides present. Jury selected and sworn. Opening statements given. William Thomas sworn, testifies - direct examination. Trial adjourned until 7/12/05 at 9:15 a.m. (Court Reporter Anthony Mancuso.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/12/2005 | 192 | Minute Entry: Jury Trial held before Magistrate Viktor V. Pohorelsky on 7/12/2005. Case called. All sides present. William Thomas continues testimony - direct & cross examination. Raymon Irni sworn, testifies - direct examination. Trial adjourned until 7/13/05 at 9:15 a.m. (Court Reporter Anthony Mancuso.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/13/2005 | 193 | Minute Entry: Jury Trial held before Magisrate Viktor V. Pohorelsky on 7/13/2005. Case called. All sides present. Raymond Irni continues testimony - direct and cross examination. Video deposition testimony of the following witnesses presented: Pedro Gomes DiBrito, Clifford Haverkamp, Richard Troy, George Kissner, and Peter Savelo. Deposition testimony of Edward D. Roberts read into the record. Trial adjourned until 7/14/05 at 9:15 a.m. (Court Reporter Allan Sherman.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/14/2005 | 194 | Minute Entry: Jury Trial held before Magistrate Viktor V. Pohorelsky on 7/14/2005. Case called. All sides present. Jury trial continues. Deposition testimony of Edward D. Roberts continued to be read into the record. Video deposition testimony of the following witnesses presented: Bindiya Moorjani, Dimitry Pinkenberg, and Leonid Bersudski. Trial adjourned until 7/19 at 9:15 a.m. (Court Reporter Mickey Brymer.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/18/2005 | 195 | Minute Entry: Jury Trial held before Magistrate Viktor V. Pohorelsky on 7/18/2005. Cae called. All sides present. Jury trial continues. Joshua Shainberg sworn, testifies - direct and cross examinaiton. Trial adjourned until 7/18/05 at 9:15 a.m. (Court Reporter Diana Pereira.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/19/2005 | 196 | Minute Entry: Jury Trial held before Magistrate Viktor V. Pohorelsky on 7/19/2005. Case called. All sides present. Jury trial continues. Joshua Shainberg continues testimony - cross, redirect and re-cross examination. Michael Lipkin sworn, testifies - direct, cross, redirect and re-cross examination. Video deposition of Ralph Napletana presented. Trial adjourned until 7/20/05 at 9:15 a.m. (Court Reporter Ronald Tolkin.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/20/2005 | 197 | Minute Entry: Jury Trial held before Magistrate Viktor V. Pohorelsky on 7/20/2005. Case called. All sides present. Jury trial continues. Robert Shatles sworn, testifies - direct, cross, redirect and re-cross examination. Tamara Hall sworn, testifies - direct and cross examination. Plaintiff rests. Defendant Robert Shatles rests. Defendant Michael Lipkin rests. Joshua Shainberg testifies - direct and cross examination. Bins Moorjani sworn, testifies - direct, cross, redirect and re-cross examination. Defendant Joshus Shainberg rests. Trial adjourned until 7/21/05 at 9:00 a.m. (Court Reporter Ronald Tolkin.) (Black, Amanda) (Entered: 07/22/2005) |
| 07/21/2005 | 207 | Minute Entry for proceedings held before Viktor V. Pohorelsky : Jury Trial held on 7/21/2005. Counsel for parties present. Jury Trial continues, Pre-charge conference held. Closing statements, trial adjourned until 7/22/05 at 9:15 AM. (Court Reporter Anthony Mancuso.) |

| | | |
|---|---|---|
| | | (Fernandez, Erica) (Entered: 08/01/2005) |
| 07/22/2005 | 208 | Minute Entry for proceedings held before Viktor V. Pohorelsky: Jury Trial held on 7/22/2005. Counsel for parties present. Jury trial continues. Court charges jury. Jury commences deliberations. Trial adjourned until 7/25 @ 9:15 AM. (Court Reporter Anthony Mancuso.) (Fernandez, Erica) (Entered: 08/01/2005) |
| 07/25/2005 | 210 | Minute Entry for proceedings held before Viktor V. Pohorelsky : Jury Trial held on 7/25/2005. Counsel for parties present. Rulings: Jury trial continues; Jury continues deliberations. Jury returns a verdict in favor of the plaintiff in part, and in part in favor of the defts; Jury excused with the thanks of the Court. Plaintiff to submit authority in support of judgment by 9/9/05; Any opposition by defts Shainberg & Lipkin shall be submitted by 9/23/05; Any reply by the plaintiff shall be submitted by 9/30/05 (Court Reporter Anthony Frisolone.) (Fernandez, Erica) (Entered: 08/01/2005) |
| 07/26/2005 | 198 | TRANSCRIPT of Proceedings held on 7/11/05 before Judge VVP. Court Reporter: Anthony M. Mancuso. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 199 | TRANSCRIPT of Proceedings held on 7/12/05 before Judge VVP. Court Reporter: Anthony M. Mancuso. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 200 | TRANSCRIPT of Proceedings held on 7/13/05 before Judge VVP. Court Reporter: Allan R. Sherman. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 201 | TRANSCRIPT of Proceedings held on 7/14/05 before Judge VVP. Court Reporter: Mickey Brymer. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 202 | TRANSCRIPT of Proceedings held on 7/18/05 before Judge VVP. Court Reporter: Diana Pereira. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 203 | TRANSCRIPT of Proceedings held on 7/19/05 before Judge VVP. Court Reporter: Ronald E. Tolkin. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 204 | TRANSCRIPT of Proceedings held on 7/20/05 before Judge VVP. Court Reporter: Mickey Brymer. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 205 | TRANSCRIPT of Proceedings held on 7/21/05 before Judge VVP. Court Reporter: Anthony Mancuso. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 07/26/2005 | 206 | TRANSCRIPT of Proceedings held on 7/22/05 before Judge Anthony Mancuso. Court Reporter: Anthony Mancuso. Jury Trial. (Clark, Shawn) (Entered: 07/26/2005) |
| 08/01/2005 | 209 | ORDER OF SUSTENANCE LODGING & TRANSPORTATION: . Ordered by Judge Viktor V. Pohorelsky on 7/22/05. (Fernandez, Erica) (Entered: 08/01/2005) |
| 08/01/2005 | 211 | ORDER OF SUSTENANCE LODGING AND TRANSPORTATION. Ordered by Judge Viktor V. Pohorelsky on 7/25/05. (Fernandez, Erica) (Entered: 08/01/2005) |
| 08/01/2005 | 212 | JURY VERDICT SHEET. (Fernandez, Erica) (Entered: 08/01/2005) |
| 09/08/2005 | 213 | Mail Returned as Undeliverable. Mail sent(default judgment as to Jonathan D. Lyons dated 1/21/05) to Jonathan D. Lyons; returned as undeliverable. (Guzzi, Roseann) (Entered: 09/08/2005) |
| 09/09/2005 | 214 | TRIAL BRIEF *Memo of Law in Support of Commission's Request for Post-Trial Relief* by Securities and Exchange Commission. (Attachments: # 1 Affidavit Declaration in Support of Plaintiff's Request for Post-Trial Relief# 2 Exhibit 1# 3 Exhibit 102A# 4 Exhibit 702# 5 Exhibit 703# 6 Exhibit 704# 7 Exhibit 705# 8 Exhibit 706# 9 Exhibit 707# 10 Exhibit 708# 11 Exhibit 709# 12 Exhibit 711# 13 Affidavit Certificate of Service)(Ozaruk, Bohdan) (Entered: 09/09/2005) |
| 09/14/2005 | 215 | Letter dated 9/14/05 from Joshua Shainberg to USMJ Pohorelsky, informing Your Honor that Mr. Shainberg did not receive defts response until 9/12/05 by Fed-Ex and requesting a continuance to respond to the judgment recommendation by 10/15/05, be permitted. Mr. Shainberg further informs the Court that he has retained an attorney, Charles Witherwax, who will be available after 9/18/05. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: |

**GRAUBARD DECL. EX. 2**                                                                **SEC066**

| | | 09/16/2005 |
|---|---|---|
| 09/16/2005 | 216 | Letter from Bohdan S. Ozaruk to M.J. Viktor Pohorelsky Regarding Defendant's Request For Extension of Time. (Ozaruk, Bohdan) (Entered: 09/16/2005) |
| 09/20/2005 | 217 | ORDER re 215 Letter, granting extensions of time for opposition and reply papers regarding the plaintiff's request for post-trial relief. Ordered by Judge Viktor V. Pohorelsky on 9/20/2005. (Pohorelsky, Viktor) (Entered: 09/20/2005) |
| 09/26/2005 | 218 | Letter from Bohdan S. Ozaruk to M.J. Pohorelsky Regarding Accompanying Proposed Final Judgment. (Attachments: # 1 Text of Proposed Order Proposed Final Judgment# 2 Affidavit Service Certificate)(Ozaruk, Bohdan) (Entered: 09/26/2005) |
| 10/18/2005 | 219 | ORDER re Appearance of Counsel and other documents submitted by incoming counsel for the defendant Joshua Shainberg. Ordered by Judge Viktor V. Pohorelsky on 10/18/2005. (Pohorelsky, Viktor) (Entered: 10/18/2005) |
| 10/27/2005 | 220 | TRIAL BRIEF *Plaintiff's Reply Brief in Support of Post-Trial Relief Request* by Securities and Exchange Commission. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 10/27/2005) |
| 10/27/2005 | 222 | MEMORANDUM in Opposition to Plaintiff's Request for Post-Trial Relief. by Joshua S. Shainberg. (Black, Amanda) (Entered: 11/01/2005) |
| 10/28/2005 | 221 | NOTICE of Appearance by Charles H. Witherwax on behalf of Joshua S. Shainberg (Jackson, Ramona) (Entered: 10/28/2005) |
| 11/02/2005 | 223 | MEMORANDUM in Opposition *supplemental* by Joshua S. Shainberg. (Witherwax, Charles) (Entered: 11/02/2005) |
| 11/04/2005 | 224 | TRIAL BRIEF *Request to Strike Shainberg Supplemental Response* by Securities and Exchange Commission. (Attachments: # 1 Exhibit Exhibit to Request to Strike# 2 Affidavit Service Certificate)(Ozaruk, Bohdan) (Entered: 11/04/2005) |
| 01/03/2006 | 225 | First MOTION for Discovery *Requesting Waiver of Rule 26(f) Conference* by Securities and Exchange Commission. (Attachments: # 1 # 2 # 3)(Ozaruk, Bohdan) (Entered: 01/03/2006) |
| 01/09/2006 | 226 | MEMORANDUM AND ORDER concerning relief to be awarded against the defendants Lipkin and Shainberg. Ordered by Judge Viktor V. Pohorelsky on 1/9/2005. (Pohorelsky, Viktor) (Entered: 01/09/2006) |
| 01/12/2006 | | ORDER granting 225 Motion for Discovery, by electronic endorsement: the proposed Order which is attachment 2 to the plaintiff's motion and which permits the plaintiff to depose Philip Milligan prior to holding a Rule 26(f) conference is hereby SO ORDERED. Ordered by JudgeViktor V. Pohorelsky on 1/12/2006. (Pohorelsky, Viktor) (Entered: 01/12/2006) |
| 01/12/2006 | 227 | NOTICE of filing the Corrected Decision and Order (Doc. Entry No. 226). (Vaughn, Terry) (Entered: 01/12/2006) |
| 01/13/2006 | 229 | Deft MILLIGAN'S OBJECTIONS to the Commissioner's motion to seek discovery prior to holding a Rule 26(f) conference, filed Phillip J. Milligan. (Fwd. to USDJ Gershon) (Galeano, Sonia) (Entered: 01/19/2006) |
| 01/18/2006 | 228 | RESPONSE in Opposition re 225 First MOTION for Discovery *Requesting Waiver of Rule 26 (f) Conference Letter to Judge Pohorelsky dated Jan. 18, 2006* filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Certificate of Service)(Ozaruk, Bohdan) (Entered: 01/18/2006) |
| 01/23/2006 | 230 | ORDER re 229 Memorandum in Opposition filed by Phillip J. Milligan, adhering to original ruling granting leave to conduct the deposition of Milligan. See order. Ordered by Judge Viktor V. Pohorelsky on 1/23/2006. (Pohorelsky, Viktor) (Entered: 01/23/2006) |
| 01/23/2006 | 231 | NOTICE OF APPEAL by Joshua S. Shainberg. Filing fee $ 255, receipt number 1632432. (Witherwax, Charles) Modified on 1/26/2006 (Gonzalez, Mary). (Entered: 01/23/2006) |
| 01/25/2006 | 232 | NOTICE of Change of address by Charles H. Witherwax (Witherwax, Charles) (Entered: 01/25/2006) |

**GRAUBARD DECL. EX. 2**                                    **SEC067**

| 01/26/2006 | | Electronic Index to Record on Appeal sent to US Court of Appeals re 132 Status Conference, 211 Order, 223 Memorandum in Opposition, 167 Reply to Response to Motion, 209 Order, 140 Mail Returned, 185 Trial Brief, 181 Letter,, 157 Letter,, 156 Transcript, 182 Exhibit List, 229 Memorandum in Opposition, 126 REPORT AND RECOMMENDATIONS re [91] Motion for Default Judgment filed by Securities and Exchange Commission, 139 Letter, 150 Reply to Response to Motion,, 141 Letter, 222 Memorandum in Opposition, 216 Letter, 146 Default Judgment, 225 First MOTION for Discovery *Requesting Waiver of Rule 26(f) Conference*, 180 Letter, 218 Letter, 135 First MOTION for Default Judgment as to *Timothy Masley*, 228 Response in Opposition to Motion,, 133 First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons*, 196 Jury Trial - Held,, 129 Letter, 221 Notice of Appearance, 214 Trial Brief,, 193 Jury Trial - Held,, 188 Letter, 155 MOTION to Dismiss, 136 First MOTION for Default Judgment as to *Jonathan Lyons*, 124 Letter, 212 Jury Verdict, 207 Jury Trial - Held,, 190 Letter,, 191 Jury Selection,, Jury Trial - Begun,, 137 First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons*, 125 Letter, 145 Default Judgment, 232 NOTICE of Change of Address/Firm/Email, 168 NOTICE of Change of Address/Firm/Email, 127 Memorandum & Opinion,, 131 Order, 231 Notice of Appeal, 186 Proposed Jury Instructions, 151 Evidentiary Hearing, 174 Letter,, 144 First MOTION for Discovery *Modifying The Court's Nov. 1, 2004 Decision and Order to Permit Document Discovery*, 153 Order on Motion for Discovery, 179 MOTION to Dismiss, 224 Trial Brief, 215 Letter,, 194 Jury Trial - Held,, 177 Letter, 162 Status Conference, 138 Letter, 147 MOTION for More Definite Statement *to Deny Pltff's Motion to Modify the Court's 11/04 Decision and Order to Permit Document Discovery, filed*, 171 Status Conference, 170 Order, 154 Reply in Support, 192 Jury Trial - Held,, 227 Notice (Other), 208 Jury Trial - Held,, 134 First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons*, 226 Memorandum & Opinion, 219 Order, 189 Proposed Voir Dire, 175 Notice (Other), 166 Objection to Report and Recommendations, 230 Order, 152 Order,, 130 Order Setting Hearing on Motion,, 143 Motion Hearing,, 217 Order, 173 Order, 176 Consent to Jurisdiction by US Magistrate Judge, 178 Exhibit List, 197 Jury Trial - Held,,, 184 Trial Brief, 128 Certificate of Service, 220 Trial Brief, 172 Answer to Complaint, 195 Jury Trial - Held,, 210 Jury Trial - Held,, For docket entries without a hyperlink, contact the court and we'll arrange for the document(s) to be made available to you. (Gonzalez, Mary) (Entered: 01/26/2006) |
| 02/06/2006 | | SCHEDULING ORDER: Status Conference set for 2/27/2006 11:00 AM before Magistrate-Judge Viktor V. Pohorelsky. See annexed order for details. Ordered by Judge Viktor V. Pohorelsky on 2/6/06. (Newton, Joan) (Entered: 02/06/2006) |
| 02/06/2006 | 233 | SCHEDULING ORDER: Status Conference set for 2/27/2006 11:00 AM before Magistrate-Judge Viktor V. Pohorelsky. See attached order which was omitted from above docket entry dated 2/6/06. Ordered by Judge Viktor V. Pohorelsky on 2/6/06. (Newton, Joan) (Entered: 02/06/2006) |
| 02/07/2006 | 234 | Letter *Requesting Pre-Motion Conference* by Securities and Exchange Commission. (Attachments: # 1 Affidavit Certificate of Service)(Ozaruk, Bohdan) (Entered: 02/07/2006) |
| 02/22/2006 | 235 | Milligan's REPLY to the Commission's Letters, filed by Phillip Milligan. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 02/27/2006) |
| 02/22/2006 | 236 | Milligan's REQUEST for an Adjournment. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 02/27/2006) |
| 02/24/2006 | | RESET CONFERENCE: The conference scheduled for 2/27/06 at 11:00 a.m. is adjourned to 3/13/06 at 12:00 p.m. Ordered by Judge Viktor V. Pohorelsky on 2/24/06. (Newton, Joan) (Entered: 02/24/2006) |
| 03/08/2006 | 237 | Letter *Response to Milligan's Request for Adjournment* by Securities and Exchange Commission. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 03/08/2006) |
| 03/09/2006 | 238 | ORDER re defendant Milligan's request for adjournment and 237 Letter in opposition filed by Securities and Exchange Commission, denying adjournment but permitting defendant's participation in conference by telephone. Ordered by Judge Viktor V. Pohorelsky on 3/9/2006. (Pohorelsky, Viktor) (Entered: 03/09/2006) |
| 03/09/2006 | 239 | FINAL JUDGMENT as to defendants Michael Lipkin and Joshua Shainberg. ( Ordered by Judge Viktor V. Pohorelsky on 1/13/06 )(Guzzi, Roseann) (Entered: 03/09/2006) |

