December 7, 2005
Rudd Realty Management Corp.
Seward Park office
413 Grand Street
New York, N.Y. 10002

REDACTED

Dear Management Agent,

I am seeking and I have been approved by Emigrant Bank for a Home
Equity Loan on my Cooperative apartment. The reason I am taking out
this loan is to purchase in full a vacation home in Loch Sheldrake, New
York. I am also paying credit card balances due and any minor taxes
that may be due in 2005. I have enclosed all necessary paperwork from
Emigrant Bank and the Home Equity Application with two checks, two
hundred and fifty dollars to Rudd Realty Management Corp. and fifty
dollars to Seward Park Housing Corporation.

Sincerely,

Laryssa Shainberg
385 Grand Street, #L806
N.Y. N.Y. 10002
917- █████ cell
212- █████ home
212- █████ fax

PLAINTIFF'S
EXHIBIT
18
2-27-07 LR

SEC150
SP0432

# ASSETS AND LIABILITIES STATEMENT

Applicant's Name _LARYSSA    SHAINBERG_

Statement of Financial Condition as of the _____ _1ST_ day of _DECEMBER_ _200_

Please Note: Supporting documentation for all assets and liabilities is to be attached to this statement. Please use the word ` where no amount is to be entered.

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash in bank (attach bank statements) | $ 2000 | Notes Payable (attach schedule B) | $ — |
| Downpayment on contract (if paid) | | Mortgages payable (attach schedule A) | — |
| Securities (Stocks & Bonds-attach statements) | 57,000 | Unpaid Real Estate Taxes | — |
| Cash value of life insurance, less any loans | | Unpaid Income Taxes    APPX. | 350c |
| Investment in own business    OIL TERMINAL | 2,500,000 | Accounts Payable (attach schedule C) | |
| Real Estate Owned (attach schedule A) | 800,000 | Outstanding Credit Card Balances (attach schedule C) | 9894 |
| Vested Interest in Retirement Fund | | Other Liabilities (itemize) | |
| Automobile (make and year) | | CAR LEASE 469 per mo. For $17,374 over 5 year term. | |
| Loans and Notes Receivable | | | |
| Personal Property and Furniture | | | |
| Other Assets (itemize) | | | |
| ART | 75,000 | | |
| STAMPS | 1,500,000 | | |
| | | | |
| TOTAL ASSETS | $ 4,934,000 | TOTAL LIABILITIES | $ 13,394 |
| Contingent Liabilities (personal guarantees or potential liabilities-attach schedule D) | $ | NET WORTH (excess of assets over liabilities) | $ #4,920,606 |

The foregoing statements and details pertaining thereto, both printed and written, have been carefully read and the undersigned hereby solemnly declares and certifies that same is a full and correct exhibit of my/our financial condition.

Date _12/1/05_

X _[signature]_
Signature of Applicant

_____
Signature of Applicant

**GRAUBARD DECL. EX. 25**

## SCHEDULE A - REAL ESTATE OWNED

| Location and Type of Property | Title In the Name of | Date Acquired | Cost | Recent Appraised Value | Mortgage Balance | Maturity Date | Mon Paym |
|---|---|---|---|---|---|---|---|
| 385 Grand St. #L806 | Laryssa Shalnberg | 4/3/03 | TSFR | 800,000 | 0 | — | — |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SCHEDULE B - NOTES PAYABLE

| Amount | Due to | In Name of | Maturity Date | Collateral | Month Payme |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## SCHEDULE C - ACCOUNTS PAYABLE (include credit card balances here)

| Amount | Due to | In Name of | Maturity Date | Month Payme |
|---|---|---|---|---|
| 6010 | CHASE | Laryssa Shalnberg | Rev | 200 |
| 1929 | CHASE | " " | Rev | 100 |
| 1304 | CAPITAL 1 BANK | " " | Rev | 100 |
| 561 | Washington Mutual | " " | Rev | 50 |
| 90 | Bank of America | " " | Rev | 10 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## SCHEDULE D - CONTINGENT LIABILITIES

| Amount | Type | Due to | Obligor | Final Maturity/ or repayment | Collateral * |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

*Including Letter of Credit and Surety Bonds

GRAUBARD DECL. EX. 25

# 2005 YEARLY INCOME AND EXPENSE STATEMENT

**Instructions:** If the income tax statement you submit with this application is for the *prior calendar year*, then complete th
for the current calendar year only. *If you have not submitted* a filed income tax statement for the prior calendar year,
complete two forms; one for the preceding year and one for the current calendar year.

Applicant's Name  **LADYSSA   SHAINBERG**

| INCOME | | EXPENSES | |
|---|---|---|---|
| Salary (or earned income) | $ | Mortgage Payments (principal & interest) | |
| Bonus and Commissions | | Real Estate Taxes | — |
| Real Estate Income (Net) | | Rent/Co-op/Condo Maintenance | 9000 |
| Share of partnership income (loss) | | Loan or Note Payments | — |
| Business Income (Net) Sole Proprietorship | 36,000 | Auto Loan/Lease Payments | 2352 |
| Dividends | | Insurance Premiums *Life, Health, CAR, Home* | 14,984 |
| Interest | | Tuition Expenses | 21,500 |
| Pension (IRA, Koegh) | | Charitable Contributions | 3600 |
| Social Security | | Medical (unreimbursed) | 7000 |
| Investments (describe) | | Alimony, Child Support, maint. | |
| *See below* | | Living Expenses (food, clothing, utilities, etc) | 24,000 |
| Other Income (itemize) Stock sales net | 110904. | Credit Card payments | 3,000 |
| ART Sales net | 9,000. | Investment Expenses | 500 |
| Mutual Fund sales net | 94,663 | Pension (IRA, Keogh) | — |
| | | Other Expenses (itemize) Business | 12,000 |
| | | Social Security | |
| | | Medicare | — |
| | | Income Taxes  Appx. | 7500 |
| | | | |
| TOTAL INCOME | $ 250,567 | TOTAL EXPENSES | $ 105,336 |

List any unsatisfied judgments or legal actions pending against you and the amounts involved  N/A

Have you ever gone through bankruptcy or other insolvency proceedings?  No

Date  12/01/05

X _____
Signature of Applicant

**GRAUBARD DECL. EX. 25**

# 2004 YEARLY INCOME AND EXPENSE STATEMENT

Instructions: If the income tax statement you submit with this application is for the _prior calendar year_, then complete th
for the current calendar year only. _If you have not submitted_ a filed income tax statement for the prior calendar year,
complete two forms; one for the preceding year and one for the current calendar year.

