UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**FILED BY ECF**

No. 07 Civ. 8814

SECURITIES AND EXCHANGE COMMISSION, :

                                    Plaintiff,         :
                                                       :
                  - against -                          :
                                                       :
JOSHUA S. SHAINBERG and                                :
LARYSSA SHAINBERG,                                     :
                                                       :
                              Defendants.              :
_____               :


**MEMORANDUM OF LAW
BY SECURITIES AND EXCHANGE COMMISSION
IN SUPPORT OF MOTION FOR
ATTACHMENT PURSUANT TO FED. R. CIV. P. 64
AND NEW YORK CPLR §§ 6201 *ET SEQ.***

                              MARK K. SCHONFELD (MS-2798)
                              Regional Director
                              Attorney for Plaintiff
On the Brief:                 SECURITIES AND EXCHANGE COMMISSION
Jack Kaufman                  New York Regional Office
Lee S. Bickley                3 World Financial Center, Room 400
Bohdan Ozaruk                 New York, New York 10281-1022
John J. Graubard              Tel.:    212-336-0084 (Graubard)
                              Fax:     212-336-1319
                              E-mail:  graubardj@sec.gov

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

    A.    Joshua S. Shainberg Violates the Federal Securities Laws, and the Commission
        Investigates, Sues, and Obtains a Judgment Against Him . . . . . . . . . . . . . . . . . -2-

    B.    Joshua S. Shainberg Obtains Equitable Ownership of the Apartment . . . . . . . -5-

    C.    Joshua S. Shainberg and Laryssa Shainberg Enter into a Purported Pre-Nuptial
        Agreement and Marry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

    D.    Joshua S. Shainberg Obtains Record Title to the Apartment and Transfers the
        Apartment to Laryssa Shainberg . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

    E.    Joshua S. Shainberg Vigorously Defends the Civil Injunctive Action . . . . . . . -9-

    F.    Laryssa Shainberg Obtains a Loan Secured by the Apartment and Purchases the
        Fallsburg Property with a Portion of the Loan Proceeds . . . . . . . . . . . . . . . . . -11-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

    I. Joshua S. Shainberg's Transfer of the Apartment to Laryssa Shainberg Was Fraudulent
       under the NYDCL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

        A.    NYDCL § 273 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
                1.    Fair Consideration (NYDCL § 272) . . . . . . . . . . . . . . . . . . . . -14-
                2.    Action Seeking Money Damages . . . . . . . . . . . . . . . . . . . . . . . -17-
                3.    The Judgment Is Unsatisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

        B.    NYDCL § 276 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

    II. The Court Should Grant an Attachment of the Apartment and the Fallsburg Property
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

## **TABLE OF AUTHORITIES**

### <u>Cases</u>

*Calvert v. Le Tam Realty Corp.*, 499 N.Y.S.2d 89 (App. Div. 1986) . . . . . . . . . . . . . . . . . . -17-

*Capital Distrib. Serv., Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195 (E.D.N.Y. 2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Capital Ventures International v. Republic of Argentina*, 443 F.3d 214 (2d Cir. 2006) . . . . -20-

*Corporation of Lloyd's v. Funk*, 668 N.Y.S.2d 211 (App. Div. 1998) . . . . . . . . . . . . . . . . . . -15-

*Experience Hendrix, LLC v. Chalpin*, 461 F. Supp. 2d 165 (S.D.N.Y. 2006) . . . . . . . . -20-, -22-

*Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . -14-

*HBE Leasing Corp. v. Frank*, 48 F.3d 623 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*HBE Leasing Corp. v. Frank*, 61 F.3d 1054 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . -14-, -15-

*In re Mosello*, 193 B.R. 147 (S.D.N.Y.), *aff'd*, 104 F.3d 352 (Table) (2d Cir. 1996) . . . . . . -17-

*Liggio v. Liggio*, 385 N.Y.S.2d 33 (App. Div. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Neshewat v. Salem*, 365 F. Supp. 2d 508 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . -14-, -16-, -20-

*RTC Mortgage Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192 (S.D.N.Y. 2001) . . . . -19-, -20-

*Schwarzschild v. Binsse*, 365 A.2d 1195 (Conn. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Scruggs-Leftwich v. Rivercross Tenants Corp.*, 517 N.E.2d 1337 (NY 1987) . . . . . . . . . . . . . -7-

*SEC v. Antar*, 120 F. Supp. 2d 431 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*SEC v. Curtis, et al.*, 99 Civ. 7357 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Shelley v. Doe*, 671 N.Y.S.2d 803 (App. Div. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Sklaroff v. Rosenberg*, 125 F. Supp. 2d 67 (S.D.N.Y. 2000), *aff'd*, 18 Fed. App'x. 28 (2d Cir.
2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Sullivan v. Kodsi*, 373F. Supp. 2d 302 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Swift v. Wilcox*, 924 So. 2d 885 (Fla. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*United States v. McCombs*, 30 F.3d 310 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

## Statutes

28 U.S.C. § 2408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

28 U.S.C. §§ 3001 *et seq.* (Federal Debt Collection Procedure Act) . . . . . . . . . . . . . . . . . . . -13-

New York Civil Practice Law and Rules Article 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

New York Civil Practice Law and Rules § 105(q) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

New York Civil Practice Law and Rules § 6201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

New York Civil Practice Law and Rules § 6211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

New York Civil Practice Law and Rules § 6212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

New York Debtor and Creditor Law § 272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

New York Debtor and Creditor Law § 273-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12--15-, -18-

New York Debtor and Creditor Law § 276 . . . . . . . . . . . . . . . . . . . . . . . -12-, -13-, -18-, -19-

New York Debtor and Creditor Law § 278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -21-

New York Estates, Powers, and Trusts Law § 4-1.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

New York Estates, Powers, and Trusts Law, § 4-1.1(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

New York Private Housing Finance Law Article II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

