ROGER L. FIDLER (RF-9997)
Attorney for Defendant
LARYSSA SHAINBERG
126 East 83rd Street, Suite 3B
New York, NY 10028
(212) 734-0470
rfidler0099@aol.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                                 :   No. 07 Civ. 8814 (LLS)
SECURITIES AND EXCHANGE COMMISSION, :
                                                                 :
               Plaintiff,                    :
                                                                 :
     - against -                              :
                                                                 :   MEMORANDUM IN
JOSHUA S. SHAINBERG and                      :   OPPOSITION TO ORDER
LARYSSA SHAINBERG,                              :   TO SHOW CAUSE
                                                                 :
               Defendants.                :
_____

      Defendant Laryssa Shainberg ("Defendant") submits this Memorandum in opposition to Plaintiff's Order to Show Cause and requests for preliminary restraints, injunctions, liens and garnishments.

      In order to obtain and maintain preliminary restraints, including those entered on a temporary basis in this matter, as well as liens and garnishments, Plaintiff must demonstrate that, in addition to the likelihood of irreparable harm and the lack of other monetary remedy, it would prevail, more likely than not, on the merits.

      The New York common law rule is clearly stated in De Hierapolis v. Reilly, 60 N.Y.S. 417 (1st Dept. 1899). In that case, the New York Appellate Court held that where a woman, in good faith, makes a promise to marry, conditioned on the assignment to her of a fund by the man she promises to marry, she takes the fund as a purchaser in good

faith and for valuable consideration, though the man in making the contract did so with the intention of defrauding his creditors. This well settled rule is that marriage or promise of marriage is a valuable consideration. De Hierapolis v. Reilly, 60 N.Y.S. 417 (1st Dept. 1899). Here no showing has even been made that Defendant knew of Defendant Joshua Shainberg's financial or legal problems on or before the date of the prenuptial agreement and there has been ample evidence put forward to demonstrate the bona fides of Defendant's legitimate, one might say compelling, reasons for demanding a prenuptial settlement.

The New York common law rule is codified in the Debtor & Creditor Law, § 278 which states in pertinent part:

> where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person **except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser**…"
>
> American Surety Co. of new York v. Conner et al., 251 N.Y. 1 (1929).

Further, since The Federal Debt Collection Procedures Act (the "Act"), 28 U.S.C. Sec. 3011 *et seq*. is a procedural law only (See Government's Statement and Section-by-Section Analysis Concerning Senate Hearings on S 1961, 100th Cong, 2d Sess (1988) at I. "The … Act merely creates a Federal procedural system so that the Federal government can better coordinate its debt management effort." and "The substitution of Federal procedural remedies for those remedies that exist in state statutes does not affect the

applicability of state law theories of liability." *Id*.) Hence state substantive law governs the determination as to whether the conveyance is fraudulent.

The facts of the present case track the above case law in every detail. Here we have a couple contemplating marriage in 1995 when Defendant began the conversion process. See Affidavit of Laryssa Shainberg at Paragraph 6. The reluctant groom, after making various promises of marriage lies to the Defendant about having ordered a ring then disappears. Id. at Paragraph 5. She takes him back and demands security via the prenuptial agreement. Id. at Paragraph 7. He and his brothers want her to convert from evangelical Christianity to Judaism, (See, Affidavit of Mark Shainberg at Paragraph 6 and Affidavit of Abraham Shainberg at Paragraph 6), an expensive and lengthy process. (See Affidavit of Herbert Bomzer at Paragraph 4) She agrees and spends about $30,000 on the process, plus has to pay certain wedding expenses herself. See Affidavit of Laryssa Shainberg at Paragraph 6 and Affidavit of Herbert Bomzer at Paragraph 4. The fiancé owns one-third of a cooperative apartment (the "Apartment") (See Complaint at Paragraph 28) that has a value of $90,000 (See Affidavit of Judah Engelmeyer at Paragraph 4 and Affidavit of Eitan Ben Yosef at Paragraph 4) so he gives her his share and convinces his brothers to give her their shares in exchange for her marrying him. The prenuptrial agreement is signed in January, 1997. See Affidavit of Judit Szaloki at Paragraph 4. The logic of the situation is most compelling. She completes the conversion in March 1998 (See Exhibit A to Affidavit of Laryssa Shainberg) and after another disappearance episode in April 1998, the couple is married in June 1998. Complaint at Paragraph 36. Due to problems, not uncommon in New York City real estate (See Exhibit B to Affidavit of Laryssa Shainberg), the property eventually gets conveyed to her half in 2001 and half in 2003. Complaint at Paragraphs 39 and 41. Equitably she has

owned his share since 1997, and with respect to the two shares of his brothers the fiancé is acting solely as a conduit for the commitment of his brothers in, what Defendant has been told is, the only way to effect the transfer. The subsequent acquisition of another property using the proceeds of her own property makes the vacation home equally unreachable by the government. Complaint at Paragraph 46.

In conclusion, it seems unlikely that Plaintiff will prevail at trial. The trials and tribulations of Laryssa, the costs of conversion, wedding plans made and broken are lead to the conclusion that she was well within her rights to demand a prenuptial agreement, and the equality of the value of the apartment at the time, and the expenses she had to incur to bring about the wedding, create a fair exchange, one required by Jewish law if the couple were to be welcomed into Joshua's community. The subsequent use of her property to acquire another becomes an irrelevancy once the fair consideration of the prenuptial agreement is recognized. Further, it is, in light of the sworn statements, uncontroverted that Mark and Abraham Shainberg gave their interest to Laryssa to cause the conversion and the wedding to take place so even if a jury took the unlikely approach to rule that the prenuptial agreement was not given for fair consideration, only one third of both properties should be held subject to the garnishment.

Date:  November 16, 2007                                              Respectfully submitted,

                                                                              __s/Roger L. Fidler_____
                                                                              Roger L. Fidler ((RF-9997)
                                                                              Attorney for Defendant
                                                                              126 East 83rd Street, Suite 3B
                                                                              New York, NY 10028
                                                                              (212) 734-0470