UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
                                                                        :   No. 07 Civ. 8814 (LLS)(HP)
SECURITIES AND EXCHANGE COMMISSION,   :
                                                                        :
                Plaintiff,                  :
                                                                        :
         - against -                             :
                                                                        :
JOSHUA S. SHAINBERG and                                 :
LARYSSA SHAINBERG,                                         :
                                                                        :
            Defendants.              :
                                                                        :


**REPLY MEMORANDUM OF LAW
OF SECURITIES AND EXCHANGE COMMISSION
IN SUPPORT OF MOTION FOR *EX PARTE* ATTACHMENT
(28 U.S.C. § 3102, FED. R. CIV. P. 69(a), AND CPLR 6211)**


|  |  |
|---|---|
| On the Brief: | MARK K. SCHONFELD (MS-2798)<br>Regional Director<br>Attorney for Plaintiff |
| Jack Kaufman | SECURITIES AND EXCHANGE COMMISSION |
| Lee S. Bickley | New York Regional Office |
| Bohdan Ozaruk | 3 World Financial Center, Room 400 |
| John J. Graubard | New York, New York 10281-1022 |
|  | Tel.: 212-336-0084 (Graubard) |
|  | Fax: 212-336-1319 |
|  | E-mail: graubardj@sec.gov |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

    A.    The Relevant Chronology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

    B.    Facts Relating to the Pre-Nuptial Agreement . . . . . . . . . . . . . . . . . . . . . . . . -3-

    C.    Facts Relating to the Transfer of the Apartment . . . . . . . . . . . . . . . . . . . . . . -5-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

    I.    The Transfer of the Apartment Violated NYDCL § 273-a . . . . . . . . . . . . . . . . . . . -8-

        A.    The Pre-Nuptial Agreement Is Not "Fair Consideration" Under
                NYDCL § 272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

        B.    The Transfer of the Apartment Occurred After the Commission
                Brought Its Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

    II.    The Commission Has Established a Prima Facie Case Under NYDCL § 276 . . . . -14-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

# **TABLE OF AUTHORITIES**

## **Cases**

*American Surety Co. of New York v. Conner*, 166 N.E. 783 (1929) . . . . . . . . . . . . . . . . . -10-, -11-

*St. Theresa's Nursing Home v. Vuksanovich*, 702 N.Y.S.2d 92 (2d Dept. 2000) . . . . . . . . . . -10-

*ALH Properties Ten, Inc. v. 306-100th Street Owners Corp.*, 600 N.Y.S.2d 443 (1st Dept. 1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*American Banknote Co. v. Daniele*, 2007 WL 3342684 (1st Dept. Nov. 13, 2007) . . . . . . . . . -14-

*Berkowitz v. Berkowitz*, 490 N.E.2d 1218 (1986), *reversing on dissenting opinion below* 488
N.Y.S.2d 493, 496 (3d Dept. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Considar, Inc. v. Redi Corp. Estab.*, 655 N.Y.S.2d 40 (1st Dept. 1997) . . . . . . . . . . . . . . . . . -14-

*Corporation of Lloyd's v. Funk*, 668 N.Y.S.2d 211 (2d Dept. 1998) . . . . . . . . . . . . . . . . . . . -10-

*De Hierapolis v. Reilly*, 60 N.Y.S. 417 (1st Dept. 1899), *aff'd*, 60 N.E. 1110 (1901). . . . -10-, -11-

*Enthoven v. Enthoven*, 4 N.Y.S.2d 514 (Sup. Ct. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Farino v. Farino*, 449 N.Y.S.2d 379 (Sup. Ct. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*FDIC v. Malin*, 802 F.2d 12 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Fee v. Fee*, 559 N.Y.S.2d 625 (Sup. Ct. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Frierdich v. Mottaz*, 294 F.3d 864 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . -8-

*HBE Leasing Corp. v. Frank*, 61 F.3d 1054 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . -9-, -11-

*In re Lefrak (Schachter v. Lefrak)*, 227 B.R. 222 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . -12-, -13-

