```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
SECURITIES AND EXCHANGE COMMISSION,


                    Plaintiff,          07 Civ. 8814 (LLS)

       - against -                      OPINION AND ORDER


JOSHUA S. SHAINBERG and LARYSSA
SHAINBERG,

                    Defendants.
- - - - - - - - - - - - - - - - - - -X
```

The Securities and Exchange Commission ("SEC") moves for an attachment against defendants Joshua and Laryssa Shainberg in this action to set aside the transfer of a Manhattan cooperative apartment from Joshua Shainberg to Laryssa Shainberg and to enforce a judgment against Joshua Shainberg.

Background

Interested in whether Joshua Shainberg violated the federal securities laws in 1995, the SEC began a non-public investigation into his activities. On August 6, 1996 it subpoenaed documents from him. On September 5, 1996, Joshua Shainberg testified to the SEC. On August 7, 1997, the SEC sent him a "Wells Notice" offering him the opportunity to argue why the SEC should not initiate an enforcement action,

1

which the SEC staff would recommend.  Mr. Shainberg denies ever receiving that notice.

On November 10, 1999 the SEC commenced a civil injunctive action against Mr. Shainberg in the United States District Court for the Eastern District of New York.  On March 9, 2006, the SEC obtained a judgment against Mr. Shainberg that required him to pay disgorgement in an amount which, with prejudgment interest, totalled $589,109.81 and a civil penalty of $200,000.  The entire judgment remains unpaid.

### The Transfer of the Apartment

Joshua Shainberg and Laryssa Shepherd met in 1991, and after several years she wanted to get married.  Joshua told her that in order to marry him she must convert to Orthodox Judaism.  Laryssa undertook the conversion process, which took two or three years and cost $20,000 or $30,000.[1]  In 1996, the couple was about to announce their engagement, but Joshua "disappeared."  When he returned, Laryssa told him that if the relationship was to continue, she wanted ownership of Apartment L-806 at 385 Grand Street, New York,

---

[1] In his November 15, 2007 Affidavit, Herbert Bomzer, the rabbi who supervised Laryssa in the conversion process, stated that the process took two years and cost $20,000.  In her November 15, 2007 Affirmation, Laryssa Shainberg stated that the conversion process took three years and cost $30,000.

New York ("the apartment"), which Joshua and his brothers had inherited from their parents. Joshua and Laryssa signed a premarital agreement on January 1, 1997, wherein Joshua promised "to transfer after marriage his interest to the cooperative." The agreement also stated that Joshua's brothers would transfer their interest to him, which he in turn would transfer to Laryssa. Joshua and Laryssa were married in June, 1998. The Seward Park Housing Corporation issued certificates transferring the apartment to Laryssa on October 16, 2001 and April 3, 2003.

In 2005, Laryssa obtained a loan for $250,000 secured by the apartment. On December 23, 2005, she purchased a home at #57 Vacation Village Townhouse Road, situated in the Village of Loch Sheldrake, Town of Fallsburg, County of Sullivan, State of New York ("the Fallsburg property") with $175,000 of the proceeds of the loan.

### The Present Action

The SEC brought this action on October 12, 2007 alleging that Joshua Shainberg fraudulently transferred the apartment to his wife. It seeks an Order of Attachment to secure the SEC's claims for disgorgement and prejudgment interest. The Court signed an Order to Show Cause temporarily restraining Joshua and Laryssa Shainberg from

transferring the proprietary lease or shares of ownership stock of the apartment and from transferring the Fallsburg property pending the determination of the SEC's Motion for Attachment.

The following is a timeline of the relevant events:

1991:  Joshua and Laryssa met.

1994 or 1995:  Laryssa began the process to convert to Orthodox Judaism.

1995 or 1996:  The SEC commenced an investigation of Joshua.

1996:  Laryssa told Joshua she wanted to marry him.  He agreed to marry her, but when the time came to announce the engagement, he disappeared.

August 6, 1996:  The SEC subpoenaed documents from Joshua.

September 5, 1996:  Joshua testified to the SEC.

January 1, 1997:  Joshua and Laryssa signed a premarital agreement, wherein he agreed to transfer the apartment to Laryssa after marriage.

