```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,           07 Civ. 8814 (LLS)

    - against -                          OPINION AND ORDER

JOSHUA S. SHAINBERG and
LARYSSA SHAINBERG,

                    Defendants.
--------------------------------------x
```

The Securities and Exchange Commission moves for summary judgment that defendant Joshua Shainberg's conveyance of a Manhattan cooperative apartment to Laryssa Shainberg was constructively fraudulent under New York Debtor and Creditor Law ("DCL") § 273-a[1] because he made it without fair consideration when he was a defendant in a civil enforcement action, from which a judgment against him remains unsatisfied.[2]

The cooperative apartment is Apartment L806 at 385 Grand Street, New York, New York. Record ownership of the apartment

---

[1] Section 273-a provides:

>  Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

[2] The SEC also asserts claims that Joshua Shainberg conveyed the apartment with fraudulent intent under DCL § 276 and the Federal Debt Collection Practices Act, 28 U.S.C. § 3304(b)(1)(A), on which it does not move for summary judgment, but it reserves the right to pursue those claims at trial.

is evidenced by a proprietary lease and 39 shares of stock in the Seward Park Housing Corporation ("Seward Park"). Conveyance of the apartment requires Seward Park's consent. The share certificate and proprietary lease were in the name of Joshua Shainberg's father, Nuta Shainberg.

The following events are not in dispute or have been accepted for purposes of this motion:

- On October 18, 1975, Nuta Shainberg, the owner of the apartment, died intestate, survived by his wife, Rachel, and their three sons, Abraham, Mark (also known as Morris), and defendant Joshua.

- On March 18, 1990, Rachel Shainberg died intestate, survived by the three sons. The apartment remained in Nuta Shainberg's estate, however, as no new share certificate or proprietary lease had been prepared and delivered, and Nuta Shainberg's estate had never been administered through the Surrogate's Court.

- On January 1, 1997, defendants Joshua and Laryssa Shepherd (later Shainberg) entered into a Premarital Agreement. The SEC "accepts the authenticity, validity and purported date of the Premarital Agreement solely for the purposes of this summary judgment motion." Pl.'s Mem. 4 n.5. The Premarital Agreement states, in part (I have added the material in brackets):

    1. Joshua Shainberg should transfer after marriage his interest to the cooperative at 385 Grand Street, Apartment L806, New York, N.Y. 10002.

    2. As Joshua Shainberg and his brothers, Abe and Mark are attempting through the Surrogate and Probate Courts to transfer their interest in this cooperative apartment to Joshua Shainberg from the estate of his parents, it is agreed that after this process Joshua Shainberg will transfer this apartment to Laryssa Shepherd [defendant Laryssa Shainberg's maiden name]. I, Laryssa Shepherd

> fully understand that this property will be transferred to me and because of the Court system it may take some tim [*sic*]
>
> 3. Both parties acknowledge that Joshua Shainbergs [*sic*] brothers have both consented to this transfer to me and are doing so because of the marriage. The reason that both brothers may have to transfer their interest to Joshua before he transfers the cooperative to me is based upon various New York surrogate issues as well as the intent of the brothers to make sure that the marriage goes forth.

- On June 4, 1998, Joshua and Laryssa married.

- On November 10, 1999, the SEC filed a securities fraud action against Joshua Shainberg in the United States District Court for the Eastern District of New York.

- On October 16, 2001, Seward Park issued a share certificate and proprietary lease for the apartment in the names of Joshua and Laryssa Shainberg as joint tenants with right of survivorship.

- On April 3, 2003, Seward Park issued a share certificate and proprietary lease for the apartment in Laryssa Shainberg's name alone.

- On March 9, 2006, the SEC obtained a judgment against Joshua Shainberg in the securities fraud action, no portion of which has been paid.

The SEC contends that the October 16, 2001 conveyance of partial ownership of the apartment to Laryssa Shainberg and the April 3, 2003 conveyance of the remainder of the apartment to her were constructively fraudulent under DCL § 273-a.