**GRAUBARD DECL. EX. 2**                                                  **SEC068**

| 03/09/2006 | | FIRST SUPPLEMENTAL Electronic Index to Record on Appeal sent to US Court of Appeals re 235 Notice (Other), 233 Scheduling Order, 239 Judgment, 236 Notice (Other), 237 Letter, 238 Order, For docket entries without a hyperlink, contact the court and we'll arrange for the document(s) to be made available to you. (Gonzalez, Mary) (Entered: 03/09/2006) |
|---|---|---|
| 03/10/2006 | 240 | NOTICE OF APPEAL as to 239 Judgment by Michael V. Lipkin. Filing fee $ 255, receipt number 322342. NOA served electronically. (Gonzalez, Mary) (Entered: 03/10/2006) |
| 03/10/2006 | | Electronic Index to Record on Appeal sent to US Court of Appeals re 132 Status Conference, 167 Reply to Response to Motion, 209 Order, 140 Mail Returned, 181 Letter,, 156 Transcript, 229 Memorandum in Opposition, 126 REPORT AND RECOMMENDATIONS re [91] Motion for Default Judgment filed by Securities and Exchange Commission, 139 Letter, 141 Letter, 222 Memorandum in Opposition, 225 First MOTION for Discovery *Requesting Waiver of Rule 26(f) Conference*, 218 Letter, 135 First MOTION for Default Judgment as to *Timothy Masley*, 228 Response in Opposition to Motion,, 133 First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons*, 212 Jury Verdict, 207 Jury Trial - Held,, 191 Jury Selection,, Jury Trial - Begun,, 137 First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons*, 125 Letter, 145 Default Judgment, 231 Notice of Appeal, 151 Evidentiary Hearing, 174 Letter,, 142 Letter, 144 First MOTION for Discovery *Modifying The Court's Nov. 1, 2004 Decision and Order to Permit Document Discovery*, 179 MOTION to Dismiss, 224 Trial Brief, 194 Jury Trial - Held,, 177 Letter, 162 Status Conference, 171 Status Conference, 154 Reply in Support, 227 Notice (Other), 219 Order, 189 Proposed Voir Dire, 175 Notice (Other), 166 Objection to Report and Recommendations, 152 Order,, 130 Order Setting Hearing on Motion,, 143 Motion Hearing,, 217 Order, 121 Status Conference, 173 Order, 128 Certificate of Service, 172 Answer to Complaint, 211 Order, 223 Memorandum in Opposition, 185 Trial Brief, 234 Letter, 157 Letter, 182 Exhibit List, 150 Reply to Response to Motion,, 146 Default Judgment, 216 Letter, 180 Letter, 239 Judgment, 236 Notice (Other), 196 Jury Trial - Held,, 129 Letter, 193 Jury Trial - Held,, 214 Trial Brief,, 221 Notice of Appearance, 136 First MOTION for Default Judgment as to *Jonathan Lyons*, 155 MOTION to Dismiss, 188 Letter, 124 Letter, 190 Letter,, 238 Order,, 127 Memorandum & Opinion,, 168 NOTICE of Change of Address/Firm/Email, 131 Order, 186 Proposed Jury Instructions, 153 Order on Motion for Discovery, 215 Letter,, 147 MOTION for More Definite Statement *to Deny Pltff's Motion to Modify the Court's 11/1/04 Decision and Order to Permit Document Discovery, filed*, 138 Letter, 235 Notice (Other), 170 Order, 240 Notice of Appeal, 192 Jury Trial - Held,, 134 First MOTION for Default Judgment as to *Timothy Masley and Jonathan Lyons*, 208 Jury Trial - Held,, 226 Memorandum & Opinion, 230 Order, 176 Consent to Jurisdiction by US Magistrate Judge, 178 Exhibit List, 197 Jury Trial - Held,,, 237 Letter, 184 Trial Brief, 220 Trial Brief, 195 Jury Trial - Held,, 210 Jury Trial - Held,, For docket entries without a hyperlink, contact the court and we'll arrange for the document(s) to be made available to you. (Gonzalez, Mary) (Entered: 03/10/2006) |
| 03/10/2006 | 242 | DEFT Milligan's LETTER TO THE COURT, opposing pltff's assertion that the matter of this case against pltff may be decided by summary judgment. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 03/13/2006) |
| 03/13/2006 | 241 | Minute Entry for proceedings held before Magistrate Judge Viktor V. Pohorelsky : Status Conference held on 3/13/2006. See annexed conference calendar for details (Newton, Joan) (Entered: 03/13/2006) |
| 04/05/2006 | 243 | ORDER re 234 Letter filed by Securities and Exchange Commission,, 242 Affidavit in Opposition filed by Phillip J. Milligan.Plaintiff SEC may make a summary judgment motion according to the following schedule: Plaintiff shall serve its motion on or before June 5, 2006. Defendant will serve his opposition on or before June 19, 2006. Plaintiff will serve its reply in further support of its motion on or before July 3, 2006. (Signed by Judge Nina Gershon on 03/31/06.) (Coward, Nicole) (Entered: 04/05/2006) |
| 04/19/2006 | 244 | TRANSCRIPT of Civil Cause for Status Conference held on 3/13/06 before Judge Viktor V. Pohorelsky. Court Reporter: Fiore Transcription Service. (Black, Amanda) (Entered: 04/19/2006) |
| 05/10/2006 | 245 | First MOTION for Discovery *Request for Sanctions Against defendant Phillip Milligan* by Securities and Exchange Commission. (Ozaruk, Bohdan) (Entered: 05/10/2006) |

**GRAUBARD DECL. EX. 2**                                    **SEC069**

| | | |
|---|---|---|
| 05/11/2006 | 246 | MILLIGAN'S OPPOSITION TO THE SEC'S May 9th LETTER, filed by Phillip J. Milligan. (Fwd. to USDJ Gershon)(Galeano, Sonia) (Entered: 05/16/2006) |
| 05/19/2006 | 247 | Minute Entry for proceedings held before Magistrate Judge Viktor V. Pohorelsky : Status Conference held on 5/19/2006. see annexed conference calendar for details. (Newton, Joan) (Entered: 05/19/2006) |
| 05/26/2006 | 248 | MILLIGAN'S REQUEST TO REOPEN DISCOVERY, filed by Phillip J. Milligan. (fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 06/02/2006) |
| 06/02/2006 | 249 | RESPONSE to Discovery Request from Phillip Milligan by Securities and Exchange Commission.(Ozaruk, Bohdan) (Entered: 06/02/2006) |
| 06/09/2006 | 250 | ORDER re 248 Notice (Other) filed by Phillip J. Milligan, 249 Response to Discovery filed by Securities and Exchange Commission, denying request to reopen discovery. Ordered by Judge Viktor V. Pohorelsky on 6/9/2006. (Pohorelsky, Viktor) (Entered: 06/09/2006) |
| 06/20/2006 | | ORDER, upon the defendant Milligan's application and with the consent of the plaintiff, the deadline for the defendant's opposition to the plaintiff's summary judgment motion is hereby extended by two days to June 21, 2006. Ordered by Judge Viktor V. Pohorelsky on 6/20/2006. (Pohorelsky, Viktor) (Entered: 06/20/2006) |
| 06/30/2006 | 251 | MOTION for Summary Judgment by Securities and Exchange Commission. Responses due by 6/21/2006 (Attachments: # 1 # 2 # 3 Memorandum of Law# 4 Affidavit # 5 Exhibit 1# 6 Exhibit 2# 7 Exhibit 2a# 8 Exhibit 3# 9 Exhibit 4# 10 Exhibit 5# 11 Exhibit 6# 12 Exhibit 6a# 13 Exhibit 6b# 14 Exhibit 6b# 15 Exhibit 7# 16 Exhibit 7a# 17 Exhibit 8# 18 Exhibit 9# 19 Affidavit Certificate of Service)(Ozaruk, Bohdan) (Entered: 06/30/2006) |
| 06/30/2006 | 252 | MOTION for Summary Judgment *Papers in Opposition to Summary Judgment* by Phillip J. Milligan. Responses due by 7/3/2006 (Attachments: # 1 Statement of Material Facts# 2 Letter from Milligan to Court 6-19-06# 3 Memorandum of Law in Opposition to Summary Judgment# 4 Affidavit Declaration)(Ozaruk, Bohdan) (Entered: 06/30/2006) |
| 06/30/2006 | 253 | REPLY to Response to Motion re 252 MOTION for Summary Judgment *Papers in Opposition to Summary Judgment* filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Certificate of Service)(Ozaruk, Bohdan) (Entered: 06/30/2006) |
| 06/30/2006 | | Motions terminated, docketed incorrectly 252 MOTION for Summary Judgment *Papers in Opposition to Summary Judgment* filed by Phillip J. Milligan,. **This is not a motion; opposition documents. (Guzzi, Roseann) (Entered: 09/26/2006) |
| 07/05/2006 | 262 | NOTICE of service of defendant's opposition to plaintiffs motion for summary judgment by pro- se defendant Phillip J. Milligan, dated 6/21/06. (Guzzi, Roseann) (Entered: 07/13/2006) |
| 07/07/2006 | 254 | Minute Entry for proceedings held before Magistrate Judge Viktor V. Pohorelsky : Telephone Conference held on 7/7/2006. See annexed conference calendar. (Newton, Joan) (Entered: 07/07/2006) |
| 07/07/2006 | 255 | DEFT MILLIGAN'S MOTION for Leave to File a Surreply in Opposition to Pltff's Motion for Summary Judgment against Milligan. (Galeano, Sonia) Fwd. to USMJ Pohorelsky. (Entered: 07/10/2006) |
| 07/07/2006 | 256 | DEFT MILLIGAN'S SURREPLY in Support of Deft's Opposition to Pltff's Motion for Summary Judgment against Milligan. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 07/10/2006) |
| 07/07/2006 | 257 | NOTICE OF SERVICE of the Opposition to Motion for Summary Judgment, filed by Phillip J. Milligan. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 07/10/2006) |
| 07/07/2006 | 258 | DECLARATION in Support of Deft Milligan's Opposition to Pltff SEC's Motion for Summary Judgment, filed by Phillip J. Milligan. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 07/10/2006) |
| 07/07/2006 | 259 | RULE 56.1 STATEMENT OF MATERIALS FACTS in Support of His Opposition to Pltff SEC's Motion for Summary Judgment, filed by Phillip J. Milligan. (fwd. to USMJ Pohorelsy) (Galeano, Sonia) (Entered: 07/10/2006) |

**GRAUBARD DECL. EX. 2**                                **SEC070**

| 07/07/2006 | 260 | DEFT MILLIGAN'S MEMORANDUM OF POINTS AND AUTHORITIES in Support of Deft Milligan's Opposition to Pltff SEC's Motion for Summary Judgment against Deft Milligan. (w/ Exhibits attached) (fwd. to USMJ Pohorelsky)(Galeano, Sonia) (Entered: 07/10/2006) |
| --- | --- | --- |
| 07/10/2006 | 261 | RESPONSE to Motion re 255 MOTION for Leave to File *a Surreply in Opposition to Pltff's Motion for Summary Judgment against MIlligan, filed July 10, 2006* filed by Securities and Exchange Commission. (Attachments: # 1)(Ozaruk, Bohdan) (Entered: 07/10/2006) |
| 09/26/2006 | 263 | ORDER REFERRING MOTION: 251 MOTION for Summary Judgment filed by Securities and Exchange Commission is hereby referred to Magistrate Pohorelsky for report and recommendation. ( Ordered by Judge Nina Gershon on 9/25/06 )(Guzzi, Roseann) (Entered: 09/26/2006) |
| 11/22/2006 | 264 | NOTICE of Appearance by John J. Graubard on behalf of Securities and Exchange Commission (Graubard, John) (Entered: 11/22/2006) |
| 01/18/2007 | 265 | NOTICE by Securities and Exchange Commission *Restraining Notice CPLR 5222 to Morgan Stanley DW Inc.* (Graubard, John) (Entered: 01/18/2007) |
| 01/18/2007 | 266 | NOTICE by Securities and Exchange Commission *Restraining Notice CPLR 5222 to Laryssa Shainberg* (Graubard, John) (Entered: 01/18/2007) |
| 01/18/2007 | 267 | NOTICE by Securities and Exchange Commission *CPLR 5222 Notice to Judgment Debtor Joshua S. Shainberg* (Graubard, John) (Entered: 01/18/2007) |
| 05/04/2007 | 268 | Letter MOTION to Compel *Deposition of Laryssa Shainberg* by Securities and Exchange Commission. (Attachments: # 1 Exhibit Exhibits to Letter Motion to Compel Deposition of Laryssa Shainberg) (Graubard, John) (Entered: 05/04/2007) |
| 05/07/2007 | 269 | ORDER TO SHOW CAUSE re Laryssa Shainberg. Show Cause Hearing set for 5/11/2007 11:00 AM in 13A South before Magistrate-Judge Viktor V. Pohorelsky. Ordered by Judge Viktor V. Pohorelsky on 5/7/2007. (Pohorelsky, Viktor) (Entered: 05/07/2007) |
| 05/09/2007 | 270 | AFFIDAVIT/AFFIRMATION re 269 Order to Show Cause *Certification of Service on Laryssa Shainberg* by Securities and Exchange Commission (Graubard, John) (Entered: 05/09/2007) |
| 05/10/2007 | 271 | STIPULATION re 268 Letter MOTION to Compel *Deposition of Laryssa Shainberg*, 269 Order to Show Cause *Stipulation Setting Date of Deposition of Laryssa Shainberg* by Securities and Exchange Commission (Graubard, John) (Entered: 05/10/2007) |
| 05/10/2007 | | STIPULATION AND ORDER: The Stipulation (docket entry 271) is hereby So Ordered. In view of the stipulation, the hearing scheduled by the Order to Show Cause (docket entry 269) is unnecessary and it is hereby canceled. The plaintiff shall insure that the witness and other affected parties are aware of the cancellation of the hearing. Ordered by Judge Viktor V. Pohorelsky on 5/10/2007. (Pohorelsky, Viktor) (Entered: 05/10/2007) |
| 06/05/2007 | 272 | REPORT AND RECOMMENDATIONS re 251 MOTION for Summary Judgment filed by Securities and Exchange Commission: the motion should be granted. Objections to R&R due by 6/25/2007. Ordered by Judge Viktor V. Pohorelsky on 6/5/2007. (Pohorelsky, Viktor) (Entered: 06/05/2007) |
| 06/06/2007 | 273 | CERTIFICATE of Counsel *Service of Report and Recommendation on defendant Phillip J. Milligan* by Bohdan Stephen Ozaruk on behalf of Securities and Exchange Commission (Ozaruk, Bohdan) (Entered: 06/06/2007) |
| 06/19/2007 | 274 | DEFT Milligan's OBJECTIONS to 272 Report and Recommendations. (Fwd. to USMJ Pohorelsky) (Galeano, Sonia) (Entered: 06/20/2007) |
| 07/03/2007 | 275 | RESPONSE in Support re 272 REPORT AND RECOMMENDATIONS re 251 MOTION for Summary Judgment filed by Securities and Exchange Commission *Response to Defendant Milligan's Opposition to Report and Recommendation* filed by Securities and Exchange Commission. (Ozaruk, Bohdan) (Entered: 07/03/2007) |
| 07/03/2007 | 276 | MOTION for Summary Judgment *Certificate of Service-Response to Defendant Milligan's Opposition to Report and Recommendation* by Securities and Exchange Commission.Responses due by 7/5/2007. (Ozaruk, Bohdan) (Entered: 07/03/2007) |

**GRAUBARD DECL. EX. 2**                                         **SEC071**

| 07/16/2007 | 277 | DEFT Milligan's OBJECTION to the SEC's 275 Response. (Fwd. to USDJ Gershon) (Galeano, Sonia) (Entered: 07/17/2007) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/06/2007 14:02:36 | | |
| **PACER Login:** jg0264 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 1:99-cv-07357-VVP |
| **Billable Pages:** 19 | **Cost:** | 1.52 |

**GRAUBARD DECL. EX. 2**                                    **SEC072**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MICHAEL LIPKIN, et al.,

Defendants.

99 Civ. 7357 (NG) (VVP)

## FINAL JUDGMENT AS TO DEFENDANTS
## MICHAEL LIPKIN AND JOSHUA SHAINBERG

The United States Securities and Exchange Commission ("Commission"), having filed an

Amended Complaint on November 15, 2002, and defendants Michael Lipkin and Joshua

Shainberg (collectively "Defendants") having answered the Amended Complaint; a jury trial

having been held in this matter; and the jury having found unanimously that:

- Defendant Lipkin knowingly participated in a scheme to defraud investors, which

  involved the receipt of undisclosed payment in exchange for recommending Alter Sales

  Inc. ("Alter Sales") stock to investors;

- defendant Shainberg knowingly participated in a scheme to defraud investors, which

  involved the receipt of undisclosed payment in exchange for recommending Alter Sales

  stock to investors;

- defendant Lipkin knowingly participated in a scheme to defraud investors in connection

  with Alter Sales stock, and that he knew or recklessly disregarded that Alter Sales stock

  was not a sound investment;

**GRAUBARD DECL. EX. 3**                                    **SEC073**

- defendant Lipkin knew that brokers under his supervision were making false and misleading statements to customers to the effect that Alter Sales stock was a good or sound investment, and he participated in the brokers' false statements to their customers either by encouraging or instructing them to make such statements or in some other manner; and

- that those false statements were material,

the Court finds that Defendants' conduct constitutes violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], and Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], and accordingly:

## I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

2

(c)     to engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants

and Defendants' agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities

Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or

instruments of transportation or communication in interstate commerce or by use of the mails,

directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact

or any omission of a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading;

or

(c)     to engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon the purchaser.