Applicant's Name    Laryssa Shainberg

| INCOME | | EXPENSES | |
|---|---|---|---|
| Salary (or earned income) | $19,230 | Mortgage Payments (principal & interest) | |
| Bonus and Commissions | | Real Estate Taxes | |
| Real Estate Income (Net) | | Rent/Co-op/Condo Maintenance | 8400 |
| Share of partnership income (loss) | | Loan or Note Payments | |
| Business Income (Net) Sole Proprietorship | | Auto Loan/Lease Payments | 2352 |
| Dividends | | Insurance Premiums Health, life, car, home | 14984 |
| Interest | | Tuition Expenses | 17,000 |
| Pension (IRA, Koegh) | | Charitable Contributions | 3500 |
| Social Security | | Medical (unreimbursed) | 5800 |
| Investments (describe) | | Alimony, Child Support, maint. | — |
| See below | | Living Expenses (food, clothing, utilities, etc) | 24,000 |
| Other Income (itemize) | | Credit Card payments | 5000 |
| Stock Sales net | 86,480 | Investment Expenses | 300 |
| Fund Sales | 10,752 | Pension (IRA, Keogh) | — |
| Art Sales | 5,000 | Other Expenses (itemize) | |
| | | Social Security | — |
| | | Medicare | — |
| | | Income Taxes | 3500 |
| | | | |
| TOTAL INCOME | $121,462 | TOTAL EXPENSES | $84,836 |

List any unsatisfied judgments or legal actions pending against you and the amounts involved    N/A

Have you ever gone through bankruptcy or other insolvency proceedings?    No

Date  12/1/05

X _(signature)_
Signature of Applicant

_(signature)_
Signature of Applicant

GRAUBARD DECL. EX. 25

SEC150
SP0436



## RUDD REALTY MANAGEMENT CORP.

545 Madison Avenue, New York, NY 10022

## CREDIT CHECK AUTHORIZATION

REDACTED

I hereby authorize RUDD REALTY MANAGEMENT CORP. to conduct an inquiry concerning my credit history. I understand that the procurement of such report may contain information as to my background, mode of living, character and personal reputation. I release RUDD REALTY MANAGEMENT from any liability and responsibility from doing so.

PLEASE PRINT CLEARLY

LARYSSA   SHAINBERG
NAME

385   GRAND ST. #L806
ADDRESS

New York        NY        10002
CITY            STATE           ZIP

███████████           2 - ██ - 69
SOCIAL SECURITY NUMBER       DATE OF BIRTH

PROPOSED APARTMENT LOCATION AT _____

MANAGING AGENT IS _Rudd Realty Mgt / Seward Park Housing Corp._

X _[signature]_                    12/1/05
SIGNATURE                          DATE

**GRAUBARD DECL. EX. 25**

**SEC150**
SP0437

[This form is not intended for use where the Proprietary Lease already has "financing provisions" which duplicate the substance of this agreement or are at substantial variance with the provisions of this agreement.]

Premises: 385 Grand St, New York, NY 10002

Apartment: L806

Gentlemen:

We have been asked by Laryssa D. Shainberg                    ("Lessee")

for a loan of $ 250,000.00    to be secured by a pledge, security interest, mortgage and/or assignment (hereinafter sometimes collectively referred to as "the Security") of shares of your Corporation allocated to the above Apartment and of the Proprietary Lease (the "Lease") appurtenant thereto (the shares and Lease collectively referred to as "the Apartment").

1. (a) You are a New York corporation formed for the purpose of cooperative ownership and (owner in fee) (ground tenant) of the above premises.

(b) Your records show that the Lessee is the owner of the Apartment.

(c) You have duly approved or consented to the creation by the Lessee of the Security, if and to the extent such approval is required by the Lease.

2. (a) You will not consent to any further encumbrances, subletting, termination, cancellation, surrender or modification of the Apartment by the Lessee without our approval, which we will not unreasonably withhold but this provision shall not apply to any modification or termination which, by the terms of the Lease, may be effective against a Lessee when approved by a fixed percentage of other holders of your shares, or which may be effective in the event of condemnation or casualty.

(b) The Lessee has agreed that, without our written approval, the Lessee will not exercise any right that he may have under the lease to terminate the lease so long as the loan is outstanding. Accordingly you will not consider any attempt to do so effective.

(c) You will notify us of any notice of intention to terminate the Lease, and

(1) If the Lessee's default can be cured by the payment of money, you will also notify us promptly of any default involving an amount equal to or exceeding three months maintenance payments and will take no action to terminate the Lease or cancel the shares if the default be cured either by us for the account of the Lessee or by the Lessee within 15 days after such notice of default or intention to terminate; or

(2) If the default cannot be so cured, you will institute no action to terminate the Lease or cancel the shares until we have had reasonable notice and opportunity, by action or otherwise, to induce the Lessee to cure the default, such opportunity to be no less than the time provided in the Lease for the Lessee to cure.

(3) If you shall terminate the Lease and cancel the shares for a default not curable by the payment of money, then, provided we pay you the amounts which are due to you under the Lease (including its deficiency clause) when due, you shall not sell or sublet the apartment without our approval, unless the net proceeds of such sale or subletting shall equal or exceed the amount owing to us by Lessee.

(d) You will accept payment from us on behalf of Lessee of any sums due under the Lease (including its deficiency clause), any payments made by us under the terms of this agreement will be deemed so paid, and no payments made in accordance herewith shall be deemed to limit our rights against the Lessee pursuant to law.

©Copyright 19  GRAUBARD DECT EXES INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP

SEC150
SP0438

(e) You shall recognize our right as lienor against the Apartment pursuant to the Security, and, if the Lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment, after reimbursement to you of all sums due you under the Lease.

3. (a) Before delivery of this letter by you to us, we will have authority from the Lessee to give, and will, on request, give you a copy of the financial and credit information provided by him, but shall be under no duty to advise you of the results of any credit check we may make.

(b) Notwithstanding any apparent authority granted to us under agreements with the Lessee, **WE SHALL HAVE NO RIGHT OR POWER TO TRANSFER THE APARTMENT UPON FORECLOSURE OR OTHERWISE EITHER TO US OR ANYONE ELSE WITHOUT YOUR APPROVAL AS REQUIRED BY THE LEASE** provided, however, that nothing contained herein shall limit any rights we may have to dispossess the Lessee pursuant to law or realize upon our security in accordance herewith.

(c) If through oversight or negligence you or your agents or employees shall fail to notify us of Lessee's default prior to termination of the Lease, we will not seek to hold you or your agents or employees liable for breach of this agreement, provided that:

(1) you advise us promptly after discovering your failure, and

(2) if you have already sold or contracted to sell the Apartment, that you pay us the net proceeds of such sale (after reimbursing yourselves for all sums due you), or such lesser sum as shall equal the amount owing to us by the Lessee (the balance being payable to the Lessee), or

(3) if you have not contracted to sell the Apartment, that the provisions of paragraphs "2.(c)(3)" and "2.(e)" hereof shall apply.

(d) We will indemnify you and your agent against loss, liability or expense incurred in connection with any claim by the Lessee, his successors or assigns against either of you arising out of our representations pursuant hereto or your agreements herein (except as stated in paragraph "3.(a)" hereof), provided you give us prompt notice of any such claim. We may contest such claim in your name and on your behalf, but at our sole cost and expense, and you will execute such documents and do such things as are reasonably necessary to assist us in such contest.

4. While we have the right but no obligation to cure the Lessee's defaults under the Lease, if we do not do so within the time provided for herein, you shall have no obligation to us, except that in the event of sale or subletting the Apartment, you shall recognize our rights as lienor against the net proceeds of any sale or subletting (after reimbursement to you of all sums which are due to you under the Lease).