New York Private Housing Finance Law § 31-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

New York Surrogate's Court Procedure Act Article 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -7-

Securities Act of 1933, Section 17(a), 15 U.S.C. § 77q(a) . . . . . . . . . . . . . . . . . . . . . . . . . -3-, -4-

Securities Act of 1933, Section 20(d), 15 U.S.C. § 77t(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) . . . . . . . . . . . . . . . . . -3-, -4-

Securities Exchange Act of 1934, Section 21(d). 15 U.S.C. § 78u(d) . . . . . . . . . . . . . . . . . . . .   -4-

## Regulations

Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5  . . . . . . . . . . . .  -3-, -4-

## Court Rules

Fed. R. Civ. P. 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -21-

## INTRODUCTION

This is an action to set aside the fraudulent transfer of a Manhattan cooperative apartment from Joshua S. Shainberg to Laryssa Shainberg and to enforce the judgment against Joshua S. Shainberg.

In 1995, Joshua S. Shainberg committed securities fraud by receiving undisclosed kickbacks for selling fraudulently obtained securities to the investing public. In 1996, in the course of its non-public investigation, the Securities and Exchange Commission (the "Commission") subpoenaed documents from Joshua S. Shainberg and took his testimony. In 1998, the Commission staff notified Joshua S. Shainberg that the staff would recommend that the Commission authorize an enforcement action against Joshua S. Shainberg.

In 1999 the Commission filed and served its civil enforcement action on Joshua S. Shainberg. In 2006, the Commission obtained a judgment requiring Joshua S. Shainberg to disgorge his ill-gotten gains from his 1995 securities fraud along with prejudgment interest, and imposing a civil money penalty. This judgment remains wholly unpaid.

After he committed the securities fraud, after he was served with the Commission's investigative subpoena, after he testified in the Commission's investigation, after he was served with the summons and complaint in the Commission's enforcement action, and while he was actively and energetically defending the Commission's enforcement action, Joshua S. Shainberg transferred the apartment to his wife Laryssa Shainberg. The Shainbergs now claim that this transfer occurred pursuant to an alleged pre-nuptial agreement purportedly dated on January 1, 1997. Even assuming that this document is legitimate -- and there are significant reasons to question its authenticity -- the claimed date of the pre-nuptial agreement is after Joshua S.

Shainberg's fraudulent activities giving rise to the Commission's claim in the enforcement action and after Joshua S. Shainberg's awareness of the Commission's investigation into his activities.

The Commission brings this action to set aside this fraudulent transfer and to obtain other relief with respect to Joshua S. Shainberg and Laryssa Shainberg so as to recover its judgment against Joshua S. Shainberg.

## STATEMENT OF FACTS

**A.      Joshua S. Shainberg Violates the Federal Securities Laws, and the Commission Investigates, Sues, and Obtains a Judgment Against Him**

In 1995, Joshua S. Shainberg, along with others, violated the federal securities laws by selling securities to the investing public while not disclosing that he had received kickbacks for selling such securities. Complaint, *SEC v. Curtis, et al.*, 99 Civ. 7357 (E.D.N.Y.), attached to the Declaration of John J. Graubard ("Graubard Decl.") as Exhibit 1, SEC001,[1] 025-028; Decision and Order, *SEC v. Curtis* (1/12/06), Graubard Decl. Ex. 29, SEC159, 159-160.

The Commission initiated a non-public investigation into these activities to determine whether there had been violations of the federal securities laws. *In the Matter of Trading in the Securities of Organogenesis, Inc. and Certain Other Issuers*, NY-6315 (the "Investigation"). Graubard Decl. ¶ 6. In the course of the Investigation, the Commission served a subpoena *duces tecum* on Joshua S. Shainberg dated August 6, 1996. *Ibid.* On September 5, 1996, Joshua S. Shainberg, as directed by that subpoena, gave sworn testimony to the Commission staff in connection with the Investigation. Graubard Decl. Ex. 31, SEC170, 174. Joshua S. Shainberg was asked to produce documents and to testify about his relationships with, among others, Alter

---

[1]The Exhibits to the Graubard Decl. are numbered consecutively starting at "SEC001."

Sales, Inc. (in the transcript as "Alta" Sales), ICIS Management Group, Inc., Hubert-Rosche Securities Corporation, a branch of Securities Planners, Inc., M. Rimson & Co., and Pedro Gomez. *Ibid.*

As a result of the Investigation, the Commission staff determined that there was sufficient evidence to recommend to the Commission that the Commission authorize the staff to bring an enforcement action against, among others, Joshua S. Shainberg, based on the 1995 violation of the federal securities laws. On August 7, 1997 the Commission staff offered Joshua S. Shainberg the opportunity to make a "Wells Submission."[2] Graubard Decl. Ex. 32, SEC253. In its August 7, 1997 letter to counsel for Michael Lipkin and Joshua S. Shainberg, the Commission staff stated that it would be recommending that the Commission bring an enforcement action against Joshua S. Shainberg based on his 1995 violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. The Commission staff further informed counsel for Joshua S. Shainberg that the staff would recommend that the Commission in such enforcement action seek, in addition to injunctive relief, disgorgement from Joshua S. Shainberg of the proceeds of his illegal conduct, prejudgment interest, and a penalty. *Ibid.*

The Commission commenced an enforcement action (the "Civil Injunctive Action") against a number of defendants, including Joshua S. Shainberg, in the United States District Court for the Eastern District of New York by the filing of a complaint on November 10, 1999. Graubard Decl. Ex. 1, SEC001; Docket Sheet, Graubard Decl. Ex. 2, SEC050, 053. The

---

[2]A Wells Submission is a submission made to the Commission staff by a prospective defendant giving reasons why the Commission should not initiate enforcement action against that defendant.