*Miele v. United States*, 637 F. Supp. 998 (S.D. Fla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Rush v. Rush*, 244 N.Y.S.2d 673 (2d Dept. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*United States v. 110-118 Riverside Drive Tenants Corp.*, 886 F.2d 514 (2d Cir. 1989) . . . . . -12-

*United States v. Alfano*, 34 F. Supp.2d 827 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*United States v. Carlin*, 948 F. Supp. 271 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Weiss v. Karch*, 466 N.E.2d 155 (N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

## Statutes

New York Civil Practice Law and Rules § 6212(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

New York Civil Rights Law § 80-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

New York Debtor and Creditor Law § 272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7--11-, -15-

New York Debtor and Creditor Law § 273-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-, -6--8-

New York Debtor and Creditor Law § 276 . . . . . . . . . . . . . . . . . . . . . . -1-, -6-, -7-, -14--16-

New York Debtor and Creditor Law § 278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

New York Uniform Commercial Code § 8-301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

## Court Rules

Fed. R. Civ. P. 30(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

## INTRODUCTION

The plaintiff United States Securities and Exchange Commission (the "Commission") submits this Reply Memorandum of Law on the Commission's Motion for Attachment against the defendants Joshua S. Shainberg and Laryssa Shainberg in this action to set aside the fraudulent transfer of a Manhattan cooperative apartment from Joshua S. Shainberg to Laryssa Shainberg and to enforce the judgment against Joshua S. Shainberg.

The Commission's moving papers establish a *prima facie* case that Joshua S. Shainberg transferred that apartment to his wife Laryssa Shainberg, and that this constituted a fraudulent conveyance under both New York Debtor and Creditor Law ("NYDCL") §§ 273-a and 276.

The transferor's intent is explicitly irrelevant under NYDCL § 273-a. That statute provides that "Each conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." The facts relating to this claim clearly indicate that the Commission is highly likely to prevail on this statute alone. Therefore the Motion for Attachment should be granted on the basis that the challenged transfer violated § 273-a.

Intent is relevant under NYDCL § 276, the Commission's alternative basis for recovery. That section provides that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." As previously argued by the Commission, the "badges of fraud" associated with the transfer give rise to an inference that

Joshua S. Shainberg acted with fraudulent intent. Therefore, the Commission's Motion for Attachment should be granted on this basis as well.

## STATEMENT OF FACTS

The relevant facts are set out in full in the Commission's initial Memorandum of Law, and they will not be repeated here. The Commission, for brevity, is here only repeating the basic chronology of these facts and is supplementing the initial statement of facts with those additional facts obtained from documents submitted in opposition by the defendants and from the depositions of the defendants taken on November 20, 2007.[1]

A.  **The Relevant Chronology**

   The chronology relevant to the Commission's Motion for Attachment is as follows:

   1975 - Nuta Shainberg, Joshua S. Shainberg's father dies owning the cooperative apartment known as L-806, 385 Grand Street, New York, New York 10002 (the "Apartment"). Initial Memorandum of Commission in Support of Motion for Attachment ("Initial Memo") at 6. No steps are taken to probate Nuta Shainberg's estate until 1998 (see specific facts later in this memorandum).

   1995 - Joshua S. Shainberg engages in conduct later found by a court to have violated the federal securities laws. Initial Memo at 2.

   August 6, 1996 - The Commission staff subpoenas Joshua S. Shainberg to give testimony in the investigation into that conduct, and Joshua S. Shainberg gives his testimony on September 5, 1996. *Ibid.*

   January 1, 1997 - Joshua S. Shainberg and Laryssa Shainberg enter into a Pre-Nuptial Agreement (see specific facts later in this memorandum).

   August 7, 1997 - The Commission staff gives Joshua S. Shainberg the opportunity to make as "Wells Submission".[2] Initial Memo at 3.

---

[1] The defendants have not yet reviewed the transcripts of these depositions. Fed. R. Civ. P. 30(e).

[2] Joshua S. Shainberg denies receiving this notice.