May 25, 1997:  Laryssa completed the process of conversion to Orthodox Judaism.

August 7, 1997:  The SEC sent Joshua a Wells Notice, which he denies receiving.

June 1998:  Joshua and Laryssa got married.

August 3, 1999:  The petition for the administration of Joshua's father's estate was commenced.

November 10, 1999:  The SEC commenced an action against Joshua.

October 16, 2001:  Joshua and Laryssa received a shares certificate and a proprietary lease for the apartment in their joint names.

    April 3, 2003:  Laryssa received a shares certificate and proprietary lease for the apartment in her sole name.

    2005:  Laryssa obtained a loan for $250,000 secured by the apartment and on December 23, she purchased the Fallsburg property.

    March 9, 2006:  The SEC obtained a judgment against Joshua.

## Discussion

On a motion for an order of attachment, the plaintiff must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exists, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  N.Y. CPLR § 6212.

The disputed issue is whether the SEC has demonstrated the probability that it will succeed on the merits.  All legitimate inferences should be drawn in favor of the party seeking the attachment.  <u>JSC Foreign Technostroyexport v. Intern. Dev.</u>, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).

A.  <u>New York Debtor Creditor Law ("N.Y. DCL") § 273-a</u>

    N.Y. DCL § 273-a provides:

        Every conveyance made without fair consideration when the person making it is a

5

> defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

To prevail on its claim under N.Y. DCL § 273-a, the SEC must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor was then a defendant in an action for money damages or that a judgment in such action had been docketed against him; and (3) that the defendant has failed to satisfy the judgment. Grace v. Bank Leumi Trust Co., 443 F.3d 180, 188 (2d Cir. 2006). "The purpose of § 273-a is to provide a remedy for a creditor who has brought an action for money damages against a party who, after being named a defendant in that action, conveys assets to a third party for less than fair consideration leaving the ultimate judgment unpaid." Sklaroff v. Rosenberg, 125 F. Supp. 2d 67, 74 (S.D.N.Y. 2000), aff'd, 18 Fed. Appx. 28 (2d Cir. 2001).

Defendants argue that the first two requirements are not satisfied. They do not dispute that Joshua Shainberg has failed to satisfy the judgment against him.

### 1. Fair Consideration

Laryssa argues that she provided fair consideration by agreeing to convert to Orthodox Judaism and marry Joshua.

>N.Y. DCL § 272 defines fair consideration:
>
>Fair consideration is given for property, or obligation,
>   a. When in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>   b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Under that definition, Laryssa did not give fair consideration for the apartment. A promise to marry is neither "property" nor a debt, and is unenforceable under New York law,[2] so it cannot be fair consideration under N.Y. DCL § 272. Nor does Laryssa's conversion to Judaism constitute fair consideration, because it is neither "property" nor a debt.

Treating Laryssa's agreement to convert and marry Joshua as being fair consideration would undermine the purpose of the fraudulent conveyance statute. In <u>HBE Leasing Corp. v. Frank</u>, 61 F.3d 1054, 1059 (2d Cir. 1995), the debtor's fiancée alleged that her relinquishment of certain statutory marital rights in a prenuptial agreement was fair consideration for the conveyance of a bond and a

---

[2] New York Civil Rights Law § 80-a states: "No contract to marry made or entered into in this state shall operate to give rise, either within or without this state, to any cause or right of action for its breach."

residence to her. The Second Circuit rejected her argument and stated:

> The conveyances to Murphy, if not reachable by creditors under the Fraudulent Conveyance Act, would shelter Frank's assets from parties he wronged. He could empty his estate with impunity when sued by his victims, transfer his property to his fiancee and receive nothing but inchoate interests in return – nothing from which HBE could recover its judgment – and yet enjoy the benefits of the property now nominally owned by his wife. That is the sort of injustice fraudulent conveyance law is designed to prevent.

Even if Joshua had owed Laryssa for the cost of her conversion, it was at most $30,000, while the apartment was worth $90,000. See November 15, 2007 Affidavit of Eitan Ben Yosef ¶ 4. That is not, in the language of N.Y. DCL § 272, a "fair equivalent."