The record shows that material questions of fact are genuinely in dispute, foreclosing summary judgment. See Fed. R. Civ. P. 56(c) (movant must "show that there is no genuine issue

- 3 -

as to any material fact and that the movant is entitled to judgment as a matter of law").

1.

There is a genuine issue of material fact about whether Laryssa Shainberg's initial, partial interest in the apartment came from the judgment debtor, Joshua Shainberg.

The SEC argues that, although the share certificate and proprietary lease for the apartment were in the estate of Nuta Shainberg, Joshua Shainberg "had full equitable ownership" of the apartment before he and Laryssa took legal title as joint tenants on October 16, 2001.  Pl.'s Reply 5.  It contends that, after Rachel Shainberg died, the heirs at law of Nuta Shainberg's estate were Joshua and his two brothers, and "Sometime between 1998 and 2001, Abraham and Morris Shainberg renounced their interests in the Apartment in favor of the defendant Joshua S. Shainberg."  Id.

However, the record is unclear about whether Abraham and Morris Shainberg's equitable interests in the apartment were transferred to Joshua or directly to Laryssa.

The SEC relies on the following deposition testimony from Joshua Shainberg to show that his brothers' interests in the apartment were transferred to him (Oct. 2, 2009 Graubard Decl. Ex. 6, Feb. 27, 2007 Joshua Shainberg Dep. at 49:22-50:21):

- 4 -

> Q.  So who was the owner of the shares and the proprietary lease for the co-op apartment before your wife?
>
> A.  That's a very good question.  Chronologically I and my brothers inherited the apartment from my parents who passed away, so I don't know if I ever was a complete owner of the apartment of [sic] the shares.  I certainly was a part owner or a one third owner, so to speak.  I have two brothers.
>
> Q.  You and your brothers were the owners?
>
> A.  At one time, yes.
>
> Q.  How did the ownership go from you and your brothers to your wife?
>
> A.  I believe it may have gone from -- I'm not a hundred percent sure and I'm sure you have the records, but I believe it had gone from my brothers to me and then from me to my wife.  I am not sure at what point and what percentage I owned any part of that co-op certificate or shares.
>
> Q.  Well, you owned the shares and the lease is what you owned?
>
> A.  Right.  So it went from my brother to me and my wife and then me and my wife to my wife only.

Thus, Joshua's deposition testimony is unclear at best about whether he "ever was a complete owner" of the apartment, and whether his brothers transferred their interests to Joshua alone ("from my brothers to me and then from me to my wife") or to both Joshua and Laryssa ("from my brother to me and my wife and then me and my wife to my wife only").

Other evidence states that Abraham and Mark Shainberg transferred their interests directly to Laryssa.  Each of

Abraham and Mark submitted a November 15, 2007 affidavit stating that he agreed to give his interest to Laryssa (at ¶ 6):

> On or about January 1997, my brother Joshua asked me to agree to take whatever actions were necessary to convey my interest in the Apartment to his fiancé, Laryssa, so that he could honor the terms of a prenuptial agreement that Laryssa had insisted he sign. Thereafter, on or about January 1997, I agreed to give Laryssa my share in the Apartment so she would agree to convert to Orthodox Judaism and marry Joshua and eventually I renounced my interest in the estate and allowed the formal conveyance to her.

Similarly, in her November 15, 2007 affidavit, Laryssa states that Joshua's brothers agreed to give their interests to her (at ¶ 8):

> Since Joshua only owned one third of the Apartment I demanded, and got, the agreement of his brothers to release their ownership in the Apartment to me. From the time Joshua signed the prenuptial agreement and the almost simultaneous agreements of his brothers to cough up the remainder of the interests in the Apartment, I was the equity owner of the Apartment.

She clarified at her November 20, 2007 deposition (Oct. 2, 2009 Graubard Decl. Ex. 9 at 26:14-17):

> Q. That was your wording, "cough up"?
>
> A. That was my wording.
>
> Q. What did you mean by that?
>
> A. Turn it over to me.