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants

are jointly and severally liable for disgorgement of $277,382.45, representing unjust enrichment

as a result of the conduct alleged in the Complaint, together with prejudgment interest in the

amount of $300,277.36, for a total of $577,659.81. The Commission may enforce the Court's

3

judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after ten days following entry of this Final Judgment. In response to any such civil contempt motion by the Commission, Defendants may assert any legally permissible defense. Defendants shall satisfy their obligation by paying $577,659.81 within ten business days to the Clerk of this Court, together with a cover letter identifying Michael Lipkin and Joshua Shainberg as defendants in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendants shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. By making this payment, Defendants relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendants. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS") or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission, in its discretion, may propose a plan to distribute the Fund subject to the Court's approval, or may send the Fund to the U.S. Treasury. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

4

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendant Shainberg

shall pay a civil penalty in the amount of $200,000 pursuant to 15 U.S.C. §§ 77t(d) and

78u(d)(3). Defendant Shainberg shall make this payment within ten (10) business days after

entry of this Final Judgment by certified check, bank cashier's check, or United States postal

money order payable to the Securities and Exchange Commission. The payment shall be

delivered or mailed to the Office of Financial Management, Securities and Exchange

Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia

22312, and shall be accompanied by a letter identifying Joshua Shainberg as defendant in this

action; setting forth the title and civil action number of this action and the name of this Court;

and specifying that payment is made pursuant to this Final Judgment. Defendant shall pay post-

judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendant Lipkin

shall pay a civil penalty in the amount of $200,000 pursuant to 15 U.S.C. §§ 77t(d) and

78u(d)(3). Lipkin shall make this payment within ten (10) business days after entry of this Final

Judgment by certified check, bank cashier's check, or United States postal money order payable

to the Securities and Exchange Commission. The payment shall be delivered or mailed to the

Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432

General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a

letter identifying Michael Lipkin as a defendant in this action; setting forth the title and civil

action number of this action and the name of this Court; and specifying that payment is made

5

pursuant to this Final Judgment. Defendant shall pay post-judgment interest on any delinquent

amounts pursuant to 28 U.S.C. § 1961.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: _January 13, 2006_

/s/

_____
UNITED STATES MAGISTRATE JUDGE

6

Joshua Shainberg                                    February 27, 2007

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------

SECURITIES and EXCHANGE COMMISSION,

                Plaintiff,
                                        99 Civ. 7357
            -against-

MICHAEL LIPKIN, et al.,

                Defendants.

-----------------------------------


                Tuesday, February 27, 2007
                10:47 a.m.



Deposition of JOSHUA SHAINBERG, taken by Plaintiff,

pursuant to Notice, held at the offices of

Securities and Exchange Commission, Three World

Financial Center, New York, New York, before Lisa

Rosenfeld, a Shorthand Reporter and Notary Public

within and for the State of New York.

**GRAUBARD DECL. EX. 4**                                    **SEC079**

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                    February 27, 2007

---

Page 2

APPEARANCES:

SECURITIES AND EXCHANGE COMMISSION
   Three World Financial Center
   New York, New York 10281
   By:  JOHN GRAUBARD, ESQ.
        BOHDAN S. OZARUK, ESQ.

CHARLES H. WITHERWAX, ESQ.
   Attorney for Defendant Joshua Shainberg
   104-60 Queens Boulevard
   Suite 21J
   Forest Hills, New York 11375

        oOo

---

Page 3

1              Shainberg
2       J O S H U A   S H A I N B E R G,
3   having been first duly sworn by Lisa Rosenfeld, a
4   Notary Public for the State of New York, was
5   examined and testified as follows:
6   EXAMINATION BY MR. GRAUBARD:
7       Q.  Would you please state your full name
8   for the record and then spell it.
9       A.  Joshua Shainberg, Joshua Shainberg,
10  J-o-s-h-u-a, S-h-a-i-n-b-e-r-g.          10:48
11      Q.  What is your address, Mr. Shainberg?
12      A.  385 Grand Street, New York, New York,
13  10002.
14      Q.  Are you represented by an attorney?
15      A.  Yes.               10:48
16      MR. GRAUBARD:  Will counsel please
17  identify himself for the record.
18      MR. WITHERWAX:  Yes.  My name is Charles
19  Witherwax, I'm attorney for Mr. Shainberg.
20      MR. GRAUBARD:  Before commencing with   10:48
21  the questioning, Mr. Witherwax and I have
22  agreed on certain stipulations.  First a copy
23  of the transcript will be provided to the
24  witness to read and to sign.
25      Second, for the purpose of the      10:48

---

Page 4

1              Shainberg
2   deposition, any defects in the notice are
3   waived.  Any requirement that you provide
4   proof of your qualifications is waived.  Is
5   that correct, Mr. Witherwax?           10:49
6       MR. WITHERWAX:  That's correct.
7       MR. GRAUBARD:  With respect to the
8   questions, any objection except as to either
9   privilege or the form of the question will be
10  reserved and does not have to be asked.     10:49
11  Objections as to privilege and as to the form
12  of the question are waived, if they are not
13  asserted in the proper manner.  With the
14  understanding, and I always put this in, it's
15  to the extent that the rules of the Federal   10:49
16  Court for the Eastern District provide, to
17  the extent there is any type of inadvertent
18  waiver, those rules will govern.  In other
19  words there are certain rules that allow a
20  privilege to be asserted at a later time.     10:49
21      MR. WITHERWAX:  Yes.
22      MR. GRAUBARD:  So the court rules will
23  govern on that.  It's also stipulated to the
24  extent that the question seeks information
25  that is required under the Federal Rules or   10:50

---

Page 5

1              Shainberg
2   the rules of the Eastern District to be
3   treated confidentially.  The question will be
4   answered but in the transcript or in the
5   exhibit as is filed with the court as it    10:50
6   becomes necessary, the information will be
7   redacted.
8       The information that will be redacted in
9   general is as follows:  For Social Security
10  numbers and any accounts at financial      10:50
11  institutions, only the last four digits will
12  be shown in such filings.  The date of birth
13  will be reduced to the month and the year.
14      If any minor children are involved, they
15  will be shown only by their initials.  Any   10:50
16  residence addresses will be shown only by
17  city and state.  So that will be the
18  redactions that are made, and if there are
19  others requested we will put them on the
20  record.                10:51
21      Is that agreed, Mr. Witherwax?
22      MR. WITHERWAX:  Yes, that's agreed.  I
23  have a remark for the record before we start.
24  We wish to object to this deposition on the
25  grounds that it's premature.  As you both   10:51

---

Joshua Shainberg                                February 27, 2007

1              Shainberg
2      A.   Laryssa Shainberg.
3      Q.   And again subject to redaction, we
4  discussed you have three children, are they under
5  the age of 18?                          10:57
6      A.   Yes.
7      Q.   Could you give me the name of the oldest
8  child?
9      A.   ████████
10     Q.   How old is he?                  10:57
11     A.   ████████████
12     Q.   The second child?
13     A.   ████████
14     Q.   How old?
15     A.   █████████████████          10:57
16     Q.   And the youngest?
17     A.   ████████
18     Q.   How old?
19     A.   ██████
20     Q.   Does anyone else live in that apartment  10:57
21  with you?
22     A.   No.
23     Q.   I'm going to come back to the apartment.
24  Are you presently employed?
25     A.   No, I am not.                   10:57

1              Shainberg
2      Q.   When was the last time you were
3  employed?
4      A.   1996.
5      Q.   Who were you employed by then?     10:58
6      A.   Securities Planners.
7      Q.   What did you do at Securities Planners?
8      A.   I was a stockbroker and assistant in
9  compliance matters.
10     Q.   And what have you done since 1996?  10:58
11     A.   Effectively I've been unemployed since
12  then.
13     Q.   Have you engaged in any type of work for
14  which you have received compensation?
15     A.   No, I have not.                 10:58
16     Q.   Is your wife employed?
17     A.   No.
18     Q.   I'm going to ask the obvious question
19  now, which is what do you, your wife and your three
20  children live on?                       10:58
21     A.   Yes.  Loans from relatives and sales of
22  some assets that my wife owned.
23     Q.   And you say loans from relatives, are
24  these loans evidenced by promissory notes?
25     A.   No, not that I'm aware of.       10:59

1              Shainberg
2      Q.   So as far as you're aware of these are
3  just oral agreements?
4      A.   Correct.
5      Q.   And are these loans made to you, to your  10:59
6  wife or to both?
7      A.   To my wife predominantly as far as I'm
8  aware.
9      Q.   So they're from relatives, are they your
10  relatives or her relatives?             10:59
11     A.   Both, I believe.
12     Q.   Approximately how much in total are
13  these loans?
14     A.   I don't know.
15          MR. WITHERWAX:  If you know.      10:59
16     A.   I don't know.
17     Q.   Again let me say, and I'm sure your
18  attorney will say it too, what I do want not you to
19  be doing is guessing at the answers.
20     A.   I don't know.                   10:59
21     Q.   Would you say it's more than $10,000?
22     A.   Yes.
23     Q.   In the past year, how much money did you
24  receive by way of loans?
25     A.   I'm not aware of the exact amount.  10:59

1              Shainberg
2  You'd have to speak to my wife.
3      Q.   In your family who keeps track of the
4  finances, yourself, your wife or both?
5      A.   My wife predominantly.          11:00
6      Q.   You said also sale of her assets?
7      A.   Yes.
8      Q.   In general what type of assets are we
9  talking about?
10     A.   She had some art assets and some other  11:00
11  collectibles.
12     Q.   How were these being sold?
13     A.   She's selling them.
14     Q.   Is she selling them through a dealer?
15     A.   I have no idea.                 11:00
16     Q.   She would know that?
17     A.   Correct.
18     Q.   Have you made any efforts to obtain
19  employment on your part?
20     A.   I have.                        11:00
21     Q.   What type of employment have you sought?
22     A.   Well, I have not sought any reentry into
23  the securities industry, although many years ago I
24  attempted to do so but due to the obvious
25  circumstances I was not employable and don't think I  11:00

REDACTED

SEC081

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                February 27, 2007

---

Page 14

```
1              Shainberg
2  will be in the near future.  Irrespective of the
3  outcome, but I attempted to seek employment in other
4  industries with the obvious background checks which
5  affected my not getting such employment.        11:01
6      Q.  This action in which the judgment was
7  rendered was brought against you in 1999, correct?
8      A.  Correct.
9          MR. WITHERWAX:  Excuse me, the form of
10  the question.                      11:01
11         MR. GRAUBARD:  All right.
12         MR. WITHERWAX:  You said the judgment
13  was brought against you in 1999.
14         MR. GRAUBARD:  No, the action.
15     Q.  The action in which the judgment was      11:01
16  rendered was brought in 1999?
17     A.  The complaint was, yeah, I guess.
18     Q.  According to item 24 on the court
19  docket, you received service of the summons and
20  complaint on December 2, 1999.  I'm not going to ask  11:02
21  you for the exact date but would that be
22  approximately correct?
23     A.  It sounds correct.
24     Q.  And you predominantly represented
25  yourself in this action?              11:02
```

Page 15

```
1              Shainberg
2      A.  I represented myself pro se.
3      Q.  I'm going to ask some other questions
4  and from a predominantly background, where and when
5  were you born?                     11:02
6      A.  I was born in Manhattan, New York City,
7  on April ██, 1956.
8      Q.  What is your educational background?
9      A.  I attended university at Brooklyn
10  College and I attended theological university as    11:02
11  well.
12     Q.  Brooklyn College did you graduate?
13     A.  I did not, no.
14     Q.  At the theological, what was the
15  theological institution?             11:03
16     A.  It was a rabbinical college.
17     Q.  Located in New York?
18     A.  Yes.
19     Q.  Did you graduate?
20     A.  I graduated part of the program.  Had I   11:03
21  graduated the entire program you would have to call
22  me rabbi.
23     Q.  We'll say you're only half a scholar
24  then.
25     A.  Thank you.               11:03
```

REDACTED

Page 16

```
1              Shainberg
2      Q.  How long have you lived at 385 Grand
3  Street?
4      A.  My entire life.
5      Q.  Did you ever live at ███████████     11:03
6  Great Neck?
7      A.  I had an apartment there many years ago,
8  yes.
9      Q.  So how would you reconcile living at 385
10  Grand Street your entire life and having an       11:04
11  apartment somewhere else?
12     A.  I believe I rented that apartment after
13  purchasing it and subsequently selling it.
14     Q.  What years were you at that apartment?
15     A.  Many years ago, I don't recall, over ten  11:04
16  years ago.
17     Q.  What about the address of ████████
18  ██████, New York, did you ever live there?
19     A.  I don't recall that address.
20     Q.  Did you ever live or have a place of    11:04
21  business at ████████████?
22     A.  I don't recall that address either.
23     Q.  Do you recall an address of ████████
24  ██████ Great Neck, New York?
25     A.  ██ what?                    11:04
```

Page 17

```
1              Shainberg
2      Q.  ████████████ Great Neck.
3      A.  No.
4      Q.  Do you have a driver's license in New
5  York?                          11:05
6      A.  Yes, I do.
7      Q.  Do you have any motor vehicles
8  registered in your name in New York?
9      A.  No.
10     Q.  Do you know of a person named Robert J.   11:05
11  Smith?
12     A.  I'm not sure.
13     Q.  Do you know anything of a judgment that
14  was rendered against you in Supreme Court New York
15  in 2000 in favor of Robert J. Smith in the amount of  11:05
16  $84,132?
17     A.  I'm not sure of that.  May I make a
18  comment?
19     Q.  Wait a second, if you want to talk to
20  your attorney let's go off the record and you can    11:06
21  discuss this.
22         MR. WITHERWAX:  Off the record.
23         (Witness and counsel confer off the
24  record)
25         MR. GRAUBARD:  We're back on the record.  11:07
```

---

**GRAUBARD DECL. EX. 4**                    5  (Pages 14 to 17)

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                    February 27, 2007

---

Page 18

Shainberg
1
2    While we were off the record we discussed Mr.
3    Witherwax obtaining a copy of the document
4    which I am looking at right now, and I
5    explained to him it is a report which I    11:07
6    obtained off Lexis, and therefore being that
7    it is a public document, we will provide Mr.
8    Witherwax with a copy of this and any similar
9    public record documents.
10    Q.  Mr. Shainberg, do you know anything    11:07
11    about a company called Joshua Shainberg
12    International, Inc.?
13    A.  I may have had a corporation 20 years
14    ago like that but I don't recall much.
15    Q.  Has that corporation done anything    11:07
16    recently?
17    A.  No.
18    Q.  What about a corporation called ICT
19    Technologies, Inc.?
20    A.  Yes, I'm aware of that company.    11:08
21    Q.  What is that company?
22    A.  That is a company located in Westchester
23    that I had worked with in 2002 to 2005.
24    Q.  Are you presently associated with them?
25    A.  No.    11:08

---

Page 19

Shainberg
1
2    Q.  Between 2002 and 2005, what did you
3    do -- what was your relationship at ICT?
4    A.  I was listed as an executive on the
5    company's filings, although I believe I was listed    11:08
6    as one of the senior executives, I was not.  And my
7    role at the company was to assist the chief
8    executive officer in his job.
9    Q.  Did you receive any pay for this?
10    A.  I did not.    11:09
11    Q.  Did you receive any stock?
12    A.  I did not.
13    Q.  Did you ever own any stock in ICT?
14    A.  I did.
15    Q.  When was that?    11:09
16    A.  I believe I owned the stock -- I owned
17    stock in ICT between the late 1990's until 2003 or
18    2004.
19    Q.  How did you obtain the stock in ICT?
20    A.  The stock was given to me, I'm not a    11:09
21    hundred percent sure, I have to look at the filings.
22    Q.  Again I'm asking for your recollection.
23    How do you recall the --
24    A.  I'm not exactly sure how I obtained it
25    but I had it in my ownership during that period.    11:09

---

Page 20

Shainberg
1
2    Q.  Well, did you purchase this?  Did you
3    purchase the stock in the open market?  Did you
4    receive it directly from the company?
5    A.  I believe both.    11:09
6    Q.  And at present you do not own any shares
7    of ICT?
8    A.  That's correct.
9    Q.  Do you know of a company called Royal
10    Ocean Beach Inn?    11:10
11    A.  No, but I've heard of it.
12    Q.  What have you heard of Royal Ocean
13    Beach?
14    A.  I think it was a document that was shown
15    in one of thousands of documents by the SEC in trial    11:10
16    that I went through.
17    Q.  Do you have any connection with Royal
18    Ocean?
19    A.  Absolutely not.
20    Q.  What business is ICT Technologies    11:10
21    involved in?
22    A.  Telecommunications, retail sales, motor
23    scooters.
24    Q.  Do you know the names of any of the
25    other persons associated with ICT?    11:11

---

Page 21

Shainberg
1
2    A.  Yes.
3    Q.  Who are they?
4    A.  Vasilios K-o-u-t-s-o-b-i-n-a-s, who is
5    the president, as when I left the company he was the    11:11
6    president and CEO of that company, and Mr.
7    Eracleous, E-r-a-c-l-e-o-u-s, who was the chief
8    financial officer.
9    Q.  Do you know the address for ICT?
10    A.  As of --    11:11
11    Q.  As of the last time you were there?
12    A.  181 Westchester Avenue in Port Chester,
13    New York.
14    Q.  Was it previously located at 33 West
15    Main Street, Elmsford?    11:12
16    A.  Yes, it was.
17    Q.  Who is Sheila Corvino, C-o-r-v-i-n-o?
18    A.  I believe she was an attorney for the
19    company, for ICT Technologies for a short period of
20    time.    11:12
21    Q.  Since you did not receive any pay for
22    what you did, why did you work for ICT?
23    A.  During the time I worked with ICT I
24    owned shares in the company, so I hoped that those
25    shares would be worth something and I would be able    11:13

---

**GRAUBARD DECL. EX. 4**                    6  (Pages 18 to 21)

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                February 27, 2007