Any notice or approval provided for herein shall be deemed valid only if in writing and sent by registered or certified mail, as follows: to you, in care of your Managing Agent, with a copy by regular mail addressed to                                        at 7 Westchester Plaza                      ;
to us at   EMIGRANT MORTGAGE COMPANY, INC.        Elmsford New York 10523

Either of us may change the address to which notices or approval shall be mailed by notice given as herein provided. This letter and the representations and agreements contained herein shall be deemed made as of the date of the making of the loan.

EMIGRANT MORTGAGE COMPANY INC.        **BANK**

By: _____

**AGREED TO:**                                          APPROVED: _____

_____
                                    **LESSOR**                                          **LESSEE**

BGRAUBARD DECL. EX. 25                                    **SEC150**
_____                          SP0439
                                                        **LESSEE**

# JFK OIL TERMINAL CORP

REDACTED

December 1, 2005
Rudd Realty Management Corp.
Seward Park Office
413 Grand Street
New York, N.Y. 10002

Dear Management Agent,

This letter is an employer letter of reference regarding Laryssa Shainberg. Laryssa Shainberg is the 100% owner and President of the JFK Oil Terminal, located in Berwick, Pennsylvania. The facility handles in excess of 2.5 million gallons of heating oil, which is stored for wholesale distribution. Mrs. Shainberg has been employed full time over the past three years. Her salary is currently $36,000 and she is paid on a 1099 basis.

Sincerely,

Joshua Shainberg
Executive Vice president
JFK Oil Terminal Corp.
917 ████    personal cellular #

---

1453 Salem Boulevard
Berwick, Pa. 18630

PHONE    (866) 242-5474

---

**GRAUBARD DECL. EX. 25**

 

**Bank of America**

JFK OIL TERMINAL CORP.

REDACTED

Page 3 of 6
Statement Period
09/01/05 through 09/30/05
E00  P PC  0C
Enclosures 9            60                    00321
Account Number ████████

## Deposit Accounts

## Business Economy Checking

### JFK OIL TERMINAL CORP.

### Your Account at a Glance

| | | |
|---|---|---|
| Account Number | ████████ | |
| Statement Period | 09/01/05 through 09/30/05 | |
| Number of Deposits/Credits | 7 | |
| Number of Withdrawals/Debits | 70 | |
| Number of Deposited Items | 3 | |
| Number of Days in Cycle | 30 | |

| | |
|---|---|
| Statement Beginning Balance | $2.05 |
| Amount of Deposits/Credits | $37,865.00 |
| Amount of Withdrawals/Debits | $14,287.15 |
| Statement Ending Balance | $23,579.90 |
| Average Ledger Balance | $15,535.00 |
| Service Charge | $0.00 |

### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 09/06 | 1,000.00 | Return Of Posted Check / Item (Received On 09-02) Check #0000001058 | 955209020005592 |
| 09/07 | 1,500.00 | Credit 009503593427 004170722934   Effective 090605 | 955009060061967 |
| 09/07 | 14,765.00 | Counter Credit | 813004970206489 |
| 09/09 | 500.00 | Counter Credit | 813004870184044 |
| 09/16 | 10,000.00 | Credit 009503593427 004870369034   Effective 091505 | 934109150028559 |
| 09/28 | 9,000.00 | Counter Credit | 813004270010013 |
| 09/30 | 1,100.00 | Counter Credit | 813004970146293 |

### Withdrawals and Debits
### Checks

| Check Number | Amount ($) | Date Posted | Bank Reference | Check Number | Amount ($) | Date Posted | Bank Reference |
|---|---|---|---|---|---|---|---|
| 1055 | 80.00 | 09/26 | 813004970857667 | 1068 | 254.20 | 09/23 | 813005070798723 |
| 1058* | 1,000.00 | 09/02 | 813004870662972 | 1070* | 956.39 | 09/26 | 813004170787940 |
| 1058* | 1,000.00 | 09/20 | 813004470325724 | 1073* | 275.00 | 09/27 | 813004270478425 |
| 1066* | 1,697.54 | 09/26 | 813004970739213 | 1074 | 180.00 | 09/27 | 813004270227539 |
| 1067 | 1,300.00 | 09/19 | 813004370977786 | 1075 | 240.00 | 09/29 | 813004470825795 |

ding check (or checks) is outstanding, is included in the summary listing, or has been included in a previous statement.

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| /19 | 53.00 | Capital One   Des:Online Pmt ID:526239960004091 Indn:2274919824Shainberg LA  Co ID:9279744996 Ccd | 900652620598803 |
| /19 | 34.33 | Verizon By Phone Des:Payment    ID:0024902850 Indn:212███████████  Co ID:1323181805 Ccd | 900652620361023 |
| /19 | 1.50 | Phonecharge   Des:Fee        ID:0020904115 Indn:212██████████    Co ID:1113214844 Ccd | 900652620379334 |

GRAUBARD DECL. EX. 25

# Morgan Stanley

**GRAUBARD DECL. EX. 25**

## ACTIVE ASSETS ACCOUNT®
### FOR MONTH ENDING OCTOBER 31, 2005

*Handwritten:* Trustee 49  213,700 Ac out  800-861  37346  FADU OUT  480

**Account Number**
REDACTED

AAA Customer Service
1-800-869-3326
Householding Anniv. Date:
09/12/2005

Access Your Account at:
www.morganstanley.com/online

Your Financial Advisor
BISHOP/COLE/DARCAN/FLAYDE
MORGAN STANLEY
MACK CENTER IV, S 61 PARAMUS RD.
PARAMUS, NJ     07652
(201) 712-4000

JOSHUA SHAINBERG
385 GRAND ST
NEW YORK NY 10002-3968

## Asset Summary

| | Value | % of Assets |
|---|---|---|
| Money Market Funds | $0.00 | 0.0% |
| Stocks | 1,806,679.00 | 100.0 |
| Municipal Bonds | 0.00 | 0.0 |
| Corporate Fixed Income | 0.00 | 0.0 |
| Government Securities | 0.00 | 0.0 |
| Mutual Funds | 0.00 | 0.0 |
| Unit Investment Trusts | 0.00 | 0.0 |
| Certificates of Deposit | 0.00 | 0.0 |
| Annuities/Insurance | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| **Asset Value** | **$1,806,679.00** | **100.0%** |
| Cash | 0.00 | |
| **Total Asset Value** | **$1,806,679.00** | |

## Income Summary

| | This Month | Year-To-Date |
|---|---|---|
| Money Market Funds | $0.00 | $0.00 |
| Stocks | 0.00 | 0.00 |
| Municipal Bonds | 0.00 | 0.00 |
| Corporate Fixed Income | 0.00 | 0.00 |
| Government Securities | 0.00 | 0.00 |
| Mutual Funds | 0.00 | 0.00 |
| Unit Investment Trusts | 0.00 | 0.00 |
| Certificates of Deposit | 0.00 | 0.00 |
| Other | 0.00 | 0.00 |
| **Total Income** | **$0.00** | **$0.00** |
| Taxable Income | $0.00 | $0.00 |
| Tax Exempt Income | $0.00 | $0.00 |