Commission's complaint in the Civil Injunctive Action alleged that the defendants in the Civil

Injunctive Action, including Joshua S. Shainberg, had engaged in a fraudulent scheme to violate

the federal securities laws. Specifically, the Commission's complaint alleged that between May

22, 1995 and June 15, 1995 Joshua S. Shainberg, then a registered representative associated with

Hubert-Rosche Securities Corporation, a branch of Securities Planners, Inc., a registered

securities broker-dealer, was paid undisclosed kickbacks for selling securities of ICIS

Management Group, Inc., formerly Alter Sales, Inc., to the investing public. The complaint

charged Shainberg with violating the antifraud provisions of the federal securities laws, Section

17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15

U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, in connection with the

foregoing conduct. Graubard Decl. Ex. 1, ¶¶ 207-218, SEC001, 038-041.

As to Joshua S. Shainberg the Commission sought disgorgement equal to the funds and

benefits he obtained illegally as a result of his violations of the federal securities laws and

prejudgment interest on that amount, a civil penalty pursuant to Section 20(d) of the Securities

Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), along with a

final judgment permanently enjoining Joshua S. Shainberg from violating, directly or indirectly,

Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act,

15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. *Ibid.* Joshua S.

Shainberg was served with the summons and complaint in the Civil Injunctive Action on

December 2, 1999. Graubard Decl. Ex. 2, D.N. 24, SEC054.

Shainberg vigorously contested the Civil Injunctive Action, and actively participated in

his defense, both while he was represented by counsel and while he was pro se, during the six

years between the institution of that action and the Judgment that followed a jury trial.  Graubard Decl. Ex. 2, D.N. 1, D.N. 210, SEC053, 066.

The Commission obtained that Judgment on March 9, 2006.  The Judgment enjoined Joshua S. Shainberg from further violations of the antifraud provisions of the federal securities laws.  Graubard Decl. Ex. 3, ¶¶ 1, 2, SEC073, 074-075.  The Judgment further required Joshua S. Shainberg to disgorge his ill-gotten gains of $288,832.45 and prejudgment interest of $300,277.36, for a total of $589,109.81, which amount was a joint and several liability of Joshua S. Shainberg and co-defendant Michael Lipkin.  Graubard Decl. Ex. 3, ¶ III, SEC075-076.  The Judgment further imposed a $200,000 civil money penalty on Joshua S. Shainberg.  Graubard Decl. Ex. 3, ¶ IV, SEC077.  Joshua S. Shainberg has failed to pay any portion of the disgorgement, prejudgment interest, and civil money penalty imposed by the Judgment, and co-defendant Michael Lipkin has failed to pay any portion of the disgorgement and prejudgment interest that is a joint and several obligation of both Joshua S. Shainberg and co-defendant Michael Lipkin.  The full amounts due under the Judgment, together with interest and fees thereon, remains wholly unsatisfied.  Graubard Decl. ¶¶ 7, 8.

**B.**    **Joshua S. Shainberg Obtains Equitable Ownership of the Apartment**

Joshua S. Shainberg transferred to Laryssa Shainberg Apartment L-806, 385 Grand Street, New York, New York 10002, a unit in a cooperative housing development known as the Seward Park Houses (the "Apartment").  Ownership of the Apartment is evidenced by a proprietary lease for the unit and ownership of 39 shares of stock in the Seward Park Housing Corporation.

Joshua S. Shainberg obtained equitable ownership of the Apartment about a quarter century after his father Nuta Shainberg, the record owner, died in 1975. Graubard Decl. Ex. 6, SEC108. Nuta Shainberg did not leave a will, and he was survived by his wife, Rachael Shainberg and three sons. One of those sons was Joshua S. Shainberg. Under New York Estates, Powers and Trusts Law ("EPTL") 4-1.1(a)(1), Nuta Shainberg's property passed to his wife and his sons. Graubard Decl. Ex. 7, SEC109, 110-111.[3] Rachael Shainberg similarly died intestate in 1990. The three sons, including Joshua S. Shainberg, became the equitable owners of the Apartment. EPTL 4-1.1(a)(3); Graubard Decl. Ex. 9, SEC111, Ex. 10, SEC118. Joshua S. Shainberg testified that his brothers renounced their interest in the Apartment in his favor. Graubard Decl. Ex. 4, 49:22-50:17, SEC079, 089.

Joshua S. Shainberg did not seek to obtain legal title to the Apartment until the late 1990s, a period coinciding with the commencement of the Civil Injunctive Action in November 1999. Graubard Decl. Ex. 2, D.N. 1, SEC053; Ex. 12, SEC 124. His seeking title to the Apartment appears to have also coincided with the change in Seward Park Housing Corporation from a limited-profit housing development under Article II of the New York Private Housing Finance Law to a regular cooperative corporation. While a part of a limited-profit housing development, the Apartment, legally owned by Nuta Shainberg, could not have been transferred on his death to his survivors, and it could have been resold only to the next person on the sponsor's waiting list at a predetermined, and nominal, amount. New York Private Housing

---

[3]Joshua S. Shainberg initially sought voluntary administration of this estate under Article 13 of the New York Surrogate's Court Procedure Act ("SCPA"). Graubard Decl. Ex. 8, SEC114.

Finance Law § 31-a; *Scruggs-Leftwich v. Rivercross Tenants Corp.*, 517 N.E.2d 1337, 1338-39 (NY 1987).[4]

### C.     Joshua S. Shainberg and Laryssa Shainberg Enter into a Purported Pre-Nuptial Agreement and Marry

Joshua S. Shainberg and Laryssa Shainberg married on June 5, 1998.  Graubard Decl. Ex. 4 63:14-15, SEC092; Ex. 5 (Excerpts from deposition of Laryssa Shainberg 5/16/07) 5:11-13, SEC095-107, SEC097.