>June 4, 1998 - Joshua S. Shainberg and Laryssa Shainberg are married (see specific facts later in this memorandum).
>
>November 10, 1999 - The Commission brings an action against Joshua S. Shainberg in the Eastern District of New York. Initial Memo at 3. Joshua S. Shainberg was served with the summons and complaint in that action on December 2, 1999. Initial Memo at 4.
>
>October 16, 2001 - Joshua S. Shainberg and Laryssa Shainberg receive a share certificate and a proprietary lease for the Apartment in their joint names. Initial Memo at 8.
>
>April 3, 2003 - Laryssa Shainberg receives a shares certificate and a proprietary lease for the Apartment in her sole name. Initial Memo at 9.
>
>March 9, 2006 - The Commission recovers a judgment against Joshua S. Shainberg, including a requirement that he disgorge his ill-gotten gains and prejudgment interest, which judgment remains unsatisfied. Initial Memo at 5.

**B.**     **Facts Relating to the Pre-Nuptial Agreement**

The defendants testified that Joshua S. Shainberg and Laryssa Shainberg first met in 1991.[3] Deposition of Laryssa Shainberg 11/20/07 ("L. Shainberg Dep.") 7:3-7 and 13:8-16; Deposition of Joshua S. Shainberg 11/20/07 ("J. Shainberg Dep.") 6:22-23. Laryssa testified that after several years she decided that "this relationship has to go to the point of marriage or nowhere." L. Shainberg Dep. 10:7-10. Joshua S. Shainberg then told Laryssa Shainberg that for them to be able to marry Laryssa Shainberg had to convert to orthodox Judaism. L. Shainberg Dep. 10:10-13; J. Shainberg Dep. 15:22-16:2. Laryssa Shainberg undertook the conversion

---

[3] For the purpose of this motion, the Commission is accepting as true the facts testified to by the defendants with respect to facts and circumstances of the Pre-Nuptial Agreement, including that it was entered into on January 1, 1997. The Commission may contest these at the trial of this action. For the purpose of this motion, however, the Commission does contest Joshua S. Shainberg's claim that he transferred the Apartment to Laryssa Shainberg without fraudulent intent.

process, which took three and a half years and cost about $30,000.[4]  L. Shainberg Dep. 15:16-16; J. Shainberg Dep. 16:3-19.

At some point in 1996 the Shainbergs were to announce their engagement.  L. Shainberg Dep. 14:12-15.  Both Laryssa Shainberg and Joshua Shainberg testified, however, that when the time came to announce their engagement, Joshua Shainberg "got in his car and drove away for several days."  L. Shainberg Dep. 15:3-6; J. Shainberg Dep. 6:9-11.

After Joshua S. Shainberg returned, Laryssa Shainberg determined that if their relationship were to continue, she wanted to have ownership of the Apartment, where Joshua S. Shainberg was then living.  L. Shainberg Dep. 11:4-10; J. Shainberg Dep. 6:9-16.  The idea of entering into a pre-nuptial agreement was Joshua S. Shainberg's.[5]  L. Shainberg Dep. 12:16-18.  After consulting with his brother Abe, who was an attorney, and looking at various sources, Joshua S. Shainberg typed up the Pre-Nuptial Agreement.  J. Shainberg Dep. 7:3-8:6.

The Shainbergs took the draft Pre-Nuptial Agreement with them on their holiday visit to Laryssa Shainberg's parents over the 1996 holiday season.  L. Shainberg Dep. 32:2-4; J. Shainberg Dep. 8:14-19.  While there, the Shainbergs discussed the Pre-Nuptial Agreement, removing paragraph 7 which provided that Laryssa S. Shainberg would transfer certain property

---

[4] The documents indicating Laryssa Shainberg's conversion are attached to her Declaration ("L. Shainberg Decl.") as Exhibits A and B and are dated May 25, 1997.

[5] The document entered into by the parties, marked as Exhibit 1 at the depositions, is entitled "Pre-Marital Agreement" and bears the date January 1, 1997 (the "Pre-Nuptial Agreement").

to Joshua S. Shainberg.[6]  L. Shainberg Dep. 17:24-18:8; J. Shainberg Dep. 14:18-15:21.  Laryssa Shainberg stated:

> He did have a paragraph that he put in for consideration.  It was taken out.  I felt that I had given consideration.  I had given quite a bit.  I had given up my religion, isolated myself from my family, paid for the conversion, changed my lifestyle.  I felt that was due consideration.