2. Timing of the Transfer

N.Y. DCL § 273-a applies only to transfers made after an action is brought against the transferor. The SEC brought its action against Joshua Shainberg on November 10, 1999. While the premarital agreement was signed on January 1, 1997, the apartment was not actually transferred until Laryssa received the shares certificate and proprietary lease, at the earliest (in joint names) in 2001, and in her own name in 2003.

The premarital agreement states "Joshua Shainberg should transfer after marriage his interest to the cooperative at 385 Grand Street, Apartment L806, New York, N.Y. 10002." ¶ 1. That language did not effect a present transfer of ownership. Indeed, at that time (and at the time of his marriage in 1998), Joshua lacked the power to transfer the apartment because the petition for the administration of his father's estate was not commenced until August 3, 1999. See October 12, 2007 Declaration of John J. Graubard, Ex. 7. In fact, the transfer took place three years after the marriage, when the proprietary lease and shares of the cooperative apartment were actually transferred to Laryssa's name.

B.  <u>N.Y. DCL § 276</u>

The SEC also brings its claim pursuant to N.Y. DCL § 276, which states: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Because direct proof of fraudulent intent is rare, courts have developed "badges of fraud" to establish an inference of fraudulent intent. The badges of fraud are:

9

>    (1) the lack or inadequacy of consideration;
>    (2) the family, friendship or close associate relationship between the parties;
>    (3) the retention of possession, benefit or use of the property in question;
>    (4) the financial condition of the party sought to be charged both before and after the transaction in question;
>    (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>    (6) the general chronology of the events and transactions under inquiry.

In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

In this case, many of those elements are present. First, the lack of fair consideration, as discussed above, gives rise to a rebuttable presumption that Joshua had fraudulent intent when he conveyed the apartment to Laryssa. See United States v. Carlin, 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996) ("Only an actual intent to hinder and delay need be established, not an actual intent to defraud, and lack of fair consideration gives rise to a rebuttable presumption of fraudulent intent"). Second, there is a close relationship between Joshua and Laryssa. See United States v. Alfano, 34 F. Supp.2d 827, 845 (E.D.N.Y. 1999) ("Courts view intrafamily transactions without any signs of tangible consideration as presumptively fraudulent"). Third, Joshua retained possession, use, and benefit of the apartment after the transfer. Fourth, while Joshua's

financial situation before and after the transfer is unclear, the SEC argues without rebuttal that the transfer "substantially reduced Joshua S. Shainberg's assets available to satisfy the Commission's claim." The SEC's Reply Memorandum p. 15. The sixth factor also applies because Joshua knew of the SEC investigation against him at the time of the prenuptial agreement, and the SEC civil action was pending against him at the time of the actual transfer. The fifth factor does not apply.

In sum, the SEC has established the likelihood that it will prevail on its assertions that Joshua's transfer was not made for fair consideration, while the SEC action was pending against him, and was fraudulent as against his creditors.

C. <u>Attachment</u>

The SEC has satisfied all of the requirements for an order of attachment and an order of attachment is necessary to prevent defendants from frustrating the enforcement of a judgment against them.

Laryssa Shainberg objects to the attachment of the Fallsburg property. "However, where the assets fraudulently transferred no longer exist or are no longer in the possession of the transferee, a money judgment may be

Laryssa Shainberg objects to the attachment of the Fallsburg property. "However, where the assets fraudulently transferred no longer exist or are no longer in the possession of the transferee, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets." Neshewat v. Salem, 365 F. Supp. 2d 508, 521-22 (S.D.N.Y. 2005). Because Laryssa encumbered the apartment with a $250,000 lien, the SEC is also entitled to a money judgment against her. There is a probability of success on the merits, so the Fallsburg property is subject to attachment pending the resolution of the case, to preserve the assets the SEC seeks to recover.

## CONCLUSION

The SEC's Motion for Attachment to secure its claims for disgorgement and prejudgment interest is granted. The SEC shall submit a proposed order on three days' notice to defendants. The present restraint against further transfers remains in effect until that order is signed.

So ordered.

Dated: New York, New York
       December 20, 2007

_Louis L. Stanton_
LOUIS L. STANTON
U. S. D. J.