On this conflicting evidence, a reasonable juror could conclude that Abraham and Mark Shainberg's interests in the apartment were transferred directly to Laryssa Shainberg

by the brothers, not by Joshua Shainberg, the judgment debtor.

2.

There is also a genuine issue of material fact about whether Laryssa exchanged fair consideration for the apartment.

"Fair consideration" is defined in DCL § 272.[3] The Second Circuit has stated:

> The fair consideration test "is profitably analyzed as follows: (1) . . . the recipient of the debtor's property[] must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.'"

In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005) (alterations in original), quoting HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1058-59 (2d Cir. 1995).

The Shainbergs argue that Joshua's conveyance of his interest in the apartment to Laryssa satisfied the antecedent debt that he owed her under the Premarital Agreement. See Laryssa Shainberg's Opp. 1 ("The SEC contends that the conveyance took place on 2005 [sic]. However, the obligation to

---

[3] Section 272 provides:

> Fair consideration is given for property, or obligation,
>
> a.  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b.  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

make that transfer took place many years before and imposed upon Mr. Shainberg a binding legal commitment that he could not avoid.").

The term "debt" is defined in DCL § 270 as including "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." In the 1997 Premarital Agreement, Joshua agreed to "transfer after marriage his interest to the cooperative." Joshua and Laryssa did marry on June 4, 1998. The SEC "accepts the authenticity, validity and purported date of the Premarital Agreement" for purposes of this motion. Pl.'s Mem. 4 n.5. It follows from the SEC's concession applied to the language of the Premarital Agreement that, upon the Shainberg's marriage (which took place before the SEC commenced the underlying securities fraud action on November 10, 1999), Joshua was legally bound to transfer his interest in the apartment to Laryssa. See Black's Law Dictionary 1690 (9th ed. 2009) (defining the word "valid" as "Legally sufficient; binding").

The SEC argues that Laryssa Shainberg did not convey any monetary benefit to Joshua under the Premarital Agreement, citing the Second Circuit's decision in HBE Leasing, 61 F.3d 1054. That case is not in point. The defendants in HBE Leasing made their prenuptial agreement and were married "more than two years after" the plaintiffs had commenced the underlying RICO action against the transferor defendant. Id. at 1058 (emphasis

added).  The issue there was whether his fiancée's promises in the prenuptial agreement to waive certain contingent marital rights constituted "fair consideration" as defined in DCL § 272. See id. at 1060.  In contrast, since Joshua and Laryssa made the Premarital Agreement and were married before the SEC's securities fraud action against Joshua, it is immaterial whether the Premarital Agreement itself gave "fair consideration," since it is conceded, for the purposes of this motion, to have imposed a legally binding obligation on Joshua, the satisfaction of which is fair consideration under § 272.[4]

To constitute fair consideration, the discharge of the debt also must be in "good faith."  Under § 273-a, the actual intent of the transferor is disregarded (see fn. 1 p. 1 above) and "'Good faith' in a constructive fraudulent conveyance claim 'is the good faith of the transferee.'"  Sharp, 403 F.3d at 54 n.4, quoting HBE Leasing, 61 F.3d at 1059 n.5.  The SEC "agrees that Laryssa Shainberg obtained title in good faith and without any fraudulent intent."  Pl.'s Reply 7.

CONCLUSION

The SEC's motion for summary judgment is denied.

A conference shall be held on Friday, April 9, 2010 at 12 o'clock noon to discuss, among other things, the schedule for

---

[4] There is no question of fair equivalency in value here.  The conveyance of the apartment equalled the value of the antecedent duty to convey it.

the preparation and submission of the parties' joint pre-trial order and other pre-trial materials, and setting a date for trial.

So ordered.

DATED:    New York, New York
          March 16, 2010

                                    _____
                                       LOUIS L. STANTON
                                          U.S.D.J.