Page 22

1            Shainberg
2  to liquidate it at some worth.
3      Q.  Why did you stop working with ICT?
4      A.  The date of the jury verdict, I got a
5  call from Mr. Koutsobinas who told me you're no      11:13
6  longer associated with the company.  So
7  apparently -- well, that's it.
8          MR. WITHERWAX:  Don't speculate --
9      A.  That's it.
10         MR. WITHERWAX:  -- on what was in Mr.      11:13
11  Koutsobinas's mind.
12     A.  That's it.
13     Q.  Mr. Koutsobinas terminated your
14  employment?
15     A.  That's correct.              11:13
16     Q.  Other than 385 Grand Street, did you
17  ever reside either temporarily anywhere else?
18     A.  No.
19     Q.  Do you know if your wife owns any other
20  real property?                   11:14
21     A.  No.
22     Q.  No, you don't know, or no, she doesn't?
23     A.  No, I don't know.
24     Q.  Do you know of a property located --
25         MR. WITHERWAX:  Excuse me, can we take a   11:14

Page 23

1            Shainberg
2  break for a moment?
3          MR. GRAUBARD:  Sure.  We're off the
4  record.
5          (Recess taken)              11:14
6          MR. GRAUBARD:  We are now back on the
7  record, and for the record we did not discuss
8  anything while we were off the record, is
9  that correct?
10         MR. WITHERWAX:  That's correct.      11:19
11  BY MR. GRAUBARD:
12     Q.  Mr. Shainberg, do you know of a property
13  called 57 Vacation Village Townhouses, Loch
14  Sheldrake, New York in Sullivan County?
15     A.  I do.                    11:19
16     Q.  What is that property?
17     A.  That's a property upstate New York.
18     Q.  Do you know who owns that property?
19     A.  I believe my wife has that property.
20     Q.  Your wife owns it?          11:19
21     A.  I believe so.
22     Q.  Do you know when your wife purchased
23  that property?
24     A.  I don't know exactly when she purchased
25  it.                       11:19

Page 24

1            Shainberg
2      Q.  If I told you that the records of
3  Sullivan County shows she purchased the property in
4  December of 2005 for the amount of $175,000, would
5  that refresh your recollection?        11:20
6      A.  No.
7      Q.  Do you know where she got the money to
8  purchase that property from?
9      A.  No.
10     Q.  Do you claim any interest in that      11:20
11  property?
12     A.  I don't.
13     Q.  Do you discuss financial matters -- let
14  me just rephrase that.  Any communications between
15  yourself and your wife are privileged so I don't      11:20
16  want you to tell me anything, I just want to ask you
17  a very general question just to find out whether or
18  not, this is a yes or no answer, you and your wife
19  discuss financial matters in general, that's the
20  only question, not what did you say but was there      11:20
21  any discussion?
22         MR. WITHERWAX:  I have to object to
23  that, discuss financial matters in general?
24  I mean are you talking about buying groceries
25  or are you talking about investing?        11:21

Page 25

1            Shainberg
2          MR. GRAUBARD:  I'll withdraw the
3  question.
4      Q.  Again I just want you to be clear that I
5  do not want -- there are certain things that I do      11:21
6  not want you to answer to.  What you discussed with
7  your wife, what you discussed with your attorney or
8  what you discussed with your doctor or what you
9  discussed with any religious advisor.  So we don't
10  want those answers.  If you wanted to give it      11:21
11  voluntarily talk to your attorney first, I don't
12  want to get into there.
13         MR. WITHERWAX:  Don't.
14     Q.  Have you ever been at the 57 Vacation
15  Village premises?              11:21
16     A.  Yes.
17     Q.  How often?
18     A.  Generally it's in the summertime.
19     Q.  What kind of a house is that?
20     A.  It's a townhouse, connected townhouse.      11:21
21     Q.  How many bedrooms?
22     A.  Three.
23     Q.  Is there a mortgage on that property?
24     A.  I don't know.
25     Q.  Let me rephrase it again, did you sign      11:22

**GRAUBARD DECL. EX. 4**                    7  (Pages 22 to 25)

SEC084

4fe39479-ec6c-4cb9-a2fe-32117507daee

Page 30

Shainberg

1           Shainberg
2    A. I have heard of it, yes.
3    Q. What do you know about JFK Oil Terminal?
4    A. I believe it's associated with my wife.
5    Q. Have you ever been associated with it?    11:26
6    A. I'm not sure what you mean by
7  associated.
8    Q. Have you ever been an officer of it?
9    A. I may have been an officer of it.
10   Q. What do you mean you may have been?    11:26
11   A. I may have assisted my wife in being an
12 officer in that entity.
13   Q. Do you know where JFK Oil Terminal is
14 located?
15   A. I believe it's in Pennsylvania.    11:27
16   Q. Are you presently associated with it?
17   A. No.
18   Q. When to your knowledge were you last
19 associated with it as an officer?
20   A. I'm not sure. I don't know if I was an    11:27
21 officer, by the way, but I know I was assisting my
22 wife in matters relating to it.
23   Q. When you say assisting your wife, could
24 you describe what you did?
25   A. I advised her on certain matters she may    11:27

Page 31

1 have asked me on.
2    Q. Did she pay you anything for that
3 advice?
4    A. No. No, she did not.    11:27
5    Q. I didn't ask you if the advice was any
6 good, did I? Is JFK Oil Terminal still in business?
7    A. I don't know if it was ever in business.
8 It was an entity that my wife was involved in.
9    MR. GRAUBARD: I'm going to mark as    11:28
10 Exhibit 3 a copy of which appears to be a
11 copy of a 2006 income tax return which was
12 provided by your attorney in production.
13   A. Okay.
14   MR. GRAUBARD: Plaintiff's 3 marked for    11:28
15 identification.
16   (Plaintiff's Exhibit 3, 2006 income tax
17 return, was so marked for identification.)
18   MR. GRAUBARD: Again I just want to tell
19 you that there will be the redactions if this    11:28
20 document is ever produced.
21   MR. WITHERWAX: Just as a matter -- I
22 don't need to look at this, although I'll
23 take a quick look at it and make sure it's
24 the same thing that I gave you. Just as a    11:29

Page 32

Shainberg

1           Shainberg
2 matter of form can you show me these
3 documents --
4    MR. GRAUBARD: Certainly.
5    MR. WITHERWAX: -- before you ask my    11:29
6 client to look at them.
7    MR. GRAUBARD: Certainly. For the
8 record it does contain both the federal 1040
9 and the New York State IT-201.
10   Q. I'm going to ask you some questions on    11:29
11 this, Mr. Shainberg. First of all, whose
12 handwriting is it -- the printed handwriting on say
13 the first page?
14   A. Mine.
15   Q. Going to the second page, is that your    11:29
16 signature?
17   A. Yes.
18   Q. And below it, is that your wife's
19 signature?
20   A. Yes.    11:30
21   Q. Now let's go back to the first page. It
22 says, it's a little hard to read, but on line 13 it
23 says capital gain $14,810. What is that?
24   A. That's related to the schedule here.
25   Q. In other words where did that come from?    11:30

Page 33

1           Shainberg
2    A. That was related to a sale of a stock --
3 I'm sorry, college savings funds.
4    Q. What is a college savings fund?
5    A. I believe my wife had some funds for the    11:30
6 children and she sold it.
7    Q. I notice you were referring to
8 Schedule D, I believe, that you showed the same
9 amount both as a short-term capital gain and as a
10 long-term capital gain.    11:31
11   A. Okay.
12   Q. Why did you do that?
13   A. I have no clue.
14   Q. But that is your handwriting?
15   A. Yes, I believe my wife made this up and    11:31
16 I signed it and she told me what to put down and I
17 did it.
18   Q. Wait a second. You just said something
19 which I want to -- again I'm not asking you what
20 your wife said -- you said I believe my wife made    11:31
21 this up?
22   A. No, my wife gave me this information.
23 She dictated it to me and I put it down and you
24 brought up an interesting point, part one and part
25 two are both written when I assume that only one of    11:31

SEC0085

4fe39479-ec6c-4cb9-a2fe-32117507daee

Page 34

1          Shainberg
2 them should be. I have no idea.
3          MR. WITHERWAX: Just to clarify this, I
4     don't think that Mr. Shainberg when he might
5     have mentioned my wife made this up, he      11:32
6     certainly wasn't referring to the fact that
7     she fabricated it.
8          MR. GRAUBARD: I didn't think he was. I
9     just wanted to be sure that we didn't leave
10    that impression on the record.          11:32
11         MR. WITHERWAX: Thank you, that's good.
12    Q.   Now on the second page, Mr. Shainberg,
13 next to your signature it says your occupation, you
14 wrote in manager?
15    A.   Right.                      11:32
16    Q.   Why did you write manager instead of
17 unemployed?
18    A.   I don't know. I guess I was thinking
19 about managing the household.
20         MR. WITHERWAX: Do you have an extra    11:33
21    copy so that I can look on as you ask the
22    witness questions.
23         MR. GRAUBARD: I only have two copies.
24    I will make more copies later.
25         Let me get this marked as Exhibit 4.    11:33

Page 35

1          Shainberg
2     (Plaintiff's Exhibit 4, Morgan Stanley
3     statements for year ending December 2006, was
4     so marked for identification.)
5    Q.   Again this was an item produced by your    11:34
6 attorney, Mr. Shainberg, which is a set of
7 statements from Morgan Stanley for the year ending
8 December 2005. I would like to go to the page 4 of
9 5, it says on the top. This is account number -- I
10 marked 2006 instead of 2005 so we will now      11:34
11 seamlessly switch into the 2006.
12         According to these records, basically
13 you had no transactions in 2006, is that correct?
14    A.   Is this the transaction in 2006?
15    Q.   Instead of no transaction, minimal      11:35
16 transaction.
17    A.   Yes, one minor transaction.
18    Q.   For $76.75.
19         (Phone interruption)
20    Q.   So other than this one transaction,    11:36
21 basically nothing occurred in your account during
22 the year 2006?
23    A.   Correct.
24         MR. GRAUBARD: Let me get this marked as
25    Exhibit 5.                       11:37

Page 36

1          Shainberg
2     (Plaintiff's Exhibit 5, Statements for
3     year ending December 31, 2005, was so marked
4     for identification.)
5    Q.   Exhibit 5 is the statements for this      11:37
6 account that were produced for the year ending
7 December 31, 2005. Again they were produced by your
8 attorney, Mr. Shainberg.
9          If you want to take a moment to look it
10 over, we'll go off the record.           11:37
11         (Pause)
12    A.   Okay.
13    Q.   So referring now to Exhibit 5, I'm going
14 to ask you some questions, I'm going to start on --
15 it says on the third page, it says page 3 of 5.      11:39
16         Starting off we have a section called
17 sales, proceeds and redemptions. This indicates
18 total sales of $7,240.08 during 2005.
19    A.   Yes.
20    Q.   And you directed that these sales take      11:39
21 place?
22    A.   I believe so.
23    Q.   This account is in your name, does
24 anyone else hold trading authority over this
25 account?                          11:39

Page 37

1          Shainberg
2    A.   I don't believe so.
3    Q.   Now, if you go down next line where it
4 says, next section says debits to your account, at
5 first there's a notation on December 5, it says      11:40
6 "Wired funds, sent beneficiary JFK Oil Terminal
7 Corp."
8    A.   Yes.
9    Q.   Why were these funds sent to JFK Oil
10 Terminal?                          11:40
11    A.   I believe my wife asked me to do so.
12    Q.   She asked you to do so, did you receive
13 anything in exchange for these funds?
14    A.   No, I did not.
15    Q.   Then you have December 7th in the amount      11:40
16 of $1,085.46, beneficiary Joshua Shainberg, care of
17 something, and the same account number is appearing
18 for the December 5th transaction. Why were these
19 funds sent?
20    A.   Same reason.                   11:40
21    Q.   December 13 in the amount of $399.73, a
22 wire transfer to JFK Oil Terminal Corp.?
23    A.   The same reason.
24    Q.   The next page, December 16, wire
25 transfer of $2,700 to JFK Oil Terminal Corp.?      11:41

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                    February 27, 2007

Page 38

```
1              Shainberg
2     A.  It's the same reason.
3     Q.  Going down to the next section where it
4  says additional account information, if you look at
5  the first item under securities received dated    11:41
6  September 21, it says "Did you receive the transfer
7  of 126,000 shares of something called ICT Group,
8  Inc."?
9     A.  That's right.
10    Q.  And what is ICT Group, Inc.?           11:41
11    A.  This was a major mistake admitted to by
12 Morgan Stanley when they apparently were receiving
13 into this account ICT Technologies, Inc., which is
14 recognized by CUSIP number, and inadvertently they
15 received in or their computer showed that instead of  11:42
16 receiving into this account 126,000 shares of ICT
17 Technologies, which may have traded at pennies, they
18 received in ICT Group, which apparently had a value
19 of $1-1/2 million.
20         And honestly, I called them up and I     11:42
21 told them I don't have a million and a half dollars
22 with you, and they said thank you very much because
23 it was in this account, and apparently that's why
24 you see wrong CUSIP and they took it back.
25    Q.  So it falls under the category of the    11:42
```

Page 39

```
1              Shainberg
2  old monopoly card bank error in your favor?
3     A.  But it wasn't in my favor because I
4  called them up and told them that they made a
5  mistake.                                      11:42
6     Q.  But in any event, at that point it
7  looked like you were worth a million and a half
8  dollars?
9     A.  Oh, yeah.
10    Q.  On the last item of that group it says    11:42
11 "Remove legend."
12    A.  On the last line?
13    Q.  No, in the group.
14    A.  I'm not sure, it may have been related
15 to restriction or restriction removal, I'm not sure.  11:43
16    Q.  Did you receive restricted shares, if
17 you know?
18    A.  I'm not sure about the entire -- I'm not
19 sure about these quantities and whether they were
20 restricted or not restricted.               11:43
21    Q.  Other than this Morgan Stanley account,
22 Exhibits 4 and 5, do you own any other account with
23 any securities, broker or dealer?
24    A.  I do not.
25        MR. WITHERWAX:  I object to the form of   11:43
```

Page 40

```
1              Shainberg
2  the question.  It implies he still holds this
3  account.
4     Q.  Do you still hold the Morgan Stanley
5  account?                                      11:44
6     A.  I don't believe so, no.
7     Q.  When did you close it?
8     A.  I don't even know if I closed it.  I
9  think there was nothing in it.
10    Q.  So at the present time do you have any    11:44
11 account with any securities broker or dealer?
12    A.  No.
13    Q.  At the present time do you hold trading
14 authority in any account with any securities broker
15 or dealer?                                    11:44
16    A.  I do not.
17    Q.  At the present time do you have a power
18 of attorney to execute transactions for any account
19 with any securities broker or dealer?
20    A.  I don't.                              11:44
21    Q.  At the present time do you own any
22 account with any commodities broker or dealer?
23    A.  I don't.
24    Q.  At the present time do you have trading
25 authority over any account with any commodities   11:44
```

Page 41

```
1              Shainberg
2  broker or dealer?
3     A.  I don't.
4     Q.  At the present time do you have a power
5  of attorney authorizing you to conduct transactions   11:44
6  in any account with any commodities broker or
7  dealer?
8     A.  I'm not aware of any.
9     Q.  Do you have ownership of any bank
10 account that is in your own name?            11:44
11    A.  Not that I'm aware of.
12    Q.  Do you have an interest in any bank
13 account that is joint between yourself and any other
14 person?
15    A.  Not that I'm aware of.                11:45
16    Q.  Do you hold any bank accounts as
17 custodian for any person?
18    A.  Not that I'm aware of.
19    Q.  To your knowledge are you the
20 beneficiary of any bank account held by another   11:45
21 person?
22    A.  Not that I'm aware of.
23    Q.  Do you have any assets located outside
24 of the United States?
25    A.  Not that I'm aware of.                11:45
```

**GRAUBARD DECL. EX. 4**                    11  (Pages 38 to 41)

SEC087

Joshua Shainberg                                        February 27, 2007

Page 42

1           Shainberg
2      Q.  In the past ten years, have you had any
3  assets located outside of the United States?
4      A.  Only when Judge Pohorelsky and jury at
5  that time claimed that I did, but I'm not aware of,    11:45
6  not to be facetious.
7      MR. WITHERWAX:  Then your answer is no.
8      A.  I'm sorry, no.
9      Q.  In the past ten years have you
10 transferred any assets outside of the United States?   11:45
11     A.  Not that I'm aware of.
12     Q.  Have you put any assets in the hands of
13 any -- for this purpose I am going to be talking now
14 about the period of time since this lawsuit was
15 brought against you in December -- let's make it       11:46
16 even easier, we'll start with 2000 so we'll leave
17 that little part of December off.
18     Since January 2000, have you transferred
19 any property to anyone without receiving equal value
20 in return?                                             11:46
21     A.  Yes.
22     Q.  When was that?
23     A.  I'm not sure of the exact time or date,
24 but from that time I transferred ICT Technologies'
25 stock that was in my name to my wife.                  11:46

Page 43

1           Shainberg
2      Q.  How much stock did you transfer?
3      A.  I'm not sure of the exact amount but it
4  was whatever I believe I owned at the time.
5      Q.  Do you recall approximately when that     11:47
6  was?
7      A.  A couple of years ago or so, maybe less.
8      Q.  To the best of your recollection how
9  much was that stock worth?  Again was it worth a
10 thousand dollars, $10,000, $100,000 or I don't know?   11:47
11     A.  I don't know, I'm not sure.
12     Q.  And this was -- there was no
13 consideration for that transfer?
14     A.  There was no consideration.
15     Q.  Did you transfer any other property for   11:47
16 no consideration to anyone?
17     A.  I'm not aware of any.
18     Q.  Since January 2006 have you transferred
19 any property worth more than $50,000 to anyone for
20 consideration?                                         11:47
21     MR. WITHERWAX:  Excuse me, Counsel, what
22     was that date again?
23     MR. GRAUBARD:  January 1, 2006.  I'm
24     talking about the time the lawsuit has been
25     pending.                                           11:48