## Activity Summary

**REDACTED**

| | | |
|---|---|---|
| Total Asset Value September 30 2005 | | $1,479,495.00 |
| Cash/Money Market Activity for October | | 0.00 |
| Closing Balance 9/30 | $0.00 | |

| | | |
|---|---|---|
| **Credits To Your Account** | | |
| Dividend and Interest | 0.00 | |
| Deposits | 0.00 | |
| Sales Proceeds/Redemptions | 0.00 | |
| Other Credits | 0.00 | |
| Total Credits | | 0.00 |
| **Debits To Your Account** | | |
| Checking | 0.00 | |
| Debit Card | 0.00 | |
| Withdrawals | 0.00 | |
| Funds to Purchase Securities | 0.00 | |
| Other Debits | 0.00 | |
| Total Debits | | 0.00 |
| Closing Balance 10/31 | | 0.00 |

Net Change Cash/Money Market Activity     0.00

| **Changes in Asset Value for October** | |
|---|---|
| Value of Priced Assets 9/30 | $1,479,495.00 |
| Securities Bought | 0.00 |
| Securities Received | 36,040.00 |
| Securities Sold/Redeemed | 0.00 |
| Securities Delivered | 0.00 |
| Transactions at Fund Company | 0.00 |
| Change in Value of Priced Assets | 291,144.00 |
| Value of Priced Assets 10/31 | 1,806,679.00 |

Net Change In Asset Value     327,184.00

**Total Asset Value as of October 31 2005**     $1,806,679.00

**a** Control number

OMB No. 1545-0008

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

**b** Employer identification number

60-

**c** Employer's name, address, and ZIP code

EUROSPEED, INC.
181 Westchester Avenue, Suite 303-C
Port Chester, NY 10573

**d** Employee's social security number

**e** Employee's first name and initial    Last name

JOSHUA    SHAINBERG

**f** Employee's address and ZIP code

385 Grand Street
New York, NY 10002

| Box | Description | Amount |
|---|---|---|
| 1 | Wages, tips, other compensation | 19,230.80 |
| 2 | Federal income tax withheld | 2,598.05 |
| 3 | Social security wages | 19,230.80 |
| 4 | Social security tax withheld | 1,192.31 |
| 5 | Medicare wages and tips | 19,230.80 |
| 6 | Medicare tax withheld | 278.84 |
| 7 | Social security tips | 19,230.80 |
| 8 | Allocated tips | |
| 9 | Advance EIC payment | |
| 10 | Dependent care benefits | |
| 11 | Nonqualified plans | |
| 12a | See instructions for box 12 | |
| 13 | Statutory employee / Retirement plan / Third-party sick pay | |
| 14 | Other | |
| 12b | | |
| 12c | | |
| 12d | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| NY | 60- | 19,230.80 | 1,089.80 | 19,230.80 | 2,208.36 | NYC. |

Form **W-2** Wage and Tax Statement

2004

Department of the Treasury—Internal Revenue Service

Copy C—For EMPLOYEE'S RECORDS. (See Notice to Employee on back of Copy B.)

Safe, accurate, FAST! Use

IRS e~file

REDACTED

GRAUBARD DECL. EX. 25

SEC150
SP0443

□ CORRECTED (if checked)

RECIPIENT'S/LENDER'S name, address, and telephone number

SEWARD PARK HOUSING CORPORATION
C/O COOPER SQUARE REALTY INC
6 EAST 43RD STREET
NEW YORK, NY 10017

| OMB No. 1545-0901 | | |
| --- | --- | --- |
| 2004 | | Mortgage Interest Statement |
| Form 1098 | | |

* Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

RECIPIENT'S Federal Identification number
13-5663711

PAYER'S/BORROWER'S name, address, and ZIP code

JOSHUA SHAINBERG
LARYSSA SHAINBERG
385 GRAND STREET - APT L0806
NEW YORK, NY 100025654

Account number (optional)
ACCT. NO.: 143-206 APT. NO.:L0806

1 Mortgage interest received from payer(s)/borrower(s)*

$  1,675.46

2 Points paid on purchase of principal residence (See Box 2 on back.)

$

3 Refund of overpaid interest (See Box 3 on back.)

$

4
NUMBER OF ROOMS: 6
INT.PER ROOM PER YR.: 0

Copy B
For Payer

The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points deduction you did not report this refund of interest on your return.

(keep for your records)                Department of the Treasury - Internal Revenue Service

Form 1098

REDACTED

GRAUBARD DECL. EX. 25

SEC150
SP0444

REDACTED

# Morgan Stanley

## ACTIVE ASSETS ACCOUNT®
### FOR MONTH ENDING OCTOBER 31, 2005

PAGE 1 OF 6

PLAINTIFF'S
EXHIBIT
16
2-25-09

**Your Financial Advisor**
BISHOP/COLE/DARCAN/FLAYDE
MORGAN STANLEY
MACK CENTER IV, S 61 PARAMUS RD.
PARAMUS, NJ      07652
(201) 712-4000

JOSHUA SHAINBERG
385 GRAND ST
NEW YORK NY 10002-3968

Account Number

AAA Customer Service
1-800-869-3326
Householding Anniv. Date:
09/12/2005

Access Your Account at:
www.morganstanley.com/online

GRAUBARD DECL. EX. 26

SEC151

## Asset Summary

| | Value | % of Assets |
|---|---|---|
| Money Market Funds | $0.00 | 0.0% |
| Stocks | 1,806,679.00 | 100.0 |
| Municipal Bonds | 0.00 | 0.0 |
| Corporate Fixed Income | 0.00 | 0.0 |
| Government Securities | 0.00 | 0.0 |
| Mutual Funds | 0.00 | 0.0 |
| Unit Investment Trusts | 0.00 | 0.0 |
| Certificates of Deposit | 0.00 | 0.0 |
| Annuities/Insurance | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| **Asset Value** | **$1,806,679.00** | **100.0%** |
| Cash | 0.00 | |
| **Total Asset Value** | **$1,806,679.00** | |

## Income Summary

| | This Month | Year-To-Date |
|---|---|---|
| Money Market Funds | $0.00 | $0.00 |
| Stocks | 0.00 | 0.00 |
| Municipal Bonds | 0.00 | 0.00 |
| Corporate Fixed Income | 0.00 | 0.00 |
| Government Securities | 0.00 | 0.00 |
| Mutual Funds | 0.00 | 0.00 |
| Unit Investment Trusts | 0.00 | 0.00 |
| Certificates of Deposit | 0.00 | 0.00 |
| Other | 0.00 | 0.00 |
| **Total Income** | **$0.00** | **$0.00** |
| Taxable Income | $0.00 | $0.00 |
| Tax Exempt Income | $0.00 | $0.00 |

## Activity Summary

| | |
|---|---|
| Total Asset Value September 30 2005 | $1,479,495.00 |
| **Cash/Money Market Activity for October** | |
| Closing Balance 9/30 | $0.00 |
| **Credits To Your Account** | |
| Dividend and Interest | 0.00 |
| Deposits | 0.00 |
| Sales Proceeds/Redemptions | 0.00 |
| Other Credits | 0.00 |
| Total Credits | 0.00 |
| **Debits To Your Account** | |
| Checking | 0.00 |
| Debit Card | 0.00 |
| Withdrawals | 0.00 |
| Funds to Purchase Securities | 0.00 |
| Other Debits | 0.00 |
| Total Debits | 0.00 |
| Closing Balance 10/31 | 0.00 |
| **Net Change Cash/Money Market Activity** | 0.00 |
| **Changes in Asset Value for October** | |
| Value of Priced Assets 9/30 | $1,479,495.00 |
| Securities Bought | 0.00 |
| Securities Received | 36,040.00 |
| Securities Sold/Redeemed | 0.00 |
| Securities Delivered | 0.00 |
| Transactions at Fund Company | 0.00 |
| Change in Value of Priced Assets | 291,144.00 |
| Value of Priced Assets 10/31 | 1,806,679.00 |
| **Net Change in Asset Value** | 327,184.00 |
| **Total Asset Value as of October 31 2005** | **$1,806,679.00** |

Investments and services are offered through Morgan Stanley DW Inc., member SIPC.