Before their marriage, Joshua S. Shainberg and Laryssa Shainberg (then Laryssa Shepherd) entered into a purported pre-nuptial agreement allegedly dated January 1, 1997 (the "Pre-Nuptial Agreement").  Graubard Decl., Ex. 11,  SEC120-123.  The only provision in the alleged Pre-Nuptial Agreement concerning property was Joshua S. Shainberg's promise to transfer the Apartment to Laryssa Shainberg after Joshua S. Shainberg obtained record title to the Apartment.  Graubard Decl. Ex. 11, SEC120-121.  Laryssa Shainberg did not provide any monetary consideration to Joshua S. Shainberg in the Pre-Nuptial Agreement.  The parties had crossed out what had been paragraph 7 of the Pre-Nuptial Agreement, which had provided for such consideration.  As of January 1, 1997, Joshua S. Shainberg knew that he had engaged in securities fraud, and knew that the Commission was conducting the Investigation and had subpoenaed him for document production and testimony.

---

[4]The voluntary administration of Rachael Shainberg's estate under SCPA Article 13 showed no valuation for her interest in the Apartment.  Graubard Decl. Ex. 10, SEC117.  Joshua S. Shainberg's application for voluntary administration of Nuta Shainberg's estate showed the value of the Apartment at $2,000 as of July 1998.  Graubard Decl. Ex. 8, SEC 115.

**D.    Joshua S. Shainberg Obtains Record Title to the Apartment and Transfers the Apartment to Laryssa Shainberg**

In 2001, Joshua S. Shainberg requested that the Seward Park Housing Corporation Board of Directors approve the transfer of record title to the Apartment to himself and to his wife Laryssa Shainberg as joint tenants with right of survivorship. Graubard Decl. Ex. 13 (letter from Joshua S. Shainberg dated  4/18/01), SEC125-126; Ex. 14 (letter from Abraham Shainberg dated 3/29/01), SEC127-128.  At this time Joshua S. Shainberg had sole equitable title to the Apartment.[5]  The Board of Directors approved, and on October 16, 2001, Joshua S. Shainberg and Laryssa Shainberg, as joint tenants, received record title to the Apartment.    Graubard Decl. Ex. 15 (consent dated 10/16/01), SEC129; Ex. 16 (share certificate dated 10/16/01), SEC130; Ex. 17 (excerpts from proprietary lease dated 10/16/01), SEC131-138.

In 2003, Joshua S. Shainberg and Laryssa Shainberg requested that the Board of Directors permit the further transfer of the Apartment solely to Laryssa Shainberg.  Graubard Decl. Ex. 18 (letter of Laryssa Shainberg to Board of Directors dated 2/2/03), SEC139 ; Ex. 19 (letter of Joshua S. Shainberg to Board of Directors dated 2/2/03), SEC140 .  Joshua S. Shainberg's letter states that "I am requesting that my name be taken off the certificate and only the name of my wife remain on the certificate." Ex. 19, SEC140 .  Laryssa Shainberg's letter is on letterhead of Joshua S. Shainberg and states "I, Laryssa Shainberg, am accepting the request of my husband, Joshua Shainberg, that his name be removed from our stock certificate." Ex. 18, SEC139 .

---

[5]Sometime earlier, Joshua S. Shainberg had requested approval of the transfer of the Apartment solely to his own name, which application was denied.  Graubard Decl. Ex. 12 (letter dated 4/23/01), SEC124.  Joshua S. Shainberg testified that he did not recall this earlier application.  Graubard Decl. Ex. 4 61:2-16, SEC092.

Laryssa Shainberg provided the Board of Directors with financial and other information in support of her application for sole ownership of the Apartment. Graubard Decl. Ex. 20 (letter of Laryssa Shainberg to Board of Directors dated 2/23/03), SEC141. The February 23 letter from Laryssa Shainberg stated that she was "reporting over five hundred thousand dollars in liquid assets (mostly cash and money market)." Ex. 20, SEC141. Joshua S. Shainberg represented to the Board of Directors that he was taking responsibility for all current and future expenses and costs relating to the Apartment. Graubard Decl. Ex. 22 (Letter of Joshua S. Shainberg to Board of Directors dated 3/29/03), SEC144.[6]

On or about April 3, 2003, the Board of Directors approved Joshua S. Shainberg's transfer of his one-half interest in the Apartment to Laryssa Shainberg. Graubard Decl. Ex. 23 (share certificate dated 4/3/03), SEC145; Ex. 24 (excerpts from proprietary lease dated 4/3/03), SEC146-SEC149.

**E.**     **Joshua S. Shainberg Vigorously Defends the Civil Injunctive Action**

While Joshua S. Shainberg was obtaining the transfer of record title to the Apartment to himself and Laryssa Shainberg in 2001, and then transferring the Apartment solely to Laryssa Shainberg in 2003, he was fully aware of and participating in the defense of the Civil Injunctive Action. These actions include:

---

[6]When asked what his purpose was in writing the March 29, 2003 letter, Joshua S. Shainberg responded, "I have no clue." Graubard Decl. Ex. 4 74:25, SEC094. At that time he took responsibility for paying the costs and expenses of the Apartment, Joshua S. Shainberg testified, he was not gainfully employed and his only claimed asset was shares of ICT Technologies, which did not have any idea as to their value. Graubard Decl. Ex. 4 75:19-21, 76:3-9, SEC094.

- 3/20/01 - Joshua S. Shainberg advises the court that he had discharged his attorney of record and engaged new counsel for the limited purpose of assisting in automatic disclosures. Graubard Decl. Ex. 2, D.N. 50, SEC056.

- 7/27/01 - Joshua S. Shainberg, pro se, is a party to a scheduling order. *Ibid*, D.N. 55.

- 7/20/02 - Joshua S. Shainberg gives his deposition in the Civil Injunctive Action. Graubard Decl. Ex. 33, SEC255.[7]

- 10/9/02 - Joshua S. Shainberg is the subject of a discovery order. *Ibid*, D.N. 87, SEC059.

- 10/10/02 - Joshua S. Shainberg wrote the Magistrate Judge concerning the scheduling order. *Ibid*, D.N. 88.