L. Shainberg Dep. 18:2-8.

After that modification, the Shainbergs signed the Pre-Nuptial Agreement on January 1, 1997.  L. Shainberg Dep. 8:23-25; J. Shainberg Dep. 8:11-13.

C. **Facts Relating to the Transfer of the Apartment**

Although Laryssa Shainberg sought ownership of the Apartment, it does not appear that she promptly took possession, even after her marriage in 1998.

Laryssa Shainberg testified that as of 1996 Joshua S. Shainberg was living in the Apartment.  L. Shainberg Dep. 19:20-22; J. Shainberg Dep. 18:23-25.  At that time, Laryssa Shainberg was living on the upper west side, but she received her mail at the Apartment.  L. Shainberg Dep. 20:2-6; J. Shainberg Dep. 18:24-25.  The Shainbergs indeed disagreed on the date Laryssa Shainberg moved into the Apartment.  Joshua S. Shainberg testified that Laryssa Shainberg moved into the Apartment at the time of their marriage on June 4, 1998, and that she continuously resided there since that date.  J. Shainberg Dep. 19:14-24.  Laryssa Shainberg testified, however, that after the marriage she continued to reside on the upper west side and did

---

[6]Paragraph 7 provided that Joshua S. Shainberg would receive as consideration for the transfer of the Apartment (which the Shainbergs valued at $15,000) $25,000 in stamps and $25,000 in art from Laryssa Shainberg.

not move into the Apartment until her eldest son's birth in 1999.[7]  L. Shainberg Dep. 23:8-17; Deposition of Laryssa Shainberg 5/16/07 9:15.

Documents attached to Laryssa Shainberg's Declaration[8] also indicate that in mid-1999 an "Aaron Ganz" was occupying a portion of the Apartment.  L. Shainberg Decl. Ex. C.  Ganz had been a "guest" of Joshua S. Shainberg, and eventually had to be removed through an eviction proceeding in the New York City Civil Court in 1999 brought by Joshua S. Shainberg.  L. Shainberg Dep. 21:14-23:25; J. Shainberg Dep. 20:2-21:16.

## ARGUMENT

### Summary

Joshua S. Shainberg's transfer of the Apartment to Laryssa Shainberg was fraudulent as to the Commission under both NYDCL §§ 273-a and 267.[9]  The opposing papers filed by Laryssa Shainberg primarily assert that the Pre-Nuptial Agreement constituted valid consideration for the transfer of the Apartment.  Joshua S. Shainberg's opposition appears to assert that he did not

---

[7] The Shainbergs' eldest son was born in 1999.  Deposition of Joshua S. Shainberg 2/27/07 10:10-11 (seven and a half years old); Deposition of Laryssa Shainberg 5/16/07 9:15 (seven years old).

[8] Laryssa Shainberg's Declaration has been filed in opposition to the Motion for Attachment and was marked as Exhibit 2 at the depositions.

[9] Section 273-a provides that "Each conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."  Section 276 provides that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  No intent is necessary to establish a claim under § 273-a, while under § 276 the intent of the transferor is an element that must be proven.

intend to transfer the Apartment with the intent to hinder, delay, or defraud the Commission, thereby denying a necessary element of the Commission's claim under NYDCL § 276 and that this action is "a response" to his prior complaints concerning the conduct of the Commission and two of its attorneys in the prior litigation. Implicit in both sets of opposing papers is the claim that the transfer of the Apartment occurred at the time the Pre-Nuptial Agreement was entered into in 1997, before the Commission commenced its action against Joshua S. Shainberg in 1999.

Both Shainbergs' arguments are wrong, as a matter of fact and as a matter of law. The undisputed facts and the relevant law clearly establish the validity of the Commission's claims under NYDCL § 273-a. For the reasons shown below, the transfer of the Apartment occurred in two stages, in 2001 and in 2003, both of which were after the Commission brought its action against Joshua S. Shainberg in 1999. Furthermore, the "consideration" asserted by Laryssa Shainberg as the basis for the transfer of the Apartment does not, as a matter of law, constitute "fair consideration" as that term is defined by NYDCL § 272. Therefore, the Commission's Motion for Attachment should be granted insofar as it is based on that statute.