Page 44

1           Shainberg
2      A.  January 2006?
3      Q.  January 2000.  Since January 2000 did
4  you transfer property worth more than $50,000 to
5  anyone with or without consideration?                 11:48
6      A.  I'm not aware of anyone other than the
7  transaction that I mentioned to you before which I'm
8  not aware of the value.
9      Q.  Going back to that transfer of the
10 stock, did you do this through a securities broker?    11:48
11     A.  I'm not sure of the exact parameters of
12 that transaction other than I gave it to my wife.
13     Q.  Do you know what your wife did with the
14 securities after she received them?
15     A.  No.                                        11:48
16     Q.  Did you place any restrictions on your
17 wife's ability to use these funds?
18     A.  Use these what?
19     Q.  The securities.  Did you tell her --
20 when you gave the securities was this an absolute      11:49
21 outright gift with no restrictions?
22     A.  Yes.
23     Q.  Have you given any property to or for
24 the benefit of your children since January 2000?
25     A.  I'm not aware of it.                        11:49

Page 45

1           Shainberg
2      Q.  Have you given any of your properties
3  since January of 2000 to any charity of significant
4  value?  I'm not interested in other considerations.
5      A.  I'm not sure.                               11:49
6      Q.  What type of financial records do you
7  keep personally?  Let me ask do you keep records of
8  your stock transactions?
9      A.  No.  I should but I don't want to
10 volunteer anything.                                    11:49
11     Q.  Let's go back, other than the account at
12 Morgan Stanley, did you have an account with a
13 different broker/dealer before that?
14     A.  I had accounts many years ago.
15     Q.  When the stocks were transferred into     11:50
16 your accounts at Morgan Stanley where were they
17 transferred from?
18     A.  I believe they were transferred from the
19 other account but I'm not sure.
20     Q.  You're not sure.  Do you know where that   11:50
21 account was located?
22     A.  I don't want to say something I'm not a
23 hundred percent sure of.
24     Q.  It says on the document there was a
25 transfer from Fiserv, F-i-s-e-r-v, does that refresh   11:50

GRAUBARD DECL. EX. 4                    12  (Pages 42 to 45)

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                    February 27, 2007

---

Page 46

Shainberg
1          Shainberg
2  your recollection?
3      A.  No, that could be Fiserv -- that could
4  be a clearing firm possibly, so that's not a
5  brokerage company that I'm aware of or I have an    11:50
6  account at.
7      Q.  Why did you make the transfer of funds
8  to Morgan Stanley?
9      A.  I have no idea.
10     Q.  Do you have any records of securities    11:50
11 transactions in the account that you held before
12 Morgan Stanley?
13     A.  I'm not sure.  You mean individually?
14     Q.  Let me go back and clarify this.  I'm
15 going to go back, I'm going to work back.  In 2005    11:51
16 it appears that securities were transferred to
17 Morgan Stanley?
18     A.  Yes.
19     Q.  Do you know where those securities were
20 before?    11:51
21     A.  I'm not a hundred percent sure, I'm
22 sorry.
23     Q.  You're not sure?
24     A.  Right.
25     Q.  Would it -- do you have any record of    11:51

---

Page 47

1          Shainberg
2  the account in which these securities were being
3  held going back to before the transfer to Morgan
4  Stanley?
5      A.  I'm pretty sure I have them someplace.    11:51
6      Q.  You have them?
7      A.  I'm pretty sure I have them someplace.
8         MR. GRAUBARD:  I'm going to mark as
9      Exhibit 6 a request for production which is
10     dated November 27th, 2006.    11:52
11        (Plaintiff's Exhibit 6, Request for
12     production dated November 27th, 2006, was so
13     marked for identification.)
14     Q.  Did you receive the request for
15 production marked as Exhibit 6?    11:53
16     A.  I believe I may have received this from
17 my attorney.
18     Q.  Did you conduct a search for the
19 documents that are requested in this request for
20 production?    11:53
21     A.  I did a preliminary search.
22     Q.  But you didn't do an extensive search?
23     A.  I attempted to do an extensive search
24 and I didn't have those records immediately
25 available.    11:53

---

Page 48

1          Shainberg
2      Q.  When you say immediately available,
3  where do you believe those records might be located?
4      A.  I don't know.
5      Q.  What type of a search did you conduct?    11:53
6      A.  Well, I looked in my house obviously
7  where it would be, if I had it, and much of what is
8  requested here on page 5 and page 6, I did not have
9  access to or knowledge of.
10     Q.  Those are two different terms.  The    11:54
11 first one you said is I did not have access to, what
12 did you mean by that?
13     A.  Well, I don't necessarily have access to
14 everything my wife has, Laryssa Shainberg.
15     Q.  So your wife might have access to    11:54
16 documents that you don't have access to?
17     A.  Possibly, yes.
18     Q.  Did you conduct a thorough search of the
19 items in your house that you had access to?
20     A.  I believe so.    11:54
21     Q.  And you produced all of those documents?
22     A.  Yes.
23     Q.  Are there any documents that you located
24 but did not produce for any reason?
25     A.  No.    11:55

---

Page 49

1          Shainberg
2      Q.  Are there any documents you withheld on
3  the ground that they were privileged for any reason?
4      A.  No.
5      Q.  Are there any documents that you know of    11:55
6  that once existed but presently do not exist but
7  would have been responsive?  In other words, let me
8  phrase that a little differently.  What I mean is do
9  you know of any documents that existed in the past
10 and were responsive but don't exist anymore because    11:55
11 you threw them out, for example?
12     A.  I don't know.
13     Q.  I'm going to turn now to the apartment
14 you live in.  Who owned the apartment before your
15 wife owned it?  Let me revise that because we're    11:55
16 dealing with a co-op so let me be very particular
17 here.  In a co-op apartment you don't own the
18 apartment, you own shares of stock in the co-op
19 corporation that you hold prior to release, is that
20 correct?    11:56
21     A.  Yes.
22     Q.  So who was the owner of the shares and
23 the proprietary lease for the co-op apartment before
24 your wife?
25     A.  That's a very good question.  (Pages 46 to 49)

---

Page 50

1           Shainberg
2   Chronologically I and my brothers inherited the
3   apartment from my parents who passed away, so I
4   don't know if I ever was a complete owner of the
5   apartment of the shares.  I certainly was a part    11:56
6   owner or a one third owner, so to speak.  I have two
7   brothers.
8       Q.  You and your brothers were the owners?
9       A.  At one time, yes.
10      Q.  How did the ownership go from you and        11:56
11  your brothers to your wife?
12      A.  I believe it may have gone from -- I'm
13  not a hundred percent sure and I'm sure you have the
14  records, but I believe it had gone from my brothers
15  to me and then from me to my wife.  I am not sure at  11:57
16  what point and what percentage I owned any part of
17  that co-op certificate or shares.
18      Q.  Well, you owned the shares and the lease
19  is what you owned?
20      A.  Right.  So it went from my brother to me     11:57
21  and my wife and then me and my wife to my wife only.
22      Q.  When did you transfer it from yourself
23  and your wife to your wife only?
24      A.  You have the records, I'm not exactly
25  sure.                                       11:57

Page 51

1           Shainberg
2       Q.  Do you believe that was before or after
3   the lawsuit was brought?
4       A.  You're asking about transfer?
5       Q.  The transfer.                        11:57
6       A.  The legal transfer of the document?
7       Q.  Yes.
8       A.  Of the certificate?
9       Q.  Let me rephrase it.  Do you know when
10  your wife became the sole owner of the co-op         11:58
11  apartment you live in?
12      A.  Okay.
13      Q.  That's a yes or no, do you know when it
14  was?
15      A.  I think it's a legal question.         11:58
16      MR. GRAUBARD:  I'll withdraw it.
17      MR. WITHERWAX:  Excuse me, Counsel, you
18  have subpoenaed the records of the co-op
19  association.  Perhaps you could show Mr.
20  Shainberg something to refresh his           11:58
21  recollection.
22      MR. GRAUBARD:  I intend to get there.
23  I'm going to get there, I was just trying to
24  ask some questions first.
25      A.  I'm not sure.                         11:58

Page 52

1           Shainberg
2       Q.  When -- now without knowing when the
3   transfers occurred, did your wife pay you anything
4   for your whatever ownership interest you had in the
5   co-op, did she pay you anything for it?       11:58
6       A.  No.
7       Q.  Did you pay your brothers anything for
8   the interest they had in the co-op?
9       A.  I don't think so.
10      Q.  Now at this point we can do one of two      11:59
11  things, I can start going into these specifics and
12  we'll take a fair amount of time or we can take a
13  short break at this point and then go into it.
14      MR. WITHERWAX:  Can we go off the
15  record.                                      11:59
16      MR. GRAUBARD:  Yes.
17  (Discussion off the record)
18  (Lunch recess:  12:00 p.m.)
19
20
21
22
23
24
25

Page 53

1           Shainberg
2           Afternoon Session
3              1:33 p.m.
4       J O S H U A   S H A I N B E R G,
5   having been previously duly sworn, was examined and    01:33
6   testified further as follows:
7   EXAMINATION (Continued)
8   BY MR. GRAUBARD:
9       Q.  Mr. Shainberg, during the recess we
10  discussed Roman history primarily, is that correct?    01:35
11      A.  That's correct.
12      Q.  But we didn't discuss anything about
13  your case?
14      A.  No.
15      Q.  And I want to just remind you, you are     01:35
16  still under oath.  Do you understand that?
17      A.  Yes.
18      Q.  Going back for just a little bit to what
19  we were dealing with before the break, you had
20  mentioned something about that you had had a prior     01:35
21  account before Morgan Stanley?
22      A.  Yes.
23      Q.  Do you know what documents you would
24  have had that you can't locate now, what those type
25  of documents would be?                        01:35

Joshua Shainberg                                    February 27, 2007

Page 54

```
 1              Shainberg
 2     A.  Probably monthly statements.
 3     Q.  Account statements?
 4     A.  Yes.
 5     Q.  When was the last time you had any type   01:35
 6  of a checking account in your name?
 7     A.  A long time ago, I don't recall.  Many
 8  years ago.
 9     Q.  And you don't have any records from
10  those?                                          01:36
11     A.  No.
12     Q.  Going -- I'm going to focus now on the
13  cooperative apartment, what I am going to do is
14  these are documents we obtained from the co-op
15  managing agent and I'm going to mark three      01:36
16  documents, these are in the order that were
17  presented by the managing agent.  I'm going to mark
18  three documents at once and then I am going to show
19  them to you and your counsel and ask some questions.
20         The first of these is a document, it     01:36
21  starts with the Bates number SP 0062 and a
22  certificate from the Surrogate's Court of the County
23  of New York, and that would be Exhibit number 7.
24         (Plaintiff's Exhibit 7, Certificate from
25     Surrogate's Court of County of New York      01:36
```

Page 55

```
 1              Shainberg
 2     beginning with Bates number SP 0062, was so
 3     marked for identification.)
 4     Q.  The second document starts with Bates SP
 5  0100, a letter from Joshua Shainberg dated August  01:37
 6  8th, 1999, that will be Exhibit 8.
 7         (Plaintiff's Exhibit 8, Letter from
 8     Joshua Shainberg dated August 8th, 1999
 9     beginning with Bates number SP 0100, was so
10     marked for identification.)                   01:37
11     Q.  The third of these is a document
12  starting with Bates number 00 -- SP 0076 and an
13  order amending letters of administration from the
14  Surrogate's Court, Exhibit 9.
15         (Plaintiff's Exhibit 9, Order amending    01:37
16     letters of administration from Surrogate's
17     Court beginning with Bates number SP 0076,
18     was so marked for identification.)
19     Q.  Mr. Shainberg, can you take a moment to
20  read these three exhibits or at least look at them  01:38
21  because I have some questions and this may help you
22  refresh your recollection.
23         (Pause)
24     Q.  The co-op apartment was originally --
25  was it originally owned by both your parents or just  01:40
```

Page 56

```
 1              Shainberg
 2  one of them?
 3     A.  I'm not sure.
 4     Q.  And both your parents are presently
 5  deceased?                                       01:40
 6     A.  Correct.
 7     Q.  What was your father's name?
 8     A.  Nuta.
 9     Q.  N-u-t-a?
10     A.  Yes.                                     01:40
11     Q.  When did he die?
12     A.  1975.
13     Q.  And your mother?
14     A.  Rachel.
15     Q.  And when did she die?                    01:40
16     A.  1990.
17     Q.  According to these documents, no steps
18  were taken for the administration of either estate
19  until the 1990's, is that correct?
20     A.  I'm not aware of it, I did not handle    01:40
21  it.
22     Q.  Who handled the administration in the
23  Surrogate's Court?
24     A.  I believe it probably was my brother
25  Abe.                                            01:41
```

Page 57

```
 1              Shainberg
 2     Q.  Is Abe an attorney?
 3     A.  Yes.
 4     Q.  I'd like you to look at Exhibit 8, and
 5  starting on the third page there's a petition for  01:41
 6  letters of administration in the estate of Nuta
 7  Shainberg, and this appears to be in your name and
 8  signed by you in 1999.
 9     A.  Okay.
10     Q.  Did you sign this application?  Is that  01:41
11  your signature --
12     A.  Yes, it's my signature.
13     Q.  On page SP 0105.  Do you recall why
14  there was a delay in actually going to the
15  administration of this estate?                  01:42
16     A.  I don't recall.
17     Q.  Did it have anything to do with the
18  transfer of the ownership of the co-op?
19     A.  I have no idea.
20     Q.  How was it determined that the co-op     01:42
21  would be placed in your name and not in the name of
22  your brothers?
23     A.  I'm not sure.  I thought it was in the
24  name of my brothers or transferred from my parents
25  to my brothers and I, and later on transferred from  01:43
```

GRAUBARD DECL. EX. 4                    15  (Pages 54 to 57)

SEC0091

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                    February 27, 2007

Page 58

Shainberg

1                    Shainberg
2  my brothers and I to myself or myself and my wife.
3  I'm not sure, I'd have to ask my brother.
4      Q.  Did your brother handle the
5  transactions?                              01:43
6      A.  Well, he handled these matters at the
7  time.
8      Q.  If your brother was handling the matters
9  why was it that you were designated as the
10 administrator, do you know?                 01:43
11         MR. WITHERWAX:  Objection.  I think it
12     calls for speculation.
13     Q.  Let me ask you, do you know why you were
14 designated as administrator and not your brother?
15     A.  I don't.                           01:44
16     Q.  If you go to Exhibit 8 and page SP 0106,
17 it does not show any attorney as being -- as
18 appearing for the estate.  Are you aware of that?
19     A.  I'm looking at the pages, you're
20 correct.                                   01:44
21     Q.  Were you aware that your brother Abe was
22 not appearing as attorney at that time?
23     A.  I had no idea.
24     Q.  I'm just going to take a little
25 tangential question before I get on to this.  I'm    01:44

Page 59

1                    Shainberg
2  going to mark as Exhibit 10 again documents
3  presented by the co-op board starting at SP 0365
4  which appear to relate to apartment L805.
5         (Plaintiff's Exhibit 10, Documents      01:45
6      relating to apartment L805 beginning with
7      Bates number SP 0365, was so marked for
8      identification.)
9      Q.  Did you ever obtain ownership of
10 apartment L805?                            01:45
11     A.  No.
12     Q.  But you had entered into a contract to
13 purchase it?
14     A.  I don't think -- I didn't enter into a
15 contract to purchase it, I don't know if my wife     01:45
16 did, but before I continue, let me read this letter
17 closer.
18         (Pause)
19     A.  Well, to answer your question, to the
20 best of my knowledge I believed I may have had a     01:46
21 contract with Ira Keller, whether I did or not, I
22 don't know, and whether it was oral or written or
23 legally binding, I can't tell you without seeing it.
24     Q.  If you look at pages 367 through 370 --
25     A.  Right.                             01:46

Page 60

1                    Shainberg
2      Q.  -- this appears to be a contract of
3  sale, and if you look at page 370, is that your
4  signature on page 370?
5      A.  This is a contract of an intent to sell?    01:46
6  In other words it's a contract between myself and
7  the estate of Julius Keller by his son, I believe,
8  Ira Keller, to purchase that contract which did not
9  go through.
10     Q.  Is that your signature on page 370?       01:47
11     A.  Yes, it is.
12     Q.  Why did you want to purchase unit L805?
13     A.  I think my wife wanted to purchase L805
14 because it was adjoining our -- it was adjoining
15 L806, and so she probably wanted to expand the       01:47
16 amount of square footage.
17     Q.  But the contract was in your name, not
18 her name, is that correct?
19     A.  It appears so.
20         MR. GRAUBARD:  I'm going to mark as       01:47
21     Exhibit 11, documents starting with Bates
22     number 0139.
23         (Plaintiff's Exhibit 11, Document
24     beginning with Bates number 0139, was so
25     marked for identification.)              01:48

Page 61

1                    Shainberg
2      Q.  On the first page of Exhibit 11 it
3  appears to be a fax from Cooper Square Realty, Inc.,
4  and it says in the second paragraph "The main issue
5  is that he was turned down the first time."  Had you    01:49
6  previously applied to have the co-op apartment
7  placed in your name before April of 2001?
8      A.  I don't recall any of this.  May I have
9  a minute to read these documents?
10     Q.  Yes, read the documents.             01:49
11         (Pause)
12     A.  Okay.
13     Q.  Going back again to page SP 0139, do you
14 recall if you had previously applied to have
15 apartment L806 placed in your name?           01:50
16     A.  I don't recall.
17     Q.  Going to page SP 0141 and continuing to
18 the next page, it appears to be a letter from you to
19 a Vivian Robinson.  Do you recognize this letter?
20     A.  No.                               01:51
21     Q.  Looking at page 142, is that your
22 signature?
23     A.  I guess I signed it.
24     Q.  Is it your signature or not?
25     A.  I'll agree that it's my signature.    01:51

SEC0092

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                February 27, 2007