480

SP0398

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005112100419001001E8ED8

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| **Document ID: 2005112100419001** | Document Date: 11-21-2005 | Preparation Date: 11-21-2005 |
| Document Type: INITIAL COOP UCC1 | | COOPERATIVE |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| SHARP RESEARCH CORPORATION | SHARP RESEARCH CORPORATION |
| 31-19 37TH AVENUE | 31-19 37TH AVENUE |
| LONG ISLAND CITY, NY  11101 | LONG ISLAND CITY, NY  11101 |
| 718-786-5566 | 718-786-5566 |
| 05F1528-NYC | 05F1528-NYC |

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 311 | 13 | Entire Lot | 806 | 385 GRAND STREET |

**Property Type:** SINGLE RESIDENTIAL COOP UNIT

## CROSS REFERENCE DATA

CRFN_____  *or*  Document ID_____  *or* _____ Year_____ Reel_____ Page_____ *or* File Number_____

## PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| LARYSSA SHAINBERG | EMIGRANT MORTGAGE COMPANY INC |
| 385 GRAND STREET | 7 WESTCHESTER PLAZA |
| NEW YORK, NY  10002 | ELMSFORD, NY  10523 |

## FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 40.00 |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing  Fee: | |
| | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed        11-25-2005 12:53

City Register File No.(CRFN):

**2005000653902**

*City Register Official Signature*

SEC152

████████████████
████████████████
████████████████
████████████████

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

**SHARP RESEARCH CORP**
**31-19 37TH AVENUE**
**LONG ISLAND CITY, NEW YORK 11101**

ATTN: JUDITH    REF#: *05F1528*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only *one* debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| SHAINBERG | LARYSSA | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 385 Grand Street | NewYork | NY | 10002 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only *one* debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only *one* secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EMIGRANT MORTGAGE COMPANY, INC. | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7 WESTCHESTER PLAZA | ELMSFORD | NY | 10523 | USA |

4. This FINANCING STATEMENT covers the following collateral:

**Cooperative proprietary lease and 39 shares of stock issued by Seward Park Housing Corporation allocated to unit 806 in the building known as 385 Grand Street, New York, New York 10002.**

**Loan #1173694**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**GRAUBARD DECL. EX. 27**                                        **SEC153**

████████████████
████████████████
████████████████
████████████████

## UCC FINANCING STATEMENT COOPERATIVE ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a or 19b. | 19a. ☑ This COOPERATVIE ADDENDUM accompanies a FINANCING STATEMENT. | 19b. File Number assigned to the initial FINANCING STATEMENT: |
|---|---|---|

### 20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both.)

20a. ORGANIZATION'S NAME:

OR

| 20b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|
| SHAINBERG | LARYSSA | | |

### 21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)

21a. ORGANIZATION'S NAME:

OR

**EMIGRANT MORTGAGE COMPANY, INC.**

| 21b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |
|---|---|---|---|

22. This COOPERATIVE ADDENDUM covers: (Check one.)

☑ One COOPERATIVE INTEREST   ☐ More than one COOPERATIVE INTEREST

23.   Unit uses: (Check all that apply.)

☑ Residential   ☐ Commercial   ☐ Parking

☐ Storage   ☐ Other (If checked, complete 23a).

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDUM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT.

### 24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:

24a. ADDRESS NUMBER and STREET: (One only)

**385 Grand Street**

24b. COMMUNITY (e.g., City, Town, Village or Borough):

**NewYork**

24c COUNTY:

**NewYork**

24d. DISTRICT:

24e. SECTION:

24f. BLOCK: *311*

24g. LOT: *13*

24h. UNIT NUMBER(S) or DESIGNATION(S):

**#806**

25. Name of the COOPERATIVE ORGANIZATION:

**Seward Park Housing Corporation**

26. Complete if applicable. (If checked, complete 26a.)

☐ The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST.

26a. FILE NUMBER of security interest being given consensual priority:

27. Check if Applicable.

☐ The security agreement provides for FUTURE ADVANCES.

28. MISCELLANEOUS:

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1CAd) (REV. 6/14/01)

**GRAUBARD DECL. EX. 27**                                    **SEC154**

**Sullivan County**
**George L Cooke**
**County Clerk**
**Monticello, NY 12701**



60 2006 00001921

Instrument Number:  2006- 00001921
As
Deed

Recorded On: February 08, 2006

Parties:  SOLOMON NEUGARTEN LIVING TRUST
    To
    SHAINBERG LARYSSA                                    Billable Pages:        3

Recorded By:  SIGNATURE TITLE AGENCY & LAND SERVICES    Num Of Pages:          4
Comment:

## ** Examined and Charged as Follows: **

| | | | | | | |
|---|---|---|---|---|---|---|
| Deed | 37.00 | RP 5217 Residential | | 75.00 | TP 584 | 5.00 |
| **Recording Charge:** | 117.00 | | | | | |

| | Amount | Consideration Amount | RS#/CS# | | | |
|---|---|---|---|---|---|---|
| Tax-Transfer | 700.00 | 175,000.00 | 2859 | Basic | 0.00 | |
| | | | | | | Special Additional | 0.00 |
| | | | | Additional | 0.00 Transfer | 700.00 |
| **Tax Charge:** | 700.00 | | | | | |



## ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Sullivan County, NY

**File Information:**                        **Record and Return To:**
Document Number:  2006- 00001921           SIGNATURE TITLE AGENCY & LAND SERVICES
Receipt Number:  32174                     1300 FLATBUSH AVE
Recorded Date/Time:  February 08, 2006 11:19:25A   BROOKLYN NY 11210
Book-Vol/Pg:  Bk-REL VI-3109 Pg-619
Cashier / Station:  K F  /  Cash Station 04

*George L Cooke*

**GEORGE L. COOKE**
**SULLIVAN COUNTY CLERK**

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

REDACTED

THIS INDENTURE, made the    23rd    day of    December  ,    2005

BETWEEN

The Solomon Neugarten Living Trust - Solomon Neugarten and Joan Neugarten, Trustees
having an address at ▉▉▉▉▉▉▉▉, Brooklyn, New York 11236

party of the first part, and

Laryssa Shainberg having an address at 385 Grand Street, New York, New York 10002

party of the second part,
WITNESSETH, that the party of the first part, in consideration of
One Hundred Seventy Five Thousand dollars
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs
or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the