- 11/13/02 - Notice of appearance by an attorney for Joshua S. Shainberg. *Ibid*, D.N. 110, SEC059.

- 11/27/02 - Shainberg answers amended complaint. *Ibid*, D.N. 111.

- 5/7/03 - Motion to withdraw by Joshua S. Shainberg's attorney. *Ibid*, D.N. 158, SEC060.

On June 20, 2002 Joshua S. Shainberg gave his deposition in the Civil Injunctive Action. Graubard Decl. Ex. 33, SEC255. In that deposition, given between the first and second transfers of the Apartment to Laryssa Shainberg, Joshua S. Shainberg testified that as of 1995 he only expected to receive "a small inheritance . . . Modest, a few thousand dollars." *Ibid* 94:8-15, SEC 258. Joshua S. Shainberg also testified that he "had more assets in 1995 than I have today [2002]." *Ibid* 97:7-15, SEC 259.

---

[7]In that deposition, given between the first and the second transfers of the Apartment to Laryssa Shainberg, Joshua S. Shainberg testified that as of 1995 he only expected to receive "a small inheritance . . . Modest, a few thousand dollars." Graubard Decl. Ex. 33 94:8-15, SEC258. Joshua S. Shainberg also testified that he "had more assets in 1995 than I have today [2002]. *Ibid*, 97:7-15, SEC259.

F.    **Laryssa Shainberg Obtains a Loan Secured by the Apartment and Purchases the**
      **Fallsburg Property with a Portion of the Loan Proceeds**

In 2005, Laryssa Shainberg applied to the Board of Directors for permission to obtain a

loan secured by the Apartment in the amount of $250,000.  Graubard Decl. Ex. 25 (letter dated

12/7/05), SEC150.[8]

The Board of Directors approved Laryssa Shainberg's application, and Laryssa Shainberg

obtained a loan for $250,000, secured by the Apartment, from Emigrant Mortgage Company,

Inc.[9]  Graubard Decl. Ex. 27 (initial coop UCC1), SEC152-SEC154.  Following that approval, on

or about December 23, 2005, Laryssa Shainberg purchased a vacation home in Fallsburg, New

---

[8]In support of this request, Laryssa Shainberg submitted several documents, including a
page from the account statement for Joshua S. Shainberg's account at Morgan Stanley.  Graubard
Decl. Ex. 26 (page from account statement), SEC151.  This page indicated that Joshua S.
Shainberg had more than $1.8 million in securities holdings.  This account statement, however,
was incorrect.  In a variant of the "bank error in your favor" Monopoly card, the Morgan Stanley
account listed Joshua S. Shainberg's major security holding under the wrong ticker symbol,
thereby transforming a nearly worthless penny stock (ICT Technologies) into what appeared to
be a significant asset (ICT Group, Inc.).  Graubard Decl. Ex. 4 38:25-39:9, SEC087.  Joshua S.
Shainberg testified that "This was a major mistake admitted to by Morgan Stanley when the
apparently were receiving into this account ICT Technologies, Inc., which is recognized by
CUSIP number, and inadvertently they received in or their computer showed that instead of
receiving into this account 126,000 shares of ICT Technologies, which may have traded at
pennies, they received in ICT Group, which apparently had a value of $1-1/2 million."  Graubard
Decl. Ex. 4 38:10-19, SEC087.  Joshua S. Shainberg further testified that he had called Morgan
Stanley and told them of the error, and that they had then corrected the account.  Graubard Decl.
Ex. 4 38:20-39-5, SEC087.

[9]The loan documentation is dated November 21, 2005, before Laryssa Shainberg
submitted her request for its approval to the Board of Directors on December 7, 2005.

York (the "Fallsburg Property") for $175,000 of the proceeds of the loan.[10]  Graubard Decl. Ex. 28 (recorded deed), SEC155-SEC158; Graubard Decl. Ex. 5 47:14-16, SEC104.

## ARGUMENT

### Summary

Joshua S. Shainberg transferred the Apartment, a substantial asset, to his wife Laryssa Shainberg for no consideration.  Joshua S. Shainberg transferred the Apartment after he had engaged in securities fraud, after he knew the Commission was investigating his activities in connection with that securities fraud, and after the Commission brought suit seeking disgorgement of his ill-gotten gains.

The transfer of the Apartment violated two provisions of the New York Debtor and Creditor Law ("NYDCL").  Section 273-a provides that "Each conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintff, the defendant fails to satisfy the judgment."  Section 276 provides that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

---

[10]Laryssa Shainberg testified that she had obtained a loan on the Apartment, rather than on the Fallsburg Property, because the mortgage broker told her it was "the easiest route to go." Graubard Decl. Ex. 5 55:23-56:6, SEC106.  In addition, Laryssa Shainberg testified she had kept the proceeds of the loan in actual cash, rather than depositing them in a financial institution. Graubard Decl. Ex. 5 57:7-11, SEC107.

The Commission, in this action against Joshua S. Shainberg and Laryssa Shainberg to set aside the fraudulent transfer of the Apartment and to obtain other relief, seeks a prejudgment attachment of the Apartment and the Fallsburg Property.[11] For the reasons set forth below, the Court should enter an order attaching these assets to secure the judgment the Commission seeks herein with respect to that portion of the Judgment awarding disgorgement and prejudgment interest against Joshua S. Shainberg.

## I. Joshua S. Shainberg's Transfer of the Apartment to Laryssa Shainberg Was Fraudulent under the NYDCL

The documentary evidence and the testimony of Joshua S. Shainberg and Laryssa Shainberg submitted by the Commission clearly show that the transfer of the Apartment was fraudulent under NYDCL §§ 273-a and 276.