Furthermore, the Commission's Motion for Attachment should be granted on the alternative basis of NYDCL § 276. The "badges of fraud" enumerated by the Commission far outweigh Joshua S. Shainberg's denial of fraudulent intent in the transfer of the Apartment.

### I. The Transfer of the Apartment Violated NYDCL § 273-a

The elements the Commission must establish to prove a fraudulent transfer under NYDCL § 273-a are (1) that the transfer of the Apartment without the payment of "fair consideration" to Joshua S. Shainberg, (2) that at the time of the transfer Joshua S. Shainberg was a defendant in an action seeking money damages, and (3) that a judgment in that action was entered against Joshua S. Shainberg and that judgment remains unsatisfied. *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006). The defendants expressly contest only the first element, claiming that Laryssa Shainberg did provide consideration for the transfer of the Apartment through the Pre-Nuptial Agreement. Implicitly, by asserting that the transfer of the Apartment was effective as of the date of the Pre-Nuptial Agreement, the defendants also contest that the transfer of the Apartment occurred after the Commission brought its action against Joshua S. Shainberg.

As shown below, neither of these contentions has any merit as a matter of law.

### A.   The Pre-Nuptial Agreement Is Not "Fair Consideration" Under NYDCL § 272

Lack of "fair consideration" for a transfer is a specific element of a claim asserted under NYDCL § 273-a.[10] The question presented, therefore, is whether the Pre-Nuptial Agreement constituted "fair consideration" as a matter of New York law.

That term is specifically defined in NYDCL § 272:

Fair consideration is given for property, or obligation,

---

[10] In addition, proof that the transferee paid "fair consideration without knowledge of the fraud" is a defense to the plaintiff recovering property from a transferee in a fraudulent conveyance action. NYDCL § 278, subd. 1.

-8-

    a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

    b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

In *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059-60 (2d Cir. 1995), the Second Circuit specifically found that a pre-nuptial agreement transferring property from the husband to his fiancee did not provide fair consideration under NYDCL § 272. In reaching this conclusion, the court held that if these transfers were not reachable as fraudulent transfers, a debtor "could empty his estate with impunity when sued by his victims, transfer his property to his fiancee, and receive nothing but inchoate interest in return - nothing from which [his creditor] could recover its judgment - and yet enjoy the benefits of the property now nominally owned by his wife. That is the sort of injustice fraudulent conveyance law is designed to prevent." 61 F.3d at 1059.

Furthermore, the decision in *HBE Leasing* distinguished *FDIC v. Malin*, 802 F.2d 12, 17 (2d Cir. 1986). *Malin* held that a separation agreement between spouses did provide valid consideration to prevent a transfer made pursuant to the separation agreement from being set aside as a fraudulent transfer. The reason for this distinction was that in *Malin* the husband owed a present duty of support to the wife and their children, while in *HBE Leasing* there was no such duty of support owing prior to marriage. 61 F.3d at 1059-60. The Second Circuit also distinguished *Miele v. United States*, 637 F. Supp. 998, 1000 (S.D. Fla. 1986), holding that a pre-nuptial agreement did provide adequate consideration to defeat a fraudulent conveyance claim, on the grounds that the Florida version of the Uniform Fraudulent Conveyance Act did not contain a provision equivalent to NYDCL § 272.

Laryssa Shainberg asserts in opposition that this Court should instead follow the New York common law, as stated in *De Hierapolis v. Reilly*, 60 N.Y.S. 417, 418 (1st Dept. 1899), *aff'd*, 60 N.E. 1110 (1901).[11]  However, the common law rule has been displaced by NYDCL § 272.  In *American Surety Co. of New York v. Conner*, 166 N.E. 783, 786-87 (1929), Judge Cardozo followed the *De Hierapolis* holding but stated:

> We do not need to inquire whether the Debtor and Creditor Law (§ 272) has established another test of value, for it did not take effect till April, 1925, and could not invalidate a transfer previously made [in 1923].