Page 62

1            Shainberg
2      Q.  Now in the last full sentence on page
3  141 it says as follows:  "I perfectly understand
4  that this means that Don West is graciously allowing
5  me to skip a step from the certificate transferring    01:51
6  to, one, Nuta Shainberg, to two, Nuta Shainberg,
7  Joshua Shainberg, administrator, to three, Joshua
8  (and wife) Shainberg."  Do you know who is Don West?
9      A.  I think he was an executive of the board
10  of directors of the co-op.                           01:52
11     Q.  Does this refresh your recollection as
12  to how the property was transferred?
13     A.  No.
14     Q.  Do you have any reason that you believe
15  that when this letter was written it was not         01:52
16  accurate?
17     A.  I have no reason to believe.
18     Q.  Now, going to page 142, it says in the
19  sentence, "After receiving the certificate with me
20  as administrator, I will then give you another       01:52
21  completed application to change it officially into
22  my (and my wife) name alone."  Was it your intention
23  that this apartment be transferred to yourself and
24  your wife, rather than just placed in your name?
25     A.  Probably so.                                  01:53

Page 63

1            Shainberg
2      Q.  Did your wife give you any consideration
3  for this to occur?
4      A.  No.
5      Q.  She didn't pay you anything?                 01:53
6      A.  No.
7      Q.  What was the reason you decided to put
8  half the apartment in her name?
9      A.  Actually to my knowledge prior to my
10  marriage to Laryssa Shainberg, my wife, I believe    01:53
11  that it was my intention to put the apartment in its
12  entirety in her name based upon an agreement with
13  her prior to my marriage to her.
14     Q.  When were you married to her?
15     A.  I was married on June 5th, 1998.              01:53
16     Q.  You said there was a prior agreement
17  with her?
18     A.  Yes.
19     Q.  What was the nature of that agreement?
20     A.  Pre-nuptial agreement.                        01:54
21     Q.  Is the pre-nuptial in writing?
22     A.  Yes.
23     Q.  Where is that?
24     A.  My wife has it.
25     Q.  Do you have it?                               01:54

Page 64

1            Shainberg
2      A.  My wife has it.
3      Q.  But before we get there.
4      A.  I don't have a copy.
5      Q.  Are you familiar with what it provides?     01:54
6      A.  I believe the pre-nuptial agreement was
7  that upon our marriage I was going to give this
8  apartment to my wife.
9      Q.  Did you own the apartment at that time?
10     A.  It looks like I had an interest in the       01:54
11  apartment obviously, but I don't know exactly what
12  interest I had, whether it was half interest, a
13  third interest with my brothers or full interest.
14  You're asking me when I signed the pre-nuptial
15  agreement in 1998?                                   01:54
16     Q.  Yes.
17     A.  I'm not sure of my ownership interest or
18  my --
19     Q.  The pre-nuptial agreement required you
20  to place the full ownership in her.  Why did you     01:55
21  only give her half?
22     A.  I have to look at the pre-nuptial
23  agreement because possibly part of the pre-nuptial
24  agreement stated -- I'm speculating.
25     Q.  Don't speculate.                             01:55

Page 65

1            Shainberg
2      MR. WITHERWAX:  Don't speculate.
3      Q.  You have three lawyers yelling at you
4  not to speculate.
5      A.  I don't know what the pre-nuptial says.     01:55
6      MR. GRAUBARD:  Mr. Witherwax, I think if
7  you could bring the pre-nuptial tomorrow it
8  would be useful.
9      MR. WITHERWAX:  I'm not going to be here
10  tomorrow.  I don't represent Mrs. Shainberg.        01:55
11     MR. GRAUBARD:  You're not going to be
12  here?
13     MR. WITHERWAX:  She has her own attorney
14  and he can bring that.
15     MR. GRAUBARD:  I don't know who it is.          01:55
16     MR. WITHERWAX:  I don't know who either.
17     Q.  If you could mention to your wife, it
18  would be useful if she brought it because it will
19  avoid everyone having to make a trip back.
20     A.  Okay.                                         01:55
21     Q.  Thank you.
22     MR. GRAUBARD:  Since you're not going to
23  be here tomorrow we'll keep these
24  self-contained so you can attach these
25  exhibits to Mr. Shainberg and we'll have a           01:56

SEC0093

4fe39479-ec6c-4cb9-a2fe-32117507daee

Joshua Shainberg                                    February 27, 2007

---

Page 74

Shainberg

1
2    (Plaintiff's Exhibit 14, Letter signed
3    by Mr. Shainberg dated February 2, 2003, was
4    so marked for identification.)
5    Q.  Mr. Shainberg, that is your signature?    02:06
6    A.  Yes.
7    Q.  And you were requesting that your name
8    be taken off the certificate in 2003, is that
9    correct?
10   A.  Yes.                                       02:06
11       MR. GRAUBARD:  I'm going to mark as
12   Exhibit 15 a letter dated March 29, 2003.
13       (Plaintiff's Exhibit 15, Letter dated
14   March 29, 2003, was so marked for
15   identification.)                               02:06
16   Q.  Mr. Shainberg, Exhibit 15, is that your
17   signature?
18   A.  Yes.
19   Q.  It says "I am taking all responsibility
20   for current and future expenses and costs related to    02:06
21   385 Grand Street, apartment L806."
22   A.  Yes.
23   Q.  What was the purpose of your writing
24   this letter?
25   A.  I have no clue.                            02:07

---

Page 75

Shainberg

1
2    Q.  Have you taken responsibility for the
3    expenses of apartment 806?
4    A.  I've attempted to.
5    Q.  What does that mean?                       02:07
6    A.  Well, at the time I wrote this letter,
7    it was my intention to contribute, if not totally
8    take responsibility for the expenses of this co-op,
9    but it didn't work out that way.
10   Q.  Was this a request of the board of       02:07
11   directors to you?
12   A.  I don't know.
13   Q.  At the time you wrote this letter in
14   March 2003, were you employed?
15   A.  I was not making any money.              02:07
16   Q.  You were not making money, did you have
17   any assets, you personally?
18   A.  No, I'm sorry.
19   Q.  Let's be very clear on this.  On March
20   29, 2003 were you employed gainfully by anyone?    02:08
21   A.  No.
22   Q.  In March of 2003 did you have any
23   assets?
24   A.  I believe, yes.
25   Q.  What were those assets?                  02:08

---

Page 76

Shainberg

1
2    A.  Shares in ICT Technologies.
3    Q.  How much were those worth?
4    A.  I don't know.
5    Q.  If you have any idea?                     02:08
6        MR. WITHERWAX:  If you know.
7    Q.  If you know, if you don't know say you
8    don't know.
9    A.  I don't know.
10   Q.  Did you have any other assets other than    02:08
11   the shares in ICT Technologies?
12   A.  Not that I'm aware of.
13       MR. GRAUBARD:  Mark this now as Exhibit
14   16.
15       (Plaintiff's Exhibit 16, Single page     02:08
16   from statement from Morgan Stanley for month
17   ended October 31, 2005, was so marked for
18   identification.)
19       MR. GRAUBARD:  Which is a single page
20   from a statement from Morgan Stanley.         02:08
21   Q.  Mr. Shainberg, this is a single page
22   from the Morgan Stanley account for the month ended
23   October 31, 2005.
24       Now this page shows a total asset value
25   in your account of $1,806,679.                02:09

---

Page 77

Shainberg

1
2        MR. WITHERWAX:  Excuse me, Counsel,
3    isn't this part of a previous exhibit?
4        MR. GRAUBARD:  I'm going to explain
5    something in a second.                        02:09
6    Q.  This document came from the co-op board
7    files as distinguished from the one that you had
8    produced, and this is a monthly statement, not the
9    year-end statement.  So that's the two distinctions.
10   Now, this does show the total asset value of    02:09
11   1,806,000.
12   A.  Okay.
13   Q.  Do you know how this document ended up
14   in the files of the co-op board?
15   A.  Not really.                              02:10
16   Q.  This is the incorrect amount that was
17   caused by the incorrect CUSIP number, is that
18   correct?
19   A.  I'm not sure.  I did see a previous
20   document.                                     02:10
21       MR. WITHERWAX:  He previously answered
22   that question.  Asked and answered.
23       MR. GRAUBARD:  He answered the question
24   as to the -- I just want to confirm.
25   Q.  Did you ever have $1.8 million in stocks    02:10

---

**GRAUBARD DECL. EX. 4**                    20  (Pages 74 to 77)

SEC0094

**Condensed Transcript**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff-Judgment
        Creditor,

   -against-

JOSHUA S. SHAINBERG,

        Defendant-Judgment
        Debtor.

99 Civ.
7357(NG)
(VVP)

------------------------------------------------------------------

DEPOSITION OF LARYSSA SHAINBERG, taken by

Plaintiff-Judgment Creditor, pursuant to Court Order, held at

Securities and Exchange Commission, Three World Financial

Center, New York, New York, on Wednesday, May 16, 2007,

at 10:20 a.m., before Lisa Rosenfeld, a Shorthand Reporter and

Notary Public within and for the State of New York.



# Tankoos Reporting

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

GRAUBARD DECL. EX. 5

SEC095

Laryssa Shainberg                                    May 16, 2007

```
                                    1
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------
SECURITIES AND EXCHANGE COMMISSION,
              Plaintiff-Judgment      99 Civ.
              Creditor,               7357(NG)
                                      (VVP)
              -against-

JOSHUA S. SHAINBERG,

              Defendant-Judgment
              Debtor.
------------------------------------

        DEPOSITION OF LARYSSA SHAINBERG, taken by
Plaintiff-Judgment Creditor, pursuant to Court
Order, held at Securities and Exchange Commission,
Three World Financial Center, New York, New York, on
Wednesday, May 16, 2007, at 10:20 a.m., before Lisa
Rosenfeld, a Shorthand Reporter and Notary Public
within and for the State of New York.

```
                                    2
```

1  A P P E A R A N C E S :

2

3     SECURITIES AND EXCHANGE COMMISSION
4        Attorneys for Plaintiff-Judgment Creditor
5        Three World Financial Center
6        New York, New York 10281-1022
7
8     By:  JOHN J. GRAUBARD, ESQ.
9          BOHDAN S. OZARUK, ESQ.
10
11    ROGER L. FIDLER, ESQ.
12       Attorney for the Witness
13       225 Franklin Avenue
14       Midland Park, New Jersey 07432
15
16
17
18
19
20
21
22
23
24
25

```
                                    3
```

1              Shainberg
2        L A R Y S S A   S H A I N B E R G,
3   having been first duly sworn by Lisa Rosenfeld, a
4   Notary Public for the State of New York, was
5   examined and testified as follows:
6   EXAMINATION BY MR. GRAUBARD:
7        Q.  Ms. Shainberg, could you please identify
8   yourself for the record and spell your name?
9        A.  My name is Laryssa Shainberg,
10  L-a-r-y-s-s-a, S-h-a-i-n-b-e-r-g.
11       Q.  You're represented by counsel, is that
12  correct?
13       A.  Yes.
14       MR. GRAUBARD:  Counsel, please identify
15  himself.
16       MR. FIDLER:  Roger Fidler of Midland
17  Park, New Jersey.
18       MR. GRAUBARD:  For the record, before
19  going on the record Mr. Fidler stated that he
20  would like to have the witness read and sign
21  the deposition.  Is that correct?
22       MR. FIDLER:  That is correct.
23       MR. GRAUBARD:  This is a deposition
24  being taken in aid of enforcement against a
25  judgment against a defendant Joshua Shainberg

```
                                    4
```

1              Shainberg
2   pursuant to 28 USC Section 3105A and the
3   Federal Rules of Civil Procedure 69A.
4        At this point I'm going to mark as
5   Exhibit 19 a copy of a subpoena dated January
6   18, 2007.
7        (Plaintiff's Exhibit 19, Subpoena dated
8   January 18, 2007, was so marked for
9   identification.)
10       MR. GRAUBARD:  I am also going to mark
11  as Exhibit 20 a copy of a notice of
12  deposition of the same date.
13       (Plaintiff's Exhibit 20, Notice of
14  deposition dated January 18, 2007, was so
15  marked for identification.)
16       MR. GRAUBARD:  I am also going to mark
17  this is Exhibit 21, a stipulation and order
18  from the District Court which is the order
19  was entered on May 10, 2007.
20       (Plaintiff's Exhibit 21, Stipulation and
21  order entered on May 10, 2007, was so marked
22  for identification.)
23       Q.  Mrs. Shainberg, you're appearing here
24  today pursuant to the subpoena, notice of
25  deposition, stipulation and court order in this



**Tankoos Reporting**

GRAUBARD DECL. EX. 5          516.741.5235   212.349.9692   888.242.DEPO(3376)
                              Toll Free Fax: 800.337.6769
                              www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York    SEC 096

5

```
 1              Shainberg
 2    matter, is that correct?
 3        A.  Yes.
 4        Q.  The scope of this examination is to
 5    determine assets and income of Joshua Shainberg that
 6    are available to satisfy the outstanding judgment.
 7    Do you know Joshua Shainberg?
 8        A.  Yes.
 9        Q.  Are you related with him?
10        A.  He's my husband.
11        Q.  When were you married?
12        A.  June 5th, '90 -- I have to think how old
13    my son is, '98.
14        Q.  And how long did you know Mr. Shainberg
15    before your marriage?
16        A.  Eight years.
17        Q.  Did you have any type of a business
18    relationship with Mr. Shainberg before your
19    marriage?
20        A.  No.
21        Q.  Between yourself and Joshua Shainberg,
22    who handles the family finances?
23        A.  Pretty much me.  I balance the
24    checkbook.
25        Q.  Have you ever testified before in court?
```

6

```
 1              Shainberg
 2        A.  No.
 3        Q.  Have you ever given a deposition before?
 4        A.  No.
 5        Q.  Well, I'm just going to make things go
 6    easier, just give you a couple of ground rules.  The
 7    first is that you should listen to my question and
 8    let me finish it because the reporter can't take
 9    down your answer unless I finish the question.  And
10    the second is if you are answering a question, it is
11    very hard for the reporter to take down that you're
12    shaking your head yes or no, so you have to answer
13    by saying something, do you understand that?
14        A.  I understand.
15        Q.  Is there any reason today that you might
16    be impaired in your ability to recall facts or to
17    relate the facts that you recall?
18        A.  Other than time, no.
19        Q.  Are you taking any medication that might
20    affect your ability?
21        A.  No.
22            MR. GRAUBARD:  I'd like to mark now as
23        Exhibit 22 a restraining notice dated January
24        18, 2007.
25            (Plaintiff's Exhibit 22, Restraining
```

7

```
 1              Shainberg
 2        notice dated January 18, 2007, was so marked
 3        for identification.)
 4        Q.  Mrs. Shainberg, have you seen this
 5    restraining notice before?
 6        A.  No.
 7        Q.  Do you recall receiving a certified
 8    letter in January 2007?
 9        A.  No, I don't remember.
10        Q.  Since January 2007, have you transferred
11    any property belonging to Mr. Shainberg to anyone
12    else?
13        A.  No.
14        Q.  Have you received any property from Mr.
15    Shainberg since January 2007?
16        A.  No.
17        Q.  I'm going to ask some questions about
18    your -- general background questions.  What is your
19    age?
20        A.  38.
21        Q.  Where were you born?
22        A.  In Lebanon, Virginia.
23        Q.  What is your Social Security number?  I
24    will tell you if this ever goes into anything filed
25    with the court the Social Security number is
```

REDACTED

8

```
 1              Shainberg
 2    eliminated so it's not something that is ever made
 3    public.
 4        A.  Thank you. ████████
 5        Q.  Before you were married what was your
 6    name?
 7        A.  Laryssa Shepherd.
 8        Q.  How do you spell the last name?
 9        A.  S-h-e-p-h-e-r-d.
10        Q.  Have you ever used any other name?
11        A.  No.
12        Q.  Where do you live now?
13        A.  I live at 385 Grand Street, apartment
14    L806.
15        Q.  Could you describe the apartment?
16        A.  It's a three-bedroom, one and a half
17    bath.
18        Q.  That is a cooperative apartment?
19        A.  It's a co-op.
20        Q.  What floor is it located on?
21        A.  Eighth floor.
22        Q.  Is the L the designation for the
23    building?
24        A.  It's the section.  There are several
25    sections.
```

2 (Pages 5 to 8)



**Tankoos Reporting**

GRAUBARD DECL. EX. 5    516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

SEC097

13

```
 1              Shainberg
 2      Q.  Do you drive the Honda?
 3      A.  No.
 4      Q.  Do you have --
 5      A.  I have difficulty seeing, I don't drive
 6  in the city.
 7      Q.  Do you have a driver's license?
 8      A.  Not at this time.  I'm trying to get
 9  one.
10          MR. GRAUBARD:  Mark this as Exhibit 23.
11          (Plaintiff's Exhibit 23, New York State
12      identification card, was so marked for
13      identification.)
14      Q.  I'm going to show you Exhibit 23, which
15  is a copy of a New York State identification card.
16  Is that the identification card that's issued to
17  you?
18      A.  Yes.
19      Q.  Again that shows that you do not have a
20  license to operate, is that correct?
21      A.  Yes.
22      Q.  Are there any other assets that you have
23  of any type?
24      A.  I'm not sure.
25      Q.  I'll go through some of them.  You don't
```

14

```
 1              Shainberg
 2  recall right now.
 3      A.  No, I don't.
 4      Q.  Because these are more general
 5  questions.  Are you holding any property in your
 6  name that really belongs to Joshua Shainberg?
 7      A.  No.
 8      Q.  Are you holding any property in your
 9  name that was given to you as a gift by Mr.
10  Shainberg?
11      A.  No.
12      Q.  Are you holding any property in your
13  name that was purchased with any funds or property
14  that was given to you by Mr. Shainberg?
15      A.  No.
16      Q.  Do you know of anybody else who is
17  holding any property that really belongs to Joshua
18  Shainberg?
19      A.  No.
20      Q.  Do you know of anyone else who is
21  holding property that was given to them as a gift by
22  Joshua Shainberg?
23      A.  No.
24      Q.  Are you employed?
25      A.  No.
```

15