Village of Loch Sheldrake, Town of Fallsburg, County of Sullivan, State of New York

Said premises known as #57 Vacation Village Townhouse Road, Loch Sheldrake, New York 12759

As Described as per Attached Schedule A

Section: 17A; Block 1; Lot 203.1

This premises being the same as granted to Grantors from Bennet Levine and Linda Levine, his wife and recorded
10/16/1998 In Liber 2054 Page 442, in the Office of the County Clerk, Sullivan County

*Sec: 17A*
*Block: 1*
*Lot: 203.1*

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all
the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the
premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything
whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, In compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the Improvement before using any part of the total of the same for any other
purpose. The word "party" shall be construed as if it read "parties" when ever the sense of this indenture so
requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

_Solomon Neugarten_
Solomon Neugarten, Trustee

_Joan Neugarten_
Joan Neugarten, Trustee

Standard N.Y.B.T.U. Form 8002 - Bargain and Sale Deed, with Covenant against Grantor's Acts – Uniform Acknowledgment
Form 3290

**GRAUBARD DECL. EX. 28**                                                **SEC156**

ACKNOWLEDGMENT IN NEW YORK STATE (RPL 309-a)

State of New York, County of                    ss.:

On December 22, 2005 before me, the undersigned, personally appeared Solomon Neugarten and Joan Neugarten   TRUSTEES
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Joshua Turner*
(signature and office of individual taking acknowledgment)

JOSHUA TURNER
Notary Public, State of New York
No. 01TU4983838
Qualified in Queens County
Commission Expires July 8, 2007

personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in

(insert city or political subdivision and state or county or other place acknowledgment taken)

(signature and office of individual taking acknowledgment)

ACKNOWLEDGMENT BY SUBSCRIBING WITNESS(ES)

State of
County of                    ss.:

On                    before me, the undersigned,
personally appeared

the subscribing witness(es) to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in (if the place of residence is in a city, include the street and street number, if any, thereof);

that he/she/they know(s)

to be the individual(s) described in and who executed the foregoing instrument; that said subscribing witness(es) was (were) present and saw said

execute the same; and that said witness(es) at the same time subscribed his/her/their name(s) as a witness(es) thereto.
( ☐ if taken outside New York State insert city or political subdivision and state or country or other place acknowledgment taken And that said subscribing witness(es) made such appearance before the undersigned in

                    )

(signature and office of individual taking acknowledgment)

---

**Bargain and Sale Deed**
WITH COVENANT AGAINST GRANTOR'S ACTS
TITLE No. CH0305-00496

THE SOLOMON NEUGARTEN LIVING TRUST
SOLOMON NEUGARTEN and JOAN NEUGARTEN, TRUSTEES

TO

LARYSSA SHAINBERG

SECTION 17A
BLOCK 1
LOT 203.1
COUNTY OR TOWN   Sullivan

RETURN BY MAIL TO:

Benjamin Turner, Esq.
2800 Kings Highway
Brooklyn, New York 11229

Zip No.

*Reserve this space for use of Recording Office.*

GRAUBARD DECL. EX. 28                    SEC157

## Chicago Title Insurance Company

CH0305-00496

### SCHEDULE A

### PROPERTY DESCRIPTION

All that certain plot, piece or parcel of land, situate, lying and being in the Town of Fallsburg, County of Sullivan, State of New York, being more particularly described as Townhouse Block 9, Lot 57, as shown on a certain map dated January 23, 1985, by Silvers Engineering Associates, known as Vacation Village, Phase II Subdivision Plat (revised) filed in the Office of the Clerk of the County of Sullivan on July 15, 1986 as Map # 4-156 and refiled in said office on May 25, 1989 in Dr. 25 as Map #1036A.

INSURE

28-
75-
③ 9-
700-
5.-

GRAUBARD DECL. EX. 28                                    SEC158

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

          - v -

MICHAEL LIPKIN and JOSHUA SHAINBERG,

                Defendants.
------------------------------------------------------------x

**DECISION AND ORDER** (Corrected)

CV-99-7357 (VVP)

      Following a jury verdict in favor of the plaintiff and against the defendants Michael Lipkin and Joshua Shainberg, the parties submitted briefing concerning the appropriate relief to be awarded against the defendants. The plaintiff requested four categories of relief: (1) permanent injunctions against both defendants; (2) disgorgement by the defendants of the proceeds of their fraudulent schemes; (3) prejudgment interest; and (4) civil penalties. The defendant Shainberg has submitted opposition to the plaintiff's requests for relief; the defendant Lipkin has not. Upon consideration of the submissions of the parties the court awards the relief set forth below.

*Permanent Injunctions*

      By its verdict the jury found that both defendants engaged in a fraudulent scheme to obtain undisclosed kickbacks in connection with the sale of the stock of Alter Sales Co., Inc., a publicly traded company, and that the defendant Lipkin engaged in a further scheme to make false representations to investors in connection with the sale of that stock. Participation in these schemes constituted violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under section 10(b).

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and section 21(d) of the

Exchange Act, 15 U.S.C. § 78u(d), authorize the Commission to seek, and the court to grant,

permanent injunctions "upon a proper showing." *Id.* In addition to proof that the defendants

committed a violation of the securities laws in question, a matter established by the jury's verdict,

a "proper showing" requires proof that a reasonable likelihood exists that violations will occur in

the future. *S.E.C. v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 99-100 (2nd Cir. 1978)

(Friendly, J.).[1] Among the factors to be considered when assessing the likelihood of future

violations are

> the fact that the defendant has been found liable for illegal conduct; the degree of
> scienter involved; whether the infraction is an "isolated occurrence;" whether
> defendant continues to maintain that his past conduct was blameless; and
> whether, because of his professional occupation, the defendant might be in a
> position where future violations could be anticipated.

*S.E.C. v. Cavanagh*, 155 F.3d 129, 135 (2nd Cir. 1998) (citing *Commonwealth Chemical Securities,*

*Inc.*, 574 F.2d at 100). Finally, in assessing the strength of the showing concerning likelihood of

future violations, the court should consider the specific nature of the injunctive relief sought.

Thus, the more onerous the burdens imposed by the injunction are, the more persuasive the

showing regarding the risk of recurrence should be. *See S.E.C. v. Unifund SAL*, 910 F.2d 1028,

1039 (2nd Cir. 1990).

---

[1]When a preliminary, rather than permanent, injunction is at issue, the Second Circuit has
applied a perhaps more stringent standard. Addressing a request for a preliminary injunction in *S.E.C. v.*
*American Bd. of Trade, Inc.*, 751 F.2d 529, 533-34 (2nd Cir. 1984), Judge Friendly articulated the standard
as a "strong" rather than "reasonable" likelihood that a violation will occur again in the future. There is
logic for applying a somewhat more relaxed "reasonableness" standard when permanent relief is sought,
because by then the court has the benefit of a determination by a jury or other fact-finder that the
defendant has indeed committed a violation of the securities laws.