### A.    NYDCL § 273-a

At the time Joshua S. Shainberg transferred the Apartment in two transactions to Laryssa Shainberg in October 2001 and in April 2003, Joshua S. Shainberg was a defendant in the Commission's Civil Injunctive Action. Therefore, the transfer of the Apartment was fraudulent as to the Commission under NYDCL § 273-a in that (1) the transfer of the Apartment was made without consideration to Joshua S. Shainberg, (2) at the time of the transfer Joshua S. Shainberg was a defendant in an action seeking money damages, and (3) a judgment in that action was entered against Joshua S. Shainberg and that judgment remains unsatisfied. These are the

---

[11]With respect to the civil money penalty against Joshua S. Shainberg, the Commission seeks a prejudgment attachment under the provisions of the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001 *et seq.* (the "FDCPA"). As the requirements of the FDCPA differ from those under New York law, which applies to the disgorgement and prejudgment interest due from Joshua S. Shainberg, the FDCPA attachment is addressed in a separate motion and discussed in a separate memorandum of law. Both, however, rely on the Graubard Decl. for the facts.

elements of a cause of action under §273-a set forth in *Grace v. Bank Leumi Trust Co. of N.Y.*,
443 F.3d 180, 188 (2d Cir. 2006). As this court has clearly stated, "The purpose of § 273-a is to
provide a remedy for a creditor who has brought an action for money damages against a party
who, after being named a defendant in that action, conveys assets to a third party for less than fair
consideration leaving the ultimate judgment unpaid." *Sklaroff v. Rosenberg*, 125 F. Supp. 2d 67,
74 (S.D.N.Y. 2000), *aff'd*, 18 Fed. App'x. 28 (2d Cir. 2001); *Neshewat v. Salem*, 365 F. Supp. 2d
508, 518-19 (S.D.N.Y. 2005). By the terms of the statute, no intent on the part of the transferor
is required for a fraudulent transfer claim based on § 273-a.

1.      ***Fair Consideration (NYDCL § 272)***

        Laryssa Shainberg did not provide fair consideration for the transfer to her of the
Apartment. Both Joshua S. Shainberg and Laryssa Shainberg testified that, apart from the
alleged Pre-Nuptial Agreement, there was no consideration for the Apartment's transfer.
Graubard Decl. Ex. 4 63:1-13, SEC093; Ex. 5 37:25-38:8, SEC102.

        Under New York law, the alleged Pre-Nuptial Agreement does no constitute fair
consideration for the transfer. NYDCL § 272(a) defines "fair consideration" for the purpose of
the New York fraudulent conveyance statutes as being "When in exchange for such property, or
obligation, as a fair equivalent thereof, and in good faith, property is conveyed or an antecedent
debt is satisfied." Here, Joshua S. Shainberg received absolutely no present consideration from
Laryssa Shainberg in exchange for his undertaking to convey the Apartment to her.

        In *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995), the Second
Circuit ruled that a pre-nuptial agreement that did not provide adequate present consideration to
the party making the transfer did not constitute fair consideration for the purpose of the NYDCL.

There, Murphy, the debtor's fiancee at the time of the pre-nuptial agreement and transfers, and later the debtor's wife, alleged that giving up certain statutory marital rights in the agreement constituted fair consideration.  In rejecting that claim, Judge Parker wrote:

> The conveyances to Murphy [the debtor's fiancee who he later married], if not reachable by creditors under the Fraudulent Conveyance Act, would shelter Frank's [the debtor's] assets from parties he wronged.  He could empty his estate with impunity when sued by his victims, transfer the property to his fiancee and receive nothing but inchoate interests in return - nothing from which HBE [the creditor] could recover its judgment - and yet enjoy the benefits of the property now nominally owned by his wife.  This is the sort of injustice fraudulent conveyance law is designed to prevent.

61 F.3d at 1059; *see also Corporation of Lloyd's v. Funk*, 668 N.Y.S.2d 211, 213 (App. Div. 1998).  Here, as in *HBE Leasing*, the transferor simply did not receive fair or adequate consideration for the transfer.

Aside from its dubious nature, the alleged Pre-Nuptial Agreement does not satisfy the "good faith" test of NYDCL § 273-a.  Laryssa Shainberg testified that it was Joshua S. Shainberg who had the idea of entering into such an agreement.  Graubard Decl. Ex. 5 33:7-12, SEC101. The principal provision of the alleged Pre-Nuptial agreement was to transfer the Apartment, which Joshua S. Shainberg did not yet own, and which was not yet freely transferable, to Laryssa Shainberg, who was not yet married to Joshua S. Shainberg.

Moreover, the alleged Pre-Nuptial Agreement, in itself, contains several additional indications that it may not have been actually entered into on January 1, 1997.  These additional indications include:

- Joshua S. Shainberg not only did not yet own the Apartment, but he had not yet sought its transfer into his name;

- paragraph 2 of the pre-nuptial agreement states that Joshua S. Shainberg and his brothers "are attempting" to obtain a transfer of the Apartment through the Surrogate's Court, while the Surrogate's Court records show that the affidavit for voluntary administration was not executed by Joshua S. Shainberg until July 2, 1998;

- in paragraph 6 of the prenuptial agreement, Laryssa Shainberg is referred to by her married name, rather than by her maiden name, Laryssa Shepherd;

- although the pre-nuptial agreement states that the Shainbergs have consulted independent counsel, the names of such counsel are not disclosed, and Laryssa Shainberg testified that she did not remember if she and Joshua S. Shainberg had in fact consulted attorneys;

- the agreement does not appear to have been drafted by an attorney;

- the Shainbergs were not married until June 5, 1998, more than a year and a half after the pre-nuptial agreement was allegedly entered into; and

- it would have been unusual to execute a document such as this on New Year's Day.

Finally, as found by the court in the Civil Injunctive Action, Joshua S. Shainberg has displayed a "brazen and cavalier nonchalance about the truth." Graubard Decl Ex. 29, SEC 159-166, 163.