166 N.E. at 787.

The New York common law is no longer valid, and New York courts have not applied the common law *De Hierapolis* rule to transfers made after NYDCL § 272 became effective.[12] *See*, *e.g.*, *St. Theresa's Nursing Home v. Vuksanovich*, 702 N.Y.S.2d 92, 93 (2d Dept. 2000); *Rush v. Rush*, 244 N.Y.S.2d 673, 675 (2d Dept. 1963) ("Love and affection and the conjectural promise of said future support are not fair consideration within the meaning of [NYDCL § 272]"); *Farino v. Farino*, 449 N.Y.S.2d 379, 385 (Sup. Ct. 1982).  Similarly, New York courts have held that pre-nuptial agreements calling for the waiver of inchoate future rights do not provide for fair consideration with respect to fraudulent transfers.  *Corporation of Lloyd's v.*

---

[11]In *De Hierapolis* the court held that where a woman agreed to a marriage in consideration of the receipt of property from her husband to be, and did not know at that time of the debts he owed, the promise of marriage made the woman a purchaser in good faith for valuable consideration, so that the plaintiff, a judgment creditor of the husband, had no enforceable claim under then existing law governing fraudulent transfers.

[12]*De Hierapolis* was most recently cited by a New York court in *Enthoven v. Enthoven*, 4 N.Y.S.2d 514, 519 (Sup. Ct. 1938).  In *Enthoven*, the court held that although an ante-nuptial agreement constituted good consideration between the parties to support at transfer of property, that transfer could be challenged under the provisions of the fraudulent transfer statute in the Debtor and Creditor Law.

*Funk*, 668 N.Y.S.2d 211, 212 (2d Dept. 1998) (surrender of "contingent rights" not fair consideration); *Berkowitz v. Berkowitz*, 490 N.E.2d 1218, 1219 (1986), *reversing on dissenting opinion below* 488 N.Y.S.2d 493, 496 (3d Dept. 1985) (pre-nuptial agreement which did not provide any present consideration to prospective husband in exchange for his transfer to prospective spouse did not provide fair consideration under NYDCL § 272).[13]

The Pre-Nuptial Agreement between the Shainbergs provided absolutely no consideration, present or future, actual or contingent, choate or inchoate, to Joshua S. Shainberg. Joshua S. Shainberg received no property, was relieved of no future obligation, and simply obtained nothing of monetary value for his transfer of the Apartment. Therefore, this Court should follow the holding of *HBE Leasing* and find that the Pre-Nuptial Agreement did not constitute "fair consideration" within the meaning of NYDCL § 272.

**B.     The Transfer of the Apartment Occurred After the Commission Brought Its Action**

The transfer of the Apartment occurred when the Seward Park Housing Corporation ("Seward Park") issued stock certificates and proprietary leases in October 2001 and April 2003. The transfer of the Apartment did not occur when the Shainbergs entered into the Pre-Nuptial Agreement in January 1997 or when they were married in June 1998.

---

[13]In 1935 the New York legislature enacted the "anti-heart balm act," now Civil Rights Law § 80-a, which abolished the cause of action for breach of contract to marry. Therefore, although the prospective spouses in *De Hierapolis* and *American Surety Co.*, *supra*, would have had claims had their marriages not been consummated, such a remedy would not have been available to the Shainbergs. Pre-nuptial agreements, because they are ineffective to create any rights or obligations unless and until the marriage occurs, are not barred by Civil Rights Law § 80-a. *Fee v. Fee*, 559 N.Y.S.2d 625, 627 (Sup. Ct. 1990). However, this means that any rights that Laryssa Shainberg may claim as a result of the Pre-Nuptial Agreement could not have accrued as of its signing on January 1, 1997.

NYDCL § 273-a only applies to transfers made after an action is brought against the transferor.  The Commission brought its action against Joshua S. Shainberg in December 1999.  It is clear as a matter of law that the transfer of the Apartment to Laryssa Shainberg occurred after the Commission's action was commenced.