```
 1              Shainberg
 2      Q.  In the past ten years have you been
 3  employed at any time?
 4      A.  Yes.
 5      Q.  Where were you employed?
 6      A.  I'm trying to think, if it's less than
 7  ten years I was employed with Lanier, L-a-n-i-e-r,
 8  copier.
 9      Q.  What was your position there?
10      A.  I was an RSA with the Fortune 500
11  accounts.
12      Q.  What was your annual earnings?
13      A.  It ranged depending on the year I was
14  working there, from 20 to 35,000.
15      Q.  Any other paid employment in the last
16  ten years?
17      A.  No.
18      Q.  How long ago did you stop working at
19  Lanier?
20      A.  Just before we got married.
21      Q.  So you have not worked since your
22  marriage?
23      A.  No.
24      Q.  I'm going to show you what was
25  previously marked at the deposition of Joshua
```

16

```
 1              Shainberg
 2  Shainberg as Exhibit 3, your tax returns for the
 3  year 2006.  Why don't you just take a moment and
 4  look at them before I ask any questions.
 5          Mrs. Shainberg, have you seen these tax
 6  returns before?
 7      A.  Yes.
 8      Q.  Going to the second page, the bottom of
 9  the page, is that your signature?
10      A.  Yes.
11      Q.  Going to the third page which is
12  Schedule D, this shows a sale of assets from college
13  savings funds.  Whose name were these college
14  savings funds in?
15      A.  In my children's names.
16      Q.  Who controlled these funds?
17      A.  I did.
18      Q.  And are there any funds left in these
19  college savings funds?
20      A.  No.
21      Q.  Why did you sell these funds?
22      A.  To pay the bills.
23      Q.  What was the source of the money that
24  was put in these funds?
25      A.  This was from savings that I had, I
```

4 (Pages 13 to 16)



**T**
**Tankoos Reporting**

GRAUBARD DECL. EX. 5

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

SEC098

Laryssa Shainberg

May 16, 2007

---

17

Shainberg

1  opened it for my children.
2  Q.  Was any of the funds in the college
3  savings accounts assets given by Mr. Shainberg?
4  A.  No.
5  Q.  Do you know anything about an action in
6  the United States District Court for the Southern
7  District of New York by yourself against Alex
8  Goldsmith and others?
9  A.  Yes.
10  Q.  What is that lawsuit about?
11  A.  I don't have the details with me.
12  MR. GRAUBARD: Mark Exhibit 24.
13  (Plaintiff's Exhibit 24, Summons and
14  complaint, was so marked for identification.)
15  Q.  Mrs. Shainberg, I'm showing you Exhibit
16  24, which is a copy of the summons and complaint in
17  this matter. Please take a moment and look at these
18  documents.
19  You've had a chance to review Exhibit
20  24, which is the summons and complaint. On the last
21  page is that your signature?
22  A.  It looks like my signature, yes.
23  Q.  Do you recall having written this
24  complaint?

---

18

Shainberg

1  A.  Yes.
2  Q.  Did you prepare the complaint or did Mr.
3  Shainberg prepare it?
4  A.  I had help in preparing it.
5  Q.  You had help in preparing it?
6  A.  Yes.
7  Q.  On the -- well, I guess it's the second
8  page of the complaint which is the third page of the
9  package, you talk about shares of ICT Technologies,
10  Inc. that you owned in February 2005. Did you own
11  such shares?
12  A.  Yes, I did.
13  Q.  How much were those shares worth?
14  A.  I would have to look back in my
15  accounts, I'm not sure of the value at the time.
16  Q.  What happened to these shares?
17  A.  Once they were transferred to
18  Switzerland we were never given them back.
19  Q.  When you say transferred to Switzerland,
20  how were they transferred to Switzerland?
21  A.  I don't have how the account number or
22  the structure of the account here with me today.
23  Q.  Let's start with that. Did you have
24  sole ownership of these shares of ICT?

---

19

Shainberg

1  A.  Yes.
2  Q.  How did you come to know Mr. Goldsmith,
3  Mr. Fargesen, Mr. Haas and EH&P Investments?
4  A.  Goldsmith was introduced to me by other
5  people I had known and he introduced me to Erwin
6  Haas in Switzerland.
7  Q.  Did you give these shares, I'll call
8  them the defendants in this action as a group just
9  so you don't have to be specific, did you give them
10  shares to invest or control or hold or put them in
11  an account?
12  A.  There were various reasons. We weren't
13  sure exactly at the time which way we wanted -- I
14  wanted to use the shares.
15  Q.  Then they took these shares to
16  Switzerland?
17  A.  Yes.
18  Q.  Where did you get these shares from?
19  A.  I don't recall where all of the shares
20  came from.
21  Q.  Did you purchase them on the open
22  market?
23  A.  I don't recall at this time.
24  Q.  Do you recall if they were given to you

---

20

Shainberg

1  by your husband?
2  A.  I do not recall, sorry.
3  Q.  Do you claim that you still own these
4  shares?
5  A.  Yes.
6  Q.  And do you claim that you own any
7  proceeds from these shares?
8  A.  Yes.
9  Q.  Do you know of any written documents
10  that relate to these shares?
11  A.  Written documents?
12  Q.  Yes, letters, correspondence, account
13  statements.
14  A.  As far as my ownership or as far as my
15  request?
16  Q.  Let's start with your ownership.
17  A.  I would have to look and see what I have
18  in writing regarding these shares.
19  Q.  And documents relating to the transfer
20  of these shares to the defendants in this action?
21  A.  I can look to see if I still have the
22  documents. I should.
23  Q.  If you did not have the documents how
24  would you be able to prove your case?

---



**Tankoos Reporting**

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY  10165

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

GRAUBARD DECL. EX. 5

---

29

Shainberg
2  as an exhibit the premarital or prenuptial
3  agreement.
4      MR. GRAUBARD: That's what I was going
5  to get to.
6      MR. FIDLER: Do you have it?
7      MR. GRAUBARD: I do not have it. Let me
8  ask a couple of more questions and then I'll
9  get to it.
10     MR. FIDLER: That resolves a lot.
11     MR. GRAUBARD: I want to ask some more
12 questions before I get to it.
13     Q. Mrs. Shainberg, did you have any -- did
14 you work -- let me rephrase that, I tripped up over
15 my own question. In connection with the transfer of
16 ownership, did you do any of the filing of papers or
17 anything or did your husband do it?
18     A. My husband.
19     Q. And did his brother Abe assist him in
20 that?
21     A. I don't remember.
22     Q. His brother Abe is an attorney, is that
23 correct?
24     A. Yes, he is an attorney.
25     Q. Now I'm going to ask, you entered into a

---

30

Shainberg
2  premarital agreement with Mr. Shainberg before you
3  were married?
4      A. Yes.
5      Q. Did you bring a copy with you?
6      MR. FIDLER: Yes, she did.
7      MR. GRAUBARD: I will make copies before
8  I mark it.
9      Off the record.
10     (Discussion off the record)
11     (Plaintiff's Exhibit 26, Premarital
12 agreement, was so marked for identification.)
13     Q. I'm showing you Exhibit 26. Is this the
14 premarital agreement that you were referring to?
15     A. Yes.
16     Q. Going to the last page of the agreement,
17 is that your signature at the bottom?
18     A. Yes.
19     Q. Is that Mr. Shainberg's signature above?
20     A. Yes.
21     Q. On the page before that there appear to
22 be four signatures. Can you identify who the four
23 signatures are?
24     A. The first witness is a friend of mine
25 Judit Szaloki and the second witness, I don't

---

31

Shainberg
2  remember her name. Jennifer, I believe, but I don't
3  remember her name.
4      Q. And the first signature is Mr.
5  Shainberg?
6      A. The first is Joshua, yes.
7      Q. And the second one is yours?
8      A. Yes.
9      Q. Going to the first page, you say
10 "Whereas both parties have consulted independent
11 counsel of their own choosing," did you have an
12 attorney?
13     A. I don't remember.
14     Q. Do you know if Mr. Shainberg had an
15 attorney?
16     A. I don't remember.
17     Q. The first numbered paragraph says
18 "Joshua Shainberg should transfer after marriage the
19 interest to the cooperative," I'll leave the address
20 out. Does that mean it's transferred to you?
21     A. Yes, that was the intention.
22     Q. The second paragraph also refers to the
23 transfer of this apartment, correct?
24     A. Correct.
25     Q. Paragraph 6 says that you come into the

---

32

Shainberg
2  marriage with substantial assets. What were those
3  assets?
4      A. At the time I was working for Lanier, so
5  I had my own savings and salary. I also had
6  collectibles.
7      Q. I notice that there was a paragraph 7
8  that was crossed out.
9      A. Yes.
10     Q. So you did not make any transfer to Mr.
11 Shainberg?
12     A. No.
13     Q. What was the date of your marriage?
14     A. June 5th.
15     Q. 1990 --
16     A. '98.
17     Q. '98. So this is a year and a half
18 before your marriage?
19     A. Yes. There was a delay.
20     Q. A delay in your marriage?
21     A. Yes.
22     Q. In the first paragraph on page 1, you're
23 referred to as Laryssa Shepherd. Later on -- and
24 you're also referred to -- but then you say in
25 paragraph 6, Laryssa Shainberg comes into the

8 (Pages 29 to 32)



**Tankoos Reporting**

GRAUBARD DECL. EX. 5

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY  10165

SEC100

```
                                    33
 1            Shainberg
 2   marriage with substantial assets.  Do you know why
 3   you put Laryssa Shainberg in paragraph 6?
 4        A.  I guess it was wishful thinking.  I
 5   didn't catch that.  I haven't seen this document in
 6   a very long time.
 7        Q.  Whose idea was it to have this
 8   premarital agreement?
 9        A.  It was my husband's.  I was actually on
10   my way out.  I had been with him for eight years.  I
11   didn't see there was a future and this was a grand
12   gesture.
13        Q.  Did you discuss this with anyone else
14   before you signed it?
15        A.  No.
16        Q.  Do you know if Mr. Shainberg discussed
17   it with anyone else?
18        A.  I don't know.  I'm assuming he discussed
19   it with his brothers because they had interest in
20   the apartment.
21        Q.  Do you know who typed this document?
22        A.  I don't know.
23        Q.  Do you know if you typed it?
24        A.  No, I didn't.
25        Q.  You did not type it?
```

```
                                    34
 1            Shainberg
 2        A.  No.
 3        Q.  Do you know where the original of this
 4   is?
 5        A.  I believe it's in a safety deposit box
 6   with our other important documents.
 7        Q.  On the last page which says Exhibit A,
 8   it says you own without obligation or lien $150,000
 9   worth of art and $150,000 worth of stamps, is that
10   correct -- was that correct?
11        A.  That was correct, yes.
12        Q.  It says Mr. Shainberg owns art and other
13   collectibles valued at $50,000, is that correct?
14        A.  I believe so.
15        Q.  Do you know what happened to Mr.
16   Shainberg's art?
17        A.  He has sold pieces, I don't know which
18   ones or how much, but he has liquidated some.
19        Q.  This agreement states that Mr. Shainberg
20   would put the entire apartment in your name, is that
21   correct?
22        A.  Correct.
23        Q.  In 2001 did you obtain the entire
24   apartment in your name?
25        A.  I don't recall the date it was
```

```
                                    35
 1            Shainberg
 2   transferred.
 3            (Plaintiff's Exhibit 27, Consent from
 4        Seward Park Housing Corporation dated October
 5        16, 2001, was so marked for identification.)
 6        Q.  I am going to show you Exhibit 27, which
 7   is a consent from Seward Park Housing Corporation
 8   dated October 16, 2001.
 9        A.  The date does not seem correct as far as
10   the apartment being transferred into my name because
11   I remember being pregnant with Jonah when we signed
12   the papers.
13        Q.  I'm just showing you documents.  Here it
14   says the transfer was into your name and Joshua's
15   name?
16        A.  Yes.  That was a required step by the
17   co-op board.
18        Q.  In other words they wouldn't let it go
19   straight to your name?
20        A.  They would not.
21        Q.  Do you have anything from the co-op
22   board that says that?
23            THE WITNESS:  Roger, were you given --
24            MR. FIDLER:  No.
25        A.  I may have, let me see.  I do have
```