Given these considerations, the court has no difficulty concluding that properly limited injunctions are appropriate in this matter. The defendants' violations of the securities laws were systematic and calculated. They involved a high degree of "scienter" as proved by the substantial efforts the defendants took to hide the proceeds they received from the scheme through offshore bank accounts. The occurrences were not isolated, but rather took place continuously over a two-month period. Moreover, the defendants have yet to acknowledge their culpability despite the overwhelming evidence of their involvement in unlawful activity. Indeed, as discussed more fully below, the defendants have continued in their efforts to deceive in their submissions to the court regarding the remedies here at issue. As an officer of a publicly traded company, Shainberg remains in a position to violate securities laws. Although there is no evidence that Lipkin is now active in the securities industry, in contrast to Shainberg he personally made false representations to customers of his brokerage firm in an effort to sell Alter Sales, Inc. Stock, and directed others to do so as well. Finally, the injunctions that will be imposed are not onerous. They simply require that the defendants not break the law, an obligation that they are supposed to observe in any event. Indeed, the defendants themselves do not oppose the request for injunctive relief. Accordingly, the court will issue an order prohibiting the defendants from committing further violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

*Disgorgement*

Disgorgement of unlawfully obtained profits is an appropriate equitable remedy for violations of the securities laws. *See S.E.C. v. Patel*, 61 F.3d 137, 139 (2nd Cir. 1995). Disgorgement serves the purpose of depriving the wrongdoers of the gains of their wrongful conduct. *S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir.), *cert. denied*, 404 U.S.

1005, 92 S.Ct. 562, 30 L.Ed.2d 558 (1971). "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474-75 (2nd Cir. 1996) (citing *S.E.C. v. Lorin*, 76 F.3d 76 F.3d 458, 462 (2nd Cir. 1996) (per curiam)). "The amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation.'" *Id.* (quoting *Patel*, 61 F.3d at 139).

The evidence at trial established, with great specificity, the proceeds received by Shainberg and Lipkin from the fraudulent schemes. Documentary and testimonial evidence tracked the fraudulently induced sales of Alter Sales, Inc. shares which constituted the kickbacks for their participation in fraudulently promoting that stock. The total received from the sales of the "kickback" stock, as clearly established by various account records, was $277,382.45. Documentary and testimonial evidence further tracked the transmittal of the proceeds to accounts controlled by Shainberg and Lipkin. Most of the proceeds were eventually funnelled to an offshore bank account controlled by Shainberg, from which disbursements were made to individuals and entities for the benefit of both Shainberg and Lipkin. The plaintiff more than met its burden of establishing the amount of the defendants' ill-gotten gains.

Only Shainberg offers argument and evidence in opposition, the thrust of which is an effort to minimize his role in the fraudulent kickback schemes. Thus, he attempts to prove, by offering the affidavit of an individual named Aidan Doyle, that it was not Shainberg, but Doyle, who opened one of the brokerage accounts used in the scheme. He offers the unsworn statement of his codefendant Lipkin to the effect that, in direct contrast to his own and Lipkin's trial testimony, he was not a 50% co-owner of Hubert Rosche Ltd., the brokerage firm he and Lipkin established and used in part to conduct their fraudulent activities. Finally, he argues that in

contrast to Lipkin the jury made no finding that he made false and misleading statements to investors, and that he should therefore be treated more leniently than Lipkin as to the relief ordered.

Shainberg's attempts to minimize his role would be laughable were it not for the brazen and cavalier nonchalance about the truth that they display. Indeed, as Shainberg and Lipkin no doubt realized, had Lipkin actually sworn to the affidavit that Shainberg submitted, they could both be prosecuted for perjury and subornation of perjury based simply on the irreconcilability of the statements made by Lipkin under oath at trial and the statements in the affidavit. *See* 18 U.S.C. 1623(b) ("In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury.") As for Doyle's affidavit, it is entitled to no weight. Shainberg could have called Doyle to testify at trial, where he would have been subject to cross-examination, but did not. It is not hard to see why. Doyle was, and apparently still is, a friend and business associate of Shainberg's who himself participated in sales, probably fraudulent, of Alter Sales, Inc. stock while working for the same firm, Securities Planners, with which Shainberg's firm was affiliated. Moreover, even if Doyle, as opposed to Shainberg, did open the account he claims to have opened, that does not overcome the overwhelming evidence that the proceeds of the fraudulent sales made through that account were ultimately transferred to an offshore bank account over which Shainberg exercised virtually exclusive control. Finally, it is immaterial whether Shainberg himself made false and misleading statements to investors, he only had to have participated in the scheme knowing such statements were being made. The jury's verdict unequivocally found that he did.

Shainberg's efforts to minimize his role, and particularly his willingness to obtain and use false assertions by others, convince the court that stiffer, rather than more lenient, remedies are appropriate.[2] Thus, the court finds that he and Lipkin should be ordered jointly and severally to disgorge the full amount of the kickbacks they obtained.

### Prejudgment Interest

Prejudgment interest may be awarded at the court's discretion. *First Jersey Securities, Inc.*, 101 F.3d at 1476 (citing *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2nd Cir. 1995). The purpose of awarding this remedy, which is particularly appropriate in enforcement actions such as this one, is to strip the wrongdoer of all benefits of his wrongdoing. *See, id.* The factors to be considered include "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (quoting *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir.), *cert. denied*, 506 U.S. 946 (1992)). The interest rate to be charged is the IRS underpayment rate since that is the cost of borrowing money from the government and therefore best approximates the benefit received from the use of the ill-gotten money. *See id.* The interest should be calculated from the date the ill-gotten gains were received. *Id.*

Considering the above factors, an award of prejudgment interest is appropriate here to accomplish the remedial purpose of the statutes, particularly since the defendants not only refuse to acknowledge their wrongdoing, but continue to engage in efforts to deceive the court. The court has examined the methodology used by the defendants in calculating prejudgment interest,

---

[2]For this reason, the plaintiff's request to strike Shainberg's supplemental response, including the affidavit of Doyle and the unsworn statement of Lipkin, is denied.

which calculates interest on each installment of kickback proceeds from the date the installment

was received. The court also approves the compounding of interest quarterly, which is actually

generous to the defendants when compared to the IRS's approach which compounds daily. *See*

26 U.S.C. § 6622. Thus the total amount of prejudgment interest through September 30, 2005 is

$300,277.36, plus additional interest calculated in the same manner from that date until the

submission of the final judgment as ordered below.

  <u>Civil Penalties</u>

  Both the Securities Act and the Securities Exchange Act authorize the imposition of civil

penalties for the conduct in which the defendants engaged. *See* 15 U.S.C. §§ 77t(d) and

78u(d)(3). The penalty provisions of both statutes are identical, and involve a three-tier system,

the most serious of which is the third tier. The imposition of third tier penalties, which the

plaintiff seeks, requires proof that "the violation . . . involved fraud, deceit, manipulation, or

deliberate or reckless disregard of a regulatory requirement," and that "such violation directly or

indirectly resulted in substantial losses or created a significant risk of substantial losses to other

persons." 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii). Third tier penalties may be imposed

in an amount up to $100,000 for each violation or the gross amount of pecuniary gain obtained

by a defendant as a result of the violation. *See id.*

  The evidence at trial established both prerequisites for third tier penalties. The violation

involved receipt of kickbacks which the defendants fraudulently failed to disclose to buyers, as

well as other false and misleading statements made to buyers of Alter Sales, Inc. stock. After the

defendants' promotional efforts on behalf of the stock ended, the stock declined precipitously and

at least 45 customers lost virtually their entire investments when the stock became practically

worthless.