Where a creditor challenges a transfer between family members, New York law places the burden on the defendants to prove the elements of fair consideration within the meaning of NYDCL § 272. *Neshewat v. Salem*, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005); *see also United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994) (where the transaction is between family members and there is no tangible consideration, "a heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer," *quoting, Liggio v. Liggio*, 385 N.Y.S.2d 33, 39 (App. Div. 1976)). Here, however, there is evidence of a total lack of good faith as in their

-16-

depositions both Joshua S. Shainberg and Laryssa Shainberg testified numerous times that they could not recall highly relevant facts.[12]

## 2.    *Action Seeking Money Damages*

At the time the Apartment was transferred to Laryssa Shainberg in 2001 and 2003, Joshua S. Shainberg was a defendant in the Civil Injunctive Action. In the Civil Injunctive Action the Commission sought an equitable judgment requiring Joshua S. Shainberg disgorge his ill-gotten gains.

CPLR § 105(q) provides that "A 'money judgment' is a judgment, or any part thereof, for a sum of money, or directing the payment of a sum of money." An equitable judgment providing for the payment of a sum of money is a "money judgment" under this provision. *In re Mosello*, 193 B.R. 147, 149 (S.D.N.Y.), *aff'd*, 104 F.3d 352 (Table) (2d Cir. 1996); *Calvert v. Le Tam Realty Corp.*, 499 N.Y.S.2d 89, 91 (App. Div. 1986).

---

[12]For example, among other things Joshua S. Shainberg claimed that he did not remember: (i) the source and amount of loans made to Laryssa Shainberg for the family to live on, Graubard Decl. Ex. 4 12:5-14, SEC081; (ii) how he obtained the stock of ICT Technologies, Ex. 4 19:22-20:8,SEC083; (iii) where Laryssa Shainberg obtained the money to purchase the Fallsburg Property Ex. 4 24:7-9, SEC084; (iv) whether he had been an officer of JFK Oil Terminal, Inc. (he "may have been"), Ex. 4 30:3-12, SEC085; (iv) why he showed his occupation as "manager" on the Shainbergs' income tax return, Ex. 4 34:12-19, SEC086; (v) why the Apartment was not placed in the names of his brothers, Ex. 4, 57:20-58:3, SEC091-092; and (vi) why he wrote the letter to the Board of Directors taking "all responsibility" for the costs and expenses of the Apartment, Ex. 4 74:19-25, SEC094.

Laryssa Shainberg claimed not to recall items including: (i) whether she or Joshua S. Shainberg had an attorney when the Pre-Nuptial Agreement was negotiated, Graubard Decl. Ex. 5 31:9-16, SEC100; (ii) what she did to receive a W-2 form from Europhone, Ex. 5 39:7-18, SEC102; (iii) how much she earned from her consulting, translating, and catering businesses, Ex. 5 40:5-18, SEC102; (iv) who prepared her 2003 financial statement, Ex. 5 41:3-9, SEC103; and (v) what she paid for ownership of the JFK Oil Terminal and who she purchased it from, Ex. 5, 49:14-50:17, SEC105.

Therefore, the Judgment against Joshua S. Shainberg, to the extent that it provides for him to pay disgorgement and prejudgment interest, is a money judgment for the purpose of NYDCL § 273-a.

### 3.    *The Judgment Is Unsatisfied*

Finally, the Judgment against Joshua S. Shainberg is unsatisfied.  Graubard Decl. ¶ 7.

For these reasons, the Commission has established that the transfer of the Apartment from Joshua S. Shainberg to Laryssa Shainberg was fraudulent under NYDCL § 273-a.

### B.    NYDCL § 276

The evidence strongly indicates that Joshua S. Shainberg transferred the Apartment to Laryssa Shainberg with the intent to hinder, delay, or defraud the Commission in the enforcement of its claims against him.

The Commission's claims against Joshua S. Shainberg arose when he violated the federal securities laws in 1995.  Joshua S. Shainberg was aware of the Commission's investigation in 1996.  In 1997, the Commission gave notice to Joshua S. Shainberg that the staff intended to recommend that the Commission authorize it to bring an enforcement action seeking relief against Joshua S. Shainberg.  In 1999, the Commission brought suit against Joshua S. Shainberg, seeking disgorgement and prejudgment interest.  All of this occurred before Joshua S. Shainberg transferred the Apartment to Laryssa Shainberg in 2001 and in 2003.

"Actual fraudulent intent must be proven by clear and convincing evidence, but it may be inferred from the circumstances surrounding the transaction, including the relationship of the parties and the secrecy, haste, or unusualness of the transaction." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (1995).  Because "Direct proof of actual intent is rare, creditors may rely on

-18-

'badges of fraud' to establish an inference of fraudulent intent." *Shelley v. Doe*, 671 N.Y.S.2d 803, 806 (App. Div. 1998). The factors which are considered as "badges of fraud" include: (1) a close relationship between the parties to the transaction; (2) inadequacy of consideration; (3) the transferor's knowledge of the creditor's claim and his or her inability to pay it; (4) the existence of a pattern or series of transactions or course of conduct; (5) the financial condition of the transferor before and after the transfer; (6) the transferor's retention of possession, use, or control of the property after the transfer; and (7) a general chronology of the events and transactions. *Ibid*, *see also*, *Capital Distrib. Serv., Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195, 204 (E.D.N.Y. 2006); *Sullivan v. Kodsi*, 373F. Supp. 2d 302, 307 (S.D.N.Y. 2005); *RTC Mortgage Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001).

The "badges of fraud" present here are: (1) the close relationship (marriage) between Joshua S. Shainberg and Laryssa Shainberg; (2) the lack of consideration; (3) Joshua S. Shainberg's knowledge of the Commission's claim; (4) the pattern of transfers from Joshua S. Shainberg to Laryssa Shainberg;[13] (5) the transfer of the Apartment substantially reduced Joshua S. Shainberg's assets available to satisfy the Commission's claim; (6) Joshua S. Shainberg retained possession, use, and control of the Apartment after the transfer; and (7) Joshua S. Shainberg's pattern of conduct indicating a propensity to engage in fraudulent activities.