In determining when the transfer occurred, it is first necessary to understand that the transfer of ownership of the Apartment involved a transfer of securities which were a portion of the legal interests comprising the Apartment.  The Apartment is a unit in a housing cooperative, and two separate legal interests constitute a cooperative unit, the proprietary lease and the stock certificate.[14]  The shares and the proprietary lease "are inseparable and must be transferred together to make any transfer valid."  *United States v. 110-118 Riverside Drive Tenants Corp.*, 886 F.2d 514, 517 (2d Cir. 1989).  The New York Court of Appeals has characterized the transfer of a unit as "in reality the sale of securities in the cooperative corporation."  *Weiss v. Karch*, 466 N.E.2d 155, 156 (N.Y. 1984); *ALH Properties Ten, Inc. v. 306-100th Street Owners Corp.*, 600 N.Y.S.2d 443, 448 (1st Dept. 1993) (shares of stock of a cooperative housing corporation are "included within the definition of 'securities' within the purview of Article 8 of the [Uniform Commercial Code]").

The Pre-Nuptial Agreement, even assuming the 1997 date to be accurate, manifests nothing more than the intention to transfer the Apartment in the future.  The Apartment was not transferred within the meaning of Uniform Commercial Code ("UCC") Article 8 at the time the Shainbergs signed the Pre-Nuptial Agreement in 1997, nor at the time of their marriage in 1998.

---

[14]"[C]ooperative apartment ownership is *sui generis*."  *In re Lefrak (Schachter v. Lefrak)*, 227 B.R. 222, 228 (S.D.N.Y. 1998).

Under UCC § 8-301 delivery of a security is required to effect its transfer. For delivery to occur, the purchaser must acquire possession of a certificated security, another person must acquire possession of the certificated security on behalf of the purchaser, a securities intermediary must hold the certificated security in the name of the purchaser, or the issuer must register an uncertificated security in the name of the purchaser or in the name of another person on behalf of the purchaser. As Seward Park did not issue certificates until 2001 and 2003, the transfers could not take place before these date.

Indeed, Joshua S. Shainberg's lacked the power to transfer the Apartment in both 1997 and 1998. The petition for the administration of his father's estate was not executed until August 3, 1999. Graubard Decl. Ex. 7 at SEC112.[15] (He had filed for voluntary administration of that estate with papers dated July 2, 1998, Graubard Decl. Ex. 8 at SEC116.) Therefore, both on the date of the Pre-Nuptial Agreement, January 1, 1997, and on the date of his marriage to Laryssa Shainberg, June 4, 1998, Joshua S. Shainberg had not even taken the first step necessary to effect the transfer of the Apartment from his father's estate to himself, or to Laryssa Shainberg.

Seward Park issued certificate 2002 to Joshua S. Shainberg and Laryssa Shainberg on October 16, 2001. Graubard Decl. Ex. 16 SEC130. Seward Park then issued certificate 2695 to Laryssa Shainberg on April 3, 2003. Graubard Decl. Ex. 23 SEC245. These are the operative dates of the transfer of the two one-half interests in the Apartment from Joshua S. Shainberg to Laryssa Shainberg. *In re Lefrak (Schacher v. Lefrak)*, 227 B.R. 222, 226 (S.D.N.Y. 1998) (transfer of cooperative apartment did not occur where stock book maintained by cooperative

---

[15] Reference is made to the Declaration of John J. Graubard, filed with the Commission's moving papers in this action.

corporation did not show wife as co-owner or sole owner, and where no certificate was issued in wife's name, even though husband clearly indicated intent to transfer shares and took steps to effect the transfer); *Frierdich v. Mottaz*, 294 F.3d 864, 868 (7th Cir. 2002) (delivery of stock required to effect valid transfer).[16]

Accordingly, the implicit claim of the defendants that the transfer of the Apartment occurred in 1997 or in 1998 is incorrect. The transfers occurred in 2001 and 2003, after the Commission had brought its action against Joshua S. Shainberg.

## II. The Commission Has Established a Prima Facie Case Under NYDCL § 276

To prove a cause of action under NYDCL § 276, the Commission must establish that Joshua S. Shainberg acted with the intent to hinder, delay, or defraud the Commission when he transferred the Apartment to Laryssa Shainberg.