```
                                    36
 1            Shainberg
 2   letters regarding back and forth between management
 3   and myself and my husband.
 4        Q.  But it would have been the co-op board
 5   who required that it be partially in his name?
 6        A.  Yes.
 7        Q.  I don't need the letter.
 8        A.  They made it very difficult.
 9        Q.  I'm not going to comment on New York
10   City co-op boards but those of us who live here know
11   about them.
12        A.  Yes.
13            MR. GRAUBARD:  I am going to next mark a
14        copy of share certificate number 2002 for 39
15        shares.
16            (Plaintiff's Exhibit 28, Share
17        certificate number 2002, was so marked for
18        identification.)
19            MR. GRAUBARD:  I'm going to mark several
20        at a time, so mark Exhibit 29, a receipt and
21        acknowledgment dated October 16, 2001.
22            (Plaintiff's Exhibit 29, Receipt and
23        acknowledgment dated October 16, 2001, was so
24        marked for identification.)
25            MR. GRAUBARD:  Exhibit 30 a proprietary
```

9  (Pages 33 to 36)



**Tankoos Reporting**

GRAUBARD DECL. EX. 5

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY  10165

516.744.5235     212.349.9692     888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

SEC0101

37

Shainberg
2  lease dated final signature October 16th,
3  2001.
4      (Plaintiff's Exhibit 30, Proprietary
5  lease dated final signature October 16th,
6  2001, was so marked for identification.)
7      Q.  Between the consent, the receipt, the
8  stock certificate and the proprietary lease, Mrs.
9  Shainberg, does this refresh your recollection that
10 you received partial title to the apartment in
11 October 2001?
12     A.  Yes.
13     Q.  Are you aware that the Securities and
14 Exchange Commission had brought suit against Mr.
15 Shainberg in 1999?
16     A.  I'm not familiar with the date, I don't
17 know the date.
18     Q.  But you do know they brought suit at
19 some point?
20     A.  Yes.
21     Q.  Do you know if that lawsuit was before
22 or after the date that you received partial title to
23 this apartment?
24     A.  I'm not sure.
25     Q.  Other than the premarital agreement

38

Shainberg
2  that's been marked, did you give any funds or other
3  consideration to Joshua Shainberg for one half
4  interest in the apartment?
5      A.  I gave him four years of conversion.  I
6  spent four years to convert to Judaism.
7      Q.  So you had a rather large investment?
8      A.  Yes, I did.
9      Q.  I am going to show you what was marked
10 previously as Exhibit 14, which is a letter from Mr.
11 Shainberg to the Seward Park Housing Corporation in
12 February 2003.  Did there come a time in 2003 when
13 the entire apartment was transferred to your name?
14     A.  Yes.
15     Q.  What was the reason for that second
16 transfer?
17     A.  It was the completion of his promise to
18 transfer the apartment to me.
19     Q.  Did you remind him that he had to
20 complete his transfer?
21     A.  Absolutely.
22     Q.  I'll show you what was marked as Exhibit
23 13, which is a letter from you to the Seward Park
24 Housing Corporation.  Is that your signature?
25     A.  Yes.

39

Shainberg
2      Q.  I am going to show you Exhibit 12
3  previously marked, which was another letter from you
4  to the board of directors and, was this -- is this
5  your signature?
6      A.  Yes.
7      Q.  I'm going to ask you some questions on
8  this letter now.  Toward the middle of the paragraph
9  it says "Since the middle of 2002 I have worked with
10 Europhone in Elmsford, New York."  Is that statement
11 correct?
12     A.  Yes.
13     Q.  You've done mostly marketing
14 consultation with them, is that correct?
15     A.  Consulting, yes.
16     Q.  It says you received a W-2 form for
17 that?
18     A.  I don't remember if I did.
19     Q.  It says here "Nevertheless, I am
20 enclosing a copy of the W-2 IRS form at that time."
21     A.  Right, I believe I did, yes.
22     Q.  So did you have any employment after
23 your marriage?
24     A.  Consulting, I wasn't sure if that
25 counted as --

40

Shainberg
2      Q.  Let's go back and ask the original
3  question to try and get it accurate.
4      A.  Okay.
5      Q.  Since your marriage have you earned any
6  income either as an employee or as a consultant or
7  otherwise?
8      A.  Yes, doing consulting work.
9      Q.  Who have you done consulting work for?
10     A.  I've done consulting work with
11 Europhone, Eurospeed, which are both related
12 companies.  I do catering and translating.
13     Q.  How much do you earn from those
14 activities?
15     A.  I'd have to look at my finances.
16     Q.  Do you have any approximate idea?
17     A.  No, it goes in, it goes out,
18 unfortunately.
19     Q.  I am now going to show you what was
20 previously marked as Exhibit 17, which is a
21 financial statement that was presented to the board
22 of directors in connection with the second transfer.
23 I'd like you first to look at the first two pages.
24 Is that your signature at the bottom of the second
25 page?

10  (Pages 37 to 40)



GRANBERG DECL. EX. 5

T Tankoos Reporting

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

SEC102

Laryssa Shainberg                                    May 16, 2007

---

41

Shainberg
2  A. Yes.
3  Q. Who prepared the financial statement?
4  Let me start, do you know whose writing it is?
5  A. No, I do not remember.
6  Q. Is it your writing?
7  A. It doesn't appear to be.
8  Q. Do you know who prepared this?
9  A. I don't remember.
10  Q. The first item on the assets side says
11  "$456,000 cash in banks," is that correct? That was
12  your money?
13  A. That was my money.
14  Q. In 2003. What happened to that money?
15  A. That was used to cover family expenses
16  until now. That's what we've lived on.
17  Q. It shows $80,000 of investments in
18  stocks and bonds which are detailed on the second
19  page. Is that accurate as to what you owned in
20  2003?
21  A. Yes.
22  Q. What happened to that?
23  A. They've all been liquidated.
24  Q. The real estate owned is the co-op
25  apartment, is that correct?

---

42

Shainberg
2  A. Correct.
3  Q. Then it says personal property in
4  furniture $45,000, what is that?
5  A. Furniture in the house.
6  Q. According to this Europhone, you
7  received a total of $20,000 bonus and commission?
8  A. That's about correct.
9  Q. What were the source of the funds that
10  were in these bank accounts in 2003?
11  A. In the assets?
12  Q. Yes.
13  A. It should have been savings and various
14  sales.
15  Q. Savings from where?
16  A. Savings from my employment previously.
17  Q. Were all these funds from your
18  employment only or your spouse's?
19  A. Not only employment, no.
20  Q. They're all from your sources?
21  A. Yes.
22  Q. None of these funds came from Mr.
23  Shainberg?
24  A. No.
25  Q. There is a number at the bottom of the

---

43

Shainberg
2  page of SP 0351.
3      MR. FIDLER: At the bottom of which
4  page?
5      MR. GRAUBARD: I'm going to the page
6  that has it at the bottom to identify the
7  page.
8  Q. A letter from Global Trading. Do you
9  know where Global Trading is?
10  A. No.
11  Q. Do you know who Mr. Hayden Doyle is?
12  A. I believe I've met him.
13  Q. Did you ask Mr. Doyle to prepare this
14  letter?
15  A. I don't remember.
16  Q. Next page is a letter from Ana Asperas
17  at Europhone, do you know who she is?
18  A. Yes.
19  Q. Who is she?
20  A. She works with Vasilios Koutsoubinas,
21  his right hand.
22  Q. Who is Mr. Koutsoubinas?
23  A. He owns Europhone.
24  Q. Did Mr. Shainberg ever work for
25  Europhone?

---

44

Shainberg
2  A. Not to my knowledge.
3  Q. Do you know if Mr. Shainberg ever worked
4  with Mr. Koutsoubinas?
5  A. He helped him, yes.
6  Q. Did he receive any payments from Mr.
7  Koutsoubinas?
8  A. You would have to ask him.
9  Q. The next page is on the letterhead of
10  First Romanian American Congregation.
11  A. Yes.
12  Q. Written by Rabbi Gershon Spiegel?
13  A. Yes.
14  Q. Do you know Rabbi Spiegel?
15  A. Yes.
16  Q. Who is he?
17  A. He's the rabbi of the shul I attend.
18  Q. I'm going to show you what was
19  previously marked Exhibit 15, which is a letter
20  dated March 29, 2003 from Joshua Shainberg. Have
21  you ever seen this letter before?
22  A. Yes.
23  Q. Why did Mr. Shainberg provide this
24  letter?
25  A. They refused to transfer the apartment

---

11 (Pages 41 to 44)



**Tankoos Reporting**

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

GRAUBARD DECL. EX. 5                    SEC 0103

Laryssa Shainberg                                    May 16, 2007

---

45

Shainberg

2  to my name unless he acknowledged responsibility.
3      Q.  At this time, which is March 2003, was
4  Mr. Shainberg employed?
5      A.  Not to my knowledge.
6      Q.  Did Mr. Shainberg have any assets?
7      A.  I'm not sure.
8      Q.  Do you know why they wanted him to take
9  responsibility at that point?
10     A.  Just another hoop to jump through.  Like
11  I said, they made it very difficult for us to
12  transfer the apartment, including suing us twice for
13  the same dog.
14     Q.  Why did they sue you for a dog?
15     A.  There are no dogs allowed in the
16  apartment but we had had the dog for three years and
17  they sued us once, we won.  They came back and when
18  we tried to change the apartment to my name, they
19  sued us a second time, same dog.  So it was a
20  nuisance lawsuit and we received legal funds back
21  from the co-op, and at that point they finally gave
22  us the apartment.
23     Q.  That was on the basis of the New York
24  City rule that if you have a dog for one year and
25  it's known to the management --

---

46

Shainberg

2      A.  Yes.
3      Q.  -- you are therefore allowed to keep it?
4      A.  Actually it's 90 days.
5      Q.  90 days?
6      A.  Yes.  I know that law very, very well.
7      Q.  I am going to mark a couple of documents
8  now and you can look at them in a group.
9          MR. GRAUBARD:  Exhibit 31 is a stock
10  certificate 2695.
11         (Plaintiff's Exhibit 31, Stock
12  certificate 2695, was so marked for
13  identification.)
14         MR. GRAUBARD:  Exhibit 32 is proprietary
15  lease dated April 3, 2003.
16         (Plaintiff's Exhibit 32, Proprietary
17  lease dated April 3, 2003, was so marked for
18  identification.)
19     Q.  Looking at the 2003 stock certificate
20  and proprietary lease, this is when the co-op was
21  placed solely in your name, is that correct?
22     A.  Correct.
23     Q.  And it has remained solely in your name
24  since then?
25     A.  Yes.

---

47

Shainberg

2      Q.  Since it's been placed solely in your
3  name in 2003, has Mr. Shainberg paid anything toward
4  the upkeep of the co-op?
5      A.  No.
6      Q.  I'm going to show you now what was
7  previously marked Exhibit 18.  Start with the first
8  cover page which has SP 0432 on the bottom.  Is that
9  your signature?
10     A.  Yes.
11     Q.  This is dated December 7, 2005
12  requesting approval of an equity loan on your co-op?
13     A.  Yes.
14     Q.  What was the reason for requesting this
15  equity loan?
16     A.  To purchase a vacation home.
17     Q.  Page SP 0433 is an asset and liability
18  statement, is that your signature?
19     A.  Yes.
20     Q.  In this one you have cash in bank
21  $2,000, was that correct as of December 2005?
22     A.  At that time, yes.
23     Q.  Then securities $57,000?
24     A.  I would have to check my accounts.
25     Q.  Then it says oil terminal

---

48

Shainberg

2  $2-1/2 million, what is that oil terminal?
3      A.  That's the JFK Oil Terminal.
4      Q.  Let's talk at this point now about JFK
5  Oil Terminal.  As of December 2005 what was the JFK
6  Oil Terminal?
7      A.  It was a non-functioning oil terminal
8  for storage of heating oil.
9      Q.  When you say non-functioning, there was
10  no storage actually going on?
11     A.  No.
12     Q.  Where is the oil terminal located?
13     A.  In Berwick, Pennsylvania.
14     Q.  Can you describe what the property of
15  the oil terminal is?
16     A.  There are large storage tanks and
17  previously there have been a connection to the
18  Sunoco pipeline on the property.
19     Q.  Is there a connection now?
20     A.  They took the hardware out.
21     Q.  What is physically located on the site,
22  oil tanks?
23     A.  Oil tanks.
24     Q.  Have they ever been used to your
25  knowledge?

---

12  (Pages 45 to 48)



**Tankoos Reporting**

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY  10165

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

GRAUBARD DECL. EX. 5                                 SEC104

49

```
1                Shainberg
2       A.  They have been used.
3       Q.  How recently?
4       A.  About a year ago we checked the pumps
5   and had them updated.
6       Q.  How do you come to the value of
7   $2-1/2 million?
8       A.  At the time that was what it was
9   represented to me as potential value.
10      Q.  Who represented that to you?
11      A.  The -- I don't have the name of the
12  company that owned it previously.  That was the
13  potential value.
14      Q.  How did you obtain ownership of JFK
15  terminal?
16      A.  I purchased it with stock.
17      Q.  How much did you pay for it?
18      A.  I don't have the amount of shares that I
19  transferred for it.
20      Q.  What were they shares of?
21      A.  ICT.
22      Q.  Where did you get those shares from?
23      A.  Those shares came from my brother-in-law
24  Abe Shainberg, who owed me repayment of debt.
25      Q.  So in exchange for a repayment of debt
```

50

```
1                Shainberg
2   from Abe Shainberg you received shares of ICT that
3   you then transferred to the person you purchased the
4   oil terminal from?
5       A.  Yes.
6       Q.  Was this owned by a corporation of some
7   kind?
8       A.  Yes.  I'd have to look at the name.
9       Q.  Let me just say there is a corporation.
10      A.  There is a corporation.
11      Q.  Who owns the stock in the corporation?
12      A.  I would have to see.
13      Q.  Do you own stock in it?
14      A.  I should be the owner.  I would have to
15  look.
16      Q.  Does Mr. Shainberg own stock in it?
17      A.  No.
18      Q.  Is Mr. Shainberg employed --
19      A.  No.
20      Q.  -- by that company?
21      A.  No, he has consulted.
22      Q.  He's a consultant, does he receive any
23  funds from that company?
24      A.  No.
25      Q.  As a consultant, what does he do?
```

51

```
1                Shainberg
2       A.  He has put feelers out to see if various
3   companies are interested in coupling with our
4   corporation to make it operational.
5       Q.  Also you show art at $75,000, what is
6   that?
7       A.  That's what I actually held onto since
8   our marriage.
9       Q.  Do you still own that art?
10      A.  I still own a few pieces, yes.  I have
11  sold some.
12      Q.  It shows stamps at $1-1/2 million?
13      A.  That's the value.  They haven't been
14  sold.  So I don't know if the market would still
15  bear that.
16      Q.  But that was what you felt it was worth
17  at the time?
18      A.  At the time.
19      Q.  How did you determine that value?
20      A.  That was what was represented when I
21  obtained the stamps.
22      Q.  On page SP 0435, is it income statement
23  and expense statement?  You show business income for
24  $36,000?
25      A.  Uh-huh.
```

52

```
1                Shainberg
2       Q.  Do you see that?
3       A.  Yes.
4       Q.  What was that business income from?
5       A.  I am not a hundred percent sure exactly
6   where it came from.  Some did come from JFK, others
7   from my catering business.
8       Q.  Going to the page SP 0440.  Have you
9   seen this letter before?
10      A.  Yes.
11      Q.  Is Joshua Shainberg the executive vice
12  president of JFK?
13      A.  No.
14      Q.  Does he hold any position with JFK as an
15  officer?
16      A.  No, I gave him that title.  He was a
17  consultant, I gave him that title.  It's really not
18  a functioning title.
19      Q.  It says here you're the hundred percent
20  owner and president, is that correct?
21      A.  Yes.
22      Q.  It says the facility handles in excess
23  of 2-1/2 million gallons of heating oil, is that
24  correct?
25      A.  That should say potentially handles.
```

13  (Pages 49 to 52)



**Tankoos Reporting**

GRAUER DECL. EX. 5

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

SEC 0105

---

53

Shainberg

2 That word was -- should have been in there.
3    Q.  It says you're paid $36,000 a year?
4    A.  That's estimated.
5    Q.  Attached to that there's a bank
6 statement, it's the bank statement for JFK Oil
7 Terminal Corp.?
8    A.  Yes.
9    Q.  That's the account -- is that the
10 account that you presently use as your bank account?
11   A.  It's the account that's used for
12 business.
13   Q.  You said there's also an account at Bank
14 of America.  Do you use any bank account for your
15 personal business?
16   A.  Personal.  No.
17   Q.  How do you pay your bills?
18   A.  Well, right now that's a question.
19   Q.  Not how meaning in the how of where do
20 you get the money from, but how physically do you
21 pay them?  Do you bring cash over?
22   A.  I'm sorry?
23   Q.  Money orders?
24   A.  Cash.
25   Q.  If you sold assets they would pay you by

---

54

Shainberg

2 check ordinarily, is that correct?
3    A.  Correct.
4    Q.  And where would you get the cash for the
5 check?
6    A.  Or they could also pay me cash.  One
7 correction, I do also pay my bills with my credit
8 card.
9    Q.  Where is your credit card?
10   A.  I'm sorry?
11   Q.  Which institution holds your credit
12 card?
13   A.  Capital One.
14   Q.  Is Joshua Shainberg a signatory on the
15 card?
16   A.  No.
17   Q.  Do you know if Joshua Shainberg is a
18 signatory on any cards?
19   A.  Not to my knowledge.
20   Q.  Is Joshua -- going back now a little
21 bit, is Joshua Shainberg a signatory on the lease
22 for the Honda Odyssey?
23   A.  No.
24        MR. GRAUBARD:  Mark this as Exhibit 33.
25        (Plaintiff's Exhibit 33, Resource letter

---

55

Shainberg

2 from Emigrant Mortgage Company, was so marked
3 for identification.)
4    Q.  Exhibit 33, Mrs. Shainberg, is a
5 resource letter from the Emigrant Mortgage Company.
6 Is that your signature on the bottom of the first
7 page?
8    A.  Yes.
9    Q.  This resource letter indicates on the
10 last page that they estimate that your total monthly
11 payment on the mortgage would be approximately
12 $3,113.29 including the homeowner's -- including the
13 maintenance fee?
14   A.  Yes.
15   Q.  Is that correct?
16   A.  Yes.
17   Q.  Where do you get the funds to make that
18 payment from?
19   A.  I do catering.
20   Q.  How much do you make from catering?
21   A.  It depends on how many jobs I have in a
22 week.
23   Q.  Is there a reason, Mrs. Shainberg, that
24 you had the mortgage on your co-op apartment rather
25 than on the vacation home you were purchasing?

---

56

Shainberg

2    A.  Yes, it was easier to do.  The paperwork
3 was easier, we already had the apartment.  This was
4 what was represented to me by the mortgage broker.
5 He discussed the options and said that this would be
6 the easiest route to go.
7        MR. GRAUBARD:  Can you mark this as
8 Exhibit 34, a deed dated February 8th, 2006.
9        (Plaintiff's Exhibit 34, Deed dated
10 February 8th, 2006, was so marked for
11 identification.)
12   Q.  Mrs. Shainberg, I'm showing you
13 documents from the Sullivan County clerk.  There's a
14 cover page and deed to property located in Lock
15 Sheldrake, New York.  Is this the deed to your
16 vacation house?
17   A.  Yes.
18   Q.  Could you describe your vacation house?
19   A.  It's an attached townhouse end unit, two
20 floors with three to four bedrooms, four baths.
21   Q.  According to these documents the
22 purchase price was $175,000?
23   A.  Correct.
24   Q.  According to the mortgage documents your
25 mortgage was $250,000?

14  (Pages 53 to 56)



**Tankoos Reporting**

GRAUBARD DECL. EX. 5    516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY  10165        SEC106

61
Shainberg

1  A.  From savings.  And from my catering.
2  Q.  Other than what you have discussed here,
3  do you know of any other assets in your name?
4  A.  No, I'm not sure.
5  Q.  Going back to the lawsuit in Southern
6  District, now that we've gone through other things
7  and where various shares of ICT have come from, does
8  this refresh your recollection where these
9  particular shares of ICT came from?
10  A.  I'm sorry?
11  Q.  The shares that were transferred to
12  Switzerland, do you know where those shares of ICT
13  came from?
14  A.  No.  I would have to look back in my
15  records.
16  Q.  Do you believe that you paid for those
17  shares?
18  A.  I'm not sure, I would have to look, I
19  apologize.
20  Q.  Don't apologize, the last thing I want
21  you to do is take a guess.  I'm sure that's what
22  your lawyer told you.
23  A.  It's just been a very long time, I would
24  have to look at my documents.
25

62
Shainberg

1  Q.  You're aware that the Securities and
2  Exchange Commission has obtained a judgment against
3  Mr. Shainberg for substantial sums, is that correct?
4  A.  I'm also aware that he's making a deal.
5  Q.  But the point is you're aware that
6  there's a judgment right now?
7  A.  Yes.
8  Q.  Since you learned about the judgment has
9  Mr. Shainberg transferred any properties or funds to
10  you?
11  A.  He doesn't have anything to transfer.
12  Q.  What does Mr. Shainberg do during the
13  day?
14  A.  He is helping me with JFK, he's looking
15  for employment, he's putting feelers out for
16  consulting jobs.
17  Q.  What does he basically do with respect
18  to JFK?
19  A.  Again he's trying to help find people
20  who are interested in coupling with our company.  At
21  this point it's not producing any income, it's not
22  bringing anything in, it's no longer a source of
23  income for me.
24  Q.  Are there any expenses that you incur
25

63
Shainberg

1  monthly for JFK such as real estate taxes or
2  maintenance?
3  A.  There are city taxes and maintenance for
4  the facility.  We've had to repair a pump and the
5  fence and pay the taxes.
6  Q.  How did you come to know about JFK as
7  something to purchase?
8  A.  It was presented to me from an
9  associate, a friend, and I thought it over.  It was
10  an interesting adventure.
11  Q.  Do you know anything about JFK -- let me
12  rephrase that.  Do you know anything about the oil
13  storage business?
14  A.  No.
15  Q.  You don't have a degree in chemical
16  engineering, do you?
17  A.  No.
18  Q.  Or petroleum engineering?
19  A.  No.  I have a language degree.
20  Q.  Why did you feel that you were qualified
21  to undertake the operation of an oil terminal?
22  A.  It was more for the real estate than
23  anything.  It was an investment more for the real
24  estate.  I was hoping that I could find someone who
25

64
Shainberg

1  would take over that aspect of the business and I
2  could recoup a profit on flipping it.
3  Q.  Was the JFK property brought to your
4  attention through an associate of Mr. Shainberg?
5  A.  I believe he knew my husband.  I'm not
6  sure.
7  Q.  Do you know if Mr. Shainberg was
8  involved in negotiations to obtain that?
9  A.  I'm sure I consulted him.
10  Q.  Do you know the name of the person from
11  whom you acquired JFK?
12  A.  It's a Russian name.
13  Q.  I'll stop right there.
14  A.  Thank you.
15  Q.  Do you know approximately when this
16  occurred?
17  A.  The purchase of JFK?
18  Q.  Yes.
19  A.  I don't know.
20  Q.  Let's say was it before 2003 or after
21  2003 or about 2003?
22  A.  It was around 2003.
23  Q.  So it wouldn't have been before 2000?
24  A.  No.
25

16 (Pages 61 to 64)



**Tankoos Reporting**

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

GRAUBARD DECL. EX. 5                                    SEC107