There were potentially at least 45 violations of the securities laws by these defendants because at least 45 customers purchased Alter Sales, Inc. shares during the life of the kickback arrangements. Penalties of $4.5 million (45 x $100,000) for each defendant would be excessive, however. Rather, for purposes of the imposition of penalties the court views each of the two kickback schemes as a separate violation. Because of the seriousness of the violations, however, it is appropriate to impose the maximum penalty of $100,000 on each defendant for each of the two schemes. Thus, each defendant will be ordered to pay $200,000 in civil penalties.

## CONCLUSION

For the foregoing reasons, the court finds that the following remedies are appropriate as against the defendants Michael Lipkin and Joshua Shainberg:

(1) a permanent injunction barring them from further violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under section 10(b);

(2) disgorgement of the proceeds of their unlawful conduct in the amount of $277,382.45 for which they are jointly and severally liable;

(3) prejudgment interest in the amount of $300,277.36 through September 30, 2005, plus additional interest calculated in the same manner from that date until the date of judgment; and

(4) civil penalties in the amount of $200,000 each.

The plaintiff shall submit a formal judgment in accordance with the foregoing promptly.

SO ORDERED:

_Viktor V. Pohorelsky_
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:     Brooklyn, New York
           January 9, 2006

# ASSETS AND LIABILITIES STATEMENT

Applicant's Name ___LARYSSA   SHAINBERG___

Statement of Financial Condition as of the _____ _1ST_ day of _DECEMBER_ ~~200~~
200

Please Note: Supporting documentation for all assets and liabilities is to be attached to this statement. Please use the word *
where no amount is to be entered.

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash in bank (attach bank statements) | $ 2000 | Notes Payable (attach schedule B) | $ — |
| Downpayment on contract (if paid) | | Mortgages payable (attach schedule A) | — |
| Securities (Stocks & Bonds-attach statements) | 57,000 | Unpaid Real Estate Taxes | — |
| Cash value of life insurance, less any loans | | Unpaid Income Taxes   APPX. | 350c |
| Investment in own business  OIL TERMINAL | 2,500,000 | Accounts Payable (attach schedule C) | |
| Real Estate Owned (attach schedule A) | 800,000 | Outstanding Credit Card Balances (attach schedule C) | 9894 |
| Vested Interest in Retirement Fund | | Other Liabilities (itemize) | |
| Automobile (make and year) | | CAR LEASE 469 per mo. | |
| Loans and Notes Receivable | | For $17,374 over 5 year term. | |
| Personal Property and Furniture | | | |
| Other Assets (itemize) | | | |
| ART | 75,000 | | |
| STAMPS | 1,500,000 | | |
| | | | |
| TOTAL ASSETS | $ 4,934,000 | TOTAL LIABILITIES | $ 13,394 |
| Contingent Liabilities (personal guarantees or potential liabilities-attach schedule D) | $ | NET WORTH (excess of assets over liabilities) | $ #4,920,606 |

The foregoing statements and details pertaining thereto, both printed and written, have been carefully read and the undersigned hereby solemnly declares and certifies that same is a full and correct exhibit of my/our financial condition.

Date _12/1/05_

X _____
Signature of Applicant

_____
Signature of Applicant

**GRAUBARD DECL. EX. 30**

## SCHEDULE A - REAL ESTATE OWNED

| Location and Type of Property | Title In the Name of | Date Acquired | Cost | Recent Appraised Value | Mortgage Balance | Maturity Date | Mont Paym |
|---|---|---|---|---|---|---|---|
| 385 Grand St. #L806 | Laryssa Shalnberg | 4/3/03 | TSFR | 800,000 | 0 | — | — |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SCHEDULE B - NOTES PAYABLE

| Amount | Due to | In Name of | Maturity Date | Collateral | Month Payme |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## SCHEDULE C - ACCOUNTS PAYABLE (include credit card balances here)

| Amount | Due to | In Name of | Maturity Date | Month Payme |
|---|---|---|---|---|
| 6010 | CHASE | Laryssa Shalnberg | Rev | 200 |
| 1929 | CHASE | " " | Rev | 100 |
| 1304 | CAPITAL 1 BANK | " " | Rev | 100 |
| 561 | Washington Mutual | " " | Rev | 50 |
| 90 | Bank of America | " " | Rev | 10 |
| | | | | |
| | | | | |
| | | | | |

## SCHEDULE D - CONTINGENT LIABILITIES

| Amount | Type | Due to | Obligor | Final Maturity/ or repayment | Collateral * |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

*Including Letter of Credit and Surety Bonds

**GRAUBARD DECL. EX. 30**

# 2005 YEARLY INCOME AND EXPENSE STATEMENT

**Instructions:** If the income tax statement you submit with this application is for the _prior calendar year_, then complete th for the current calendar year only. _If you have not submitted_ a filed income tax statement for the prior calendar year, complete two forms; one for the preceding year and one for the current calendar year.

Applicant's Name   **LARYSSA SHAINBERG**

| INCOME | | EXPENSES | |
|---|---|---|---|
| Salary (or earned income) | $ | Mortgage Payments (principal & interest) | |
| Bonus and Commissions | | Real Estate Taxes | — |
| Real Estate Income (Net) | | Rent/Co-op/Condo Maintenance | 9000 |
| Share of partnership income (loss) | | Loan or Note Payments | — |
| Business Income (Net) Sole Proprietorship | 36,000 | Auto Loan/Lease Payments | 2352 |
| Dividends | | Insurance Premiums Life, Health, CAR, Home | 14,984 |
| Interest | | Tuition Expenses | 21,500 |
| Pension (IRA, Koegh) | | Charitable Contributions | 3600 |
| Social Security | | Medical (unreimbursed) | 7000 |
| Investments (describe) | | Alimony, Child Support, maint. | |
| · See below | | Living Expenses (food, clothing, utilities, etc) | 24,000 |
| Other Income (itemize) Stock sales net 110,904. | | Credit Card payments | 3,000 |
| ART Sales net 9,000. | | Investment Expenses | 500 |
| Mutual Fund sales net 94,663. | | Pension (IRA, Keogh) | — |
| | | Other Expenses (itemize) Business | 12,000 |
| | | Social Security | |
| | | Medicare | — |
| | | Income Taxes APPX. | 7500 |
| TOTAL INCOME | $ 250,567 | TOTAL EXPENSES | $ 105,336 |

List any unsatisfied judgments or legal actions pending against you and the amounts involved   N/A

Have you ever gone through bankruptcy or other insolvency proceedings?   No

Date   12/01/05                 X _(signature)_
                                Signature of Applicant

**GRAUBARD DECL. EX. 30**                              **SEC169**
                                                        SP0435