These "badges of fraud" constitute a prima facie case that the Joshua S. Shainberg transferred the Apartment with the actual intent to hinder, delay, or defraud the Commission under NYDCL § 276.

---

[13]In addition to the Apartment, Joshua S. Shainberg also testified that he had given shares of ICT Technologies to Laryssa Shainberg. Graubard Decl. Ex. 4 42:18-43:14, SEC088.

## II.  **The Court Should Grant an Attachment of the Apartment and the Fallsburg Property**

The Commission's remedy for the fraudulent transfer of the Apartment are set forth in NYDCL § 278.  The Commission may, as against any person other than a purchaser for value without knowledge of the fraud at the time of purchase, have the conveyance set aside to the extent necessary to satisfy its claim, or disregard the conveyance and attach or levy execution on the property conveyed.  Because Laryssa Shainberg encumbered the Apartment with a $250,000 lien, the Commission is also entitled to a money judgment against her, as transferee.  "[W]here the assets fraudulently transferred no longer exist or are no longer in the possession of the transferee, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets."  *Newshewat v. Salem*, 365 F. Supp. 2d 508, 521-22 (S.D.N.Y. 2005), *aff'd*, 194 Fed. App'x 24 (2d Cir. 2006); *RTC Mortgage Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001).

The purpose of the prejudgment (provisional) remedy of attachment is to preserve the assets sought to be recovered by the plaintiff pending the resolution of the lawsuit.  *Capital Ventures International v. Republic of Argentina*, 443 F.3d 214, 221 (2d Cir. 2006).[14]  An attachment is appropriate where property has been fraudulently transferred.  *Experience Hendrix, LLC v. Chalpin*, 461 F. Supp. 2d 165, 173 (S.D.N.Y. 2006).

---

[14]The alternative purpose of attachment, to secure jurisdiction over a non-resident defendant, is not involved here.

The Commission has fully met the requirements of New York law, applicable here under Fed. R. Civ. P. 64, for the Court to issue an order of attachment with respect to the portion of the Judgment for disgorgement and prejudgment interest.[15]

To obtain an attachment under CPLR Article 62, the plaintiff must establish: (1) that there is a cause of action; (2) that it is probable that the plaintiff will succeed on the merits; (3) that one or more of the grounds for attachment of CPLR 6201 exist; and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

The evidence recited above clearly demonstrates that the Commission has a cause of action against Joshua S. Shainberg and Laryssa Shainberg to enforce its claim for disgorgement and prejudgment interest based on the fraudulent transfer of the Apartment, and that the Commission is likely to prevail on this cause of action.  NYDCL § 278 specifically allows an attachment of the property conveyed, and a money judgment against Laryssa Shainberg, to the extent that she encumbered the Apartment.

The Commission has two grounds for attachment under CPLR 6201.  CPLR 6201(5) provides that an attachment may be granted where "the cause of action is based on a judgment, decree, or order of a court of the United States . . . ."  CPLR 6201(3) provides for an attachment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment . . . has assigned . . . property . . . ."  Both of these grounds exist here.

Finally, there are no known counterclaims against the Commission.  Graubard Decl. ¶ 10.

---

[15]Disgorgement and prejudgment interest are enforced using state law remedies. *SEC v. Antar*, 120 F. Supp. 2d 431, 436-40 (D.N.J. 2000).

The Commission is therefore entitled to an attachment against both the transferor, Joshua S. Shainberg, and the transferee, Laryssa Shainberg. *Experience Hendrix, LLC*, 461 F. Supp. 2d at 173-74 (attachment granted against both transferee and transferor in fraudulent conveyance action).[16]

The Commission seeks an *ex parte* attachment. CPLR § 6211 allows the Court to issue an order of attachment without notice, subject to the requirement of a prompt hearing under CPLR § 6212 to confirm the order. The Commission requests that, if the Court issues an *ex parte* attachment, it also sign the proposed order to show cause, setting a hearing date on the motion for confirmation of the attachment.[17]

An *ex parte* attachment is appropriate in light of the defendant's extensive fraudulent conduct. If the Court, however, determines that it would be more appropriate to hear the Commission's motion for attachment on notice pursuant to CPLR § 6212, then the Commission requests that the Court issue an order to show cause with a short return date on its motion for attachment, and also enter a temporary restraining order preventing the defendants from transferring or encumbering the Apartment and the Fallsburg Property pending that hearing.

---

[16]As an agency of the United States, the Commission is exempt from posting any bond or undertaking. 28 U.S.C. § 2408.

[17]CPLR 6211 provides that the motion to confirm be made "within a period not to exceed five days after levy . . . ." The meaning of "within" is "not longer in time than" or "not later than," and it is used as term of limitation. *See, Schwarzschild v. Binsse*, 365 A.2d 1195, 1998 (Conn. 1976) (where probate statute required service of claim "within" a set time, service of claim before entry of order setting time for presentation of claims was valid); *Swift v. Wilcox*, 924 So. 2d 885, 887 (Fla. App. 2006) (motion for attorneys' fees properly filed before judgment where statute required filing within 30 days after judgment).

-22-

## CONCLUSION

For these reasons, the Court should grant an order of attachment to secure the

Commission's claims for disgorgement and prejudgment interest.

Dated: New York, New York
      October 12, 2007

MARK K. SCHONFELD (MS-2798)
Regional Director


/s/ John J. Graubard

By: _____

JOHN J. GRAUBARD (JG-4854)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Room 400
New York, New York 10281-1022
Tel.: 212-336-0084 (Graubard); fax: 212-336-1319
E-mail: graubardj@sec.gov

On the Brief:
Jack Kaufman
Lee Bickley
Bohdan Ozaruk