In his opposition, Joshua S. Shainberg denies that he fraudulently transferred the Apartment to Laryssa Shainberg. However, the Court may infer that his conduct was fraudulent based on the "badges of fraud" cited by the Commission in its initial Memorandum of Law. For the purpose of the Motion for Attachment, the Commission's burden is to show that it is "probable" that it will succeed on the merits. New York Civil Practice Law and Rules § 6212(a)(2). *American Banknote Co. v. Daniele*, 2007 WL 3342684 at *1 (1st Dept. Nov. 13, 2007); *Considar, Inc. v. Redi Corp. Estab.*, 655 N.Y.S.2d 40, 41 (1st Dept. 1997) ("plaintiff must

---

[16] The Notice of Petition dated September 2, 1999 to obtain possession of the Apartment from Ganz indicates that the petitioner was "Joshua Shainberg, Individually and as Administrator of the Estate of Nuta Shainberg." L. Shainberg Decl. Ex. C. This strongly corroborates that Laryssa Shainberg had no interest in the Apartment as of that date.

be given the benefit of all legitimate inferences and deductions that can be made from the facts stated" on an application for attachment).

As stated above, Laryssa Shainberg did not provide fair consideration for the transfer of the Apartment as defined by NYDCL § 272.  This gives rise to a presumption that Joshua S. Shainberg had fraudulent intent when he conveyed the Apartment to her.  *United States v. Carlin*, 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996) ("[L]ack of fair consideration gives rise to a rebuttable presumption of fraudulent intent");  *United States v. Alfano*, 34 F. Supp.2d 827, 845 (E.D.N.Y. 1999) ( "Courts view interfamily transactions without any signs of tangible consideration as presumptively fraudulent").  In addition, as stated in the Commission's initial Memorandum of Law, the transfer of the Apartment is marked by several badges of fraud: (1) the close relationship (marriage) between Joshua S. Shainberg and Laryssa Shainberg; (2) the lack of consideration; (3) Joshua S. Shainberg's knowledge of the Commission's claim; (4) the pattern of transfers from Joshua S. Shainberg to Laryssa Shainberg;[17] (5) the transfer of the Apartment substantially reduced Joshua S. Shainberg's assets available to satisfy the Commission's claim; (6) Joshua S. Shainberg retained possession, use, and control of the Apartment after the transfer; and (7) Joshua S. Shainberg's pattern of conduct indicating a propensity to engage in fraudulent activities." Initial Memo at 19. Based on these presumptions, and the badges of fraud set forth in the Commission's initial Memorandum of Law, it is clear that the Commission has met its burden to show actual fraudulent intent under NYDCL § 276.

---

[17]In addition to the Apartment, Joshua S. Shainberg also testified that he had given shares of ICT Technologies to Laryssa Shainberg.  Graubard Decl. Ex. 4 42:18-43:14, SEC088.

Joshua S. Shainberg's remaining claims are likewise without merit. That the underlying judgment is presently on appeal does not affect the right of the Commission to bring this action, although the Court may properly take this into account in setting a remedy. Finally, the fact that Joshua S. Shainberg complained about the conduct of the Commission and members of its staff in the prior litigation simply has no bearing on whether the Commission may pursue its remedies in this action.

The Commission has therefore established that it is probable it will recover on its claim asserted under NYDCL § 276.

## **CONCLUSION**

For the above reasons, the Court should grant the Commission's Motion for Attachment to secure the Commission's claims for disgorgement and prejudgment interest.

Dated: New York, New York  
       November 29, 2007

MARK K. SCHONFELD (MS-2798)  
Regional Director

By: /s/ _____  
JOHN J. GRAUBARD (JG-4854)  

On the Brief:  
Jack Kaufman  
Lee Bickley  
Bohdan Ozaruk

Attorney for Plaintiff  
SECURITIES AND EXCHANGE COMMISSION  
3 World Financial Center, Room 400  
New York, New York 10281-1022  
Tel.:    212-336-0084 (Graubard)  
Fax:    212-336-1319  
E-mail:   graubardj@